UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YNES M. GONZALEZ DE FUENTE, MARIYA KOBRYN, AND IVAN KOBRYN, individually and on behalf of all others similarly situated,

        Plaintiffs,

-against-

PREFERRED HOME CARE OF NEW YORK LLC, EDICSON HOME HEALTH CARE, HEALTHCAP ASSURANCE , INC., BERRY WEISS, SAMUEL WEISS, DOES 1-15, Inclusive,

        Defendants.

18-CV-6749 (AMD) (PK)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HEALTHCAP ASSURANCE, INC.'S MOTION TO DISMISS

PUTNEY, TWOMBLY, HALL & HIRSON LLP
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

*Attorneys for Defendant HealthCap Assurance, Inc.*

Of Counsel:
    Thomas A. Martin
    Rebecca K. Kimura

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

RELEVANT FACTS ..................................................................................................................... 2

    The Parties .............................................................................................................................. 2

    The Plan .................................................................................................................................. 2

    Allegations Concerning HealthCap ........................................................................................ 4

ARGUMENT ................................................................................................................................. 5

    POINT I        APPLICABLE STANDARD FOR A MOTION TO DISMISS .................... 5

    POINT II       PLAINTIFFS LACK STANDING TO PURSUE THEIR
                     CLAIMS ................................................................................................. 6

    POINT III      PLAINTIFFS HAVE FAILED TO ALLEGE FACTS
                     SUFFICIENT TO SUPPORT A CLAIM FOR PROHIBITED
                     TRANSACTIONS AGAINST HEALTHCAP ............................................ 9

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Credit Suisse Securities (USA) LLC*,
   895 F.3d 214 (2d Cir. 2018) ................................................................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................... 5

*Away, Inc., Employees' 401(k) Thrift Investment Plan v. Magnuson*,
   2006 WL 2934391 (N.D.N.Y. Oct. 12, 2006) ........................................................... 9

*Brown v. Medtronic, Inc.*,
   628 F.3d 451 (8th Cir. 2010) ..................................................................................... 7

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   433 F.3d 181 (2d Cir. 2005) ...................................................................................... 6

*DeLaurentis v. Job Shop Technical Services, Inc.*,
   912 F.Supp. 57 (E.D.N.Y. 1996) ............................................................................. 10

*Doyle v. Midland Credit Mgmt., Inc.*,
   722 F.3d 78 (2d Cir. 2013) ........................................................................................ 5

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000) ................................................................................. 9, 10, 11, 12

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ..................................................................................................... 5

*Kendall v. Employees Ret. Plan of Avon Prods.*,
   561 F.3d 112 (2d Cir. 2009) ...................................................................................... 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................... 6

*Rent-A-Center, Inc. v. C.I.R.*,
   142 T.C. 1 (2014) ..................................................................................................... 11

*Ross v. AXA Equitable Life Insurance Company*,
   680 Fed. App'x 41 (2d Cir. 2017) ............................................................................. 8

*Rozo v. Principal Life Insurance Company*,
   344 F.Supp.3d 1025 (S.D. Iowa 2018) ................................................................. 9, 11

*In re Scholastic Corp. Sec. Litig.*,
　252 F.3d 63 (2d. Cir. 2001) ........................................................................................5

*Spokeo, Inc. v. Robins*,
　-- U.S. --, 136 S. Ct. 1540 (2016) ..........................................................................6, 8

*Taveras v. UBS AG*,
　612 F. App'x 27 (2d Cir. 2015) ...............................................................................6, 7

*Taylor v. KeyCorp*,
　680 F.3d 609 (6th Cir. 2012) .......................................................................................7

*Teets v. Great-West Life & Annuity Insurance Company*,
　286 F.Supp.3d 1192, 1209 (D. Colo. 2017) ............................................................9, 11

*Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Management*,
　131 F.Supp.3d 103 (S.D.N.Y. 2015) ..........................................................................10

*U.S. v. Space Hunters. Inc.*,
　429 F.3d 416 (2d Cir. 2005) .........................................................................................5

**Statutes**

Employee Retirement Income Security Act of 1974 ("ERISA"),
　29 U.S.C. § 1001 ..........................................................................................................1

ERISA § 406, 29 U.S.C. § 1106 ............................................................................... *passim*

ERISA § 3(14), 29 U.S.C. § 1002(14) ..............................................................................2

New York Insurance Law § 4226 .....................................................................................8

New York State Home Care Worker Wage Parity Law,
　Public Health Law § 3614-c ...............................................................................1, 3, 5

**Other Authorities**

U.S. Const. Art. III .................................................................................................1, 6, 7, 8

Federal Rules of Civil Procedure Rule 12(b) ................................................................1, 5

**PRELIMINARY STATEMENT**

This Memorandum Of Law is submitted by Defendant, HealthCap Assurance, Inc. ("HealthCap"), by and through its attorneys, Putney, Twombly, Hall & Hirson LLP, in support of its motion to dismiss in its entirety the Complaint of Plaintiffs Ynes M. Gonzalez De Fuente ("Gonzalez"), Mariya Kobryn and Ivan Kobryn (collectively "Plaintiffs"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs who are home health aides employed by Defendant Preferred Home Care of New York LLC ("Preferred") or Defendant Edison Home Health Care ("Edison") allege that they are or were participants in the Edison Home Health Care Welfare Plan a/k/a Edison Assist HHC Employee Benefit Plan (the "Plan"). Plaintiffs claim that Preferred and Edison misappropriated Plan assets by retaining the assets for themselves and/or their principles, in violation of the New York State Home Care Worker Wage Parity Law, Public Health Law § 3614-c ("Wage Parity Law") and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Plaintiffs' sole claim against Defendant HealthCap, a reinsurer, is that it is a "party in interest" and allegedly engaged in prohibited transactions under ERISA ¶ 406(a), 29 U.S.C. § 1106(a).

As demonstrated below, Plaintiffs' Complaint should be dismissed in its entirety because Plaintiffs lack Article III standing. Indeed, Plaintiffs have not, and cannot, plead an injury in fact because they have no concrete or particularized individual loss from the alleged ERISA violations. Nor can they establish any causal connection between any purported losses to the fiduciaries' alleged breaches. In fact, Plaintiffs have failed to articulate any concrete injury or losses whatsoever resulting from the alleged breach.

The Complaint should also be dismissed against HealthCap for failure to state a claim under ERISA § 406(a). The sole claim against HealthCap is that it is a non-fiduciary party in

interest, and that it received premium payments from the Plan assets as a reinsurer for the Plan. Plaintiffs allege such receipt constitutes a prohibited transaction under ERISA. The claim is fatally deficient against HealthCap because Plaintiffs fail to allege facts showing that the funds received by HealthCap were unlawful, or that HealthCap knowingly participated in the unlawful transaction, or that Plaintiffs were injured as a result of such transaction.

For the reasons set forth herein, this motion should be granted and the Complaint should be dismissed in its entirety against HealthCap, without leave to amend.[1]

## RELEVANT FACTS

### The Parties

Edison and Preferred are home health care providers, based in Brooklyn, New York. (Complaint ¶¶ 15-17. Plaintiffs allege they are home health aides, employed by Defendant Preferred or Defendant Edison. (Complaint ¶ 1) Defendant Samuel Weiss was Edison's President and Chief Executive Officer. (Complaint ¶ 18) Defendant Berry Weiss was Preferred's President and Chief Executive Officer. (Complaint ¶ 19)

Plaintiffs allege that HealthCap is a North Carolina corporation and maintains its primary place of business in Aberdeen, North Carolina. (Complaint ¶ 20) Plaintiffs further allege that since the 2015 Plan Year, which runs from February 1 until January 31 ("Plan Year"), HealthCap provided captive insurance to the Plan and is thus a Plan service provider and a "party in interest" within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14). (Complaint ¶ 20)

### The Plan

As home health aides to clients on Medicaid, Plaintiffs allege they are entitled to be paid a

---

[1] HealthCap also hereby adopts and incorporates by reference all of Defendants' Preferred and Edison's factual assertions and legal argument concerning standing, as if set forth in their entirety herein.

2

minimum rate under the Wage Parity Law, comprised of a cash portion and a benefit portion. (Complaint ¶ 2) From March 2014 to the present, Plaintiffs allege Preferred and Edison were required to provide them with an hourly compensation package that included a benefit portion of $4.09 per hour. (Complaint ¶¶ 36, 38, 40)

In order to satisfy the benefit portion of their obligations under the Wage Parity Law, Plaintiffs further allege that Preferred and Edison provided health benefits through the Edison Home Health Care Welfare Plan a/k/a Edison Assist HHC Employee Benefit Plan (the "Plan"). (Complaint ¶ 5) The Plan is a self-funded plan, but is secured by a reinsurance agreement with HealthCap. (Complaint.¶¶ 20, 64-65) Edison is the alleged Plan Administrator for the Plan. (Complaint ¶ 16). Plaintiff alleges that Preferred and Edison are fiduciaries of the Plan in that they exercise discretionary authority or control with regard to managing the distribution of Plan assets. (Complaint ¶¶ 16, 17)

According to Plaintiff, captive insurance companies "typically" provide insurance for parent companies as follows: the parent company pays premiums to the captive insurer; the captive insurer uses the premiums to establish a reserve and acts as a reinsurance agent for benefits owed by the parent company; the assets of the captive are typically invested so that the profit, interest and/or dividends return to the captive owners; the captive insurer eventually returns excess premiums and any earnings to the parent company or its owners in the form of shareholder distributions. (Complaint ¶ 57)

Gonzalez alleges she was a participant in the Plan from October 2, 2015 to October 1, 2018, and Plaintiffs Mariya Kobryn and Ivan Kobryn allege they have been participants in the Plan since November 2012 to the present. (Complaint ¶¶ 10, 11) However, Gonzalez alleges she never utilized the Plan benefits, and Mariya Kobryn and Ivan Kobryn allege only they "had difficulty

accessing benefits under the Plan." (Complaint ¶¶ 53, 55)

**Allegations Concerning HealthCap**

The Complaint makes the following limited allegations concerning HealthCap:

- Defendant HealthCap is a sponsored captive insurer, or, more specifically, a protected cell captive insurance company. It is composed of numerous unincorporated protected "cells," each of which corresponds to a company that is reinsuring through the captive insurer. (Complaint ¶ 58)

- Each protected cell exists to insure the risk arising from the employee benefit plans sponsored by each cell's shareholders, and the assets and liabilities of each protected cell are completely segregated from the assets and liabilities of Defendant HealthCap and every other protected cell of which it is composed. (Complaint ¶ 59)

- The Plan has entered into a quota share reinsurance agreement with Defendant HealthCap, allegedly to "reduce [the Plan's] exposure to welfare benefit obligations under the Plan." (Complaint ¶ 64)

- Under the agreement with Defendant HealthCap, the captive assumes a 75% quota share of the Plan's welfare benefit obligations. (Complaint ¶ 65)

- Defendants Edison and Preferred, as fiduciaries, direct that the Plan pay premiums to Defendant HealthCap in an amount equal to the quota share portion of the premiums collected by the Plan on the welfare benefit obligations. (Complaint ¶ 66)

- The premiums paid to HealthCap are paid from the assets of the Plan trust. (Complaint ¶ 67)

- In the 2015 Plan Year, ... the Plan set aside approximately $6.4 million in Plan assets to be paid as premiums to Defendant HealthCap. (Complaint ¶ 68)

- In the 2016 Plan Year, ... the Plan also set aside approximately $11.4 million in Plan assets to purchase premiums through Defendant HealthCap. (Complaint ¶ 69)

- Upon information and belief, based on that arrangement, because the Plan paid less than $1.5 million in claims directly, Defendant HealthCap would have paid a maximum of approximately $4.4 million in claims. (Complaint ¶ 69)

- During the 2015 and 2016 Plan Years, upon information and belief, the Plan and HealthCap in total paid less than $10 million in claims, while during the same period the Plan paid more than $5 million in administrative expenses. (Complaint ¶ 70)

On that basis, Plaintiffs allege that "the Plan fiduciaries violated ERISA § 406(a), 29 U.S.C. § 1106(a), by causing a direct or indirect sale or exchange with a party in interest and/or a transfer

or use of plan assets to or by or for the benefit of parties in interest," and that they "knowingly participated" in the alleged prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a). (Complaint ¶¶ 95, 96) Plaintiffs further allege that they were harmed in that the amount of money and/or value of benefits they received for the benefit portion required under the Wage Parity Law was reduced. (Complaint ¶ 99) The claim under the Wage Parity Law is, however, asserted only as against Preferred and Edison, and <u>not</u> against HealthCap. (*See* Complaint, Count V).

## ARGUMENT

## POINT I

## APPLICABLE STANDARD FOR A MOTION TO DISMISS

Pursuant to Rule 12(b)(1), a district court must dismiss a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate it." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013).

A party may also move to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d. Cir. 2001) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In ruling on a Rule 12(b)(6) motion, a court must "accept all of plaintiffs factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *U.S. v. Space Hunters. Inc*., 429 F.3d 416, 424 (2d Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Pleadings that are no more than conclusions "are not entitled to the assumption of truth," nor are "naked assertion[s] devoid of

further factual enhancement." *Id*. at 678-79 (quotations omitted). Based upon the allegations asserted in the Complaint, Plaintiffs have failed to state a claim upon which relief may granted against HealthCap.

**POINT II**

**PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS**

As a threshold matter, Plaintiffs must have standing to pursue their claims under Article III of the Constitution, or the Court lacks subject matter jurisdiction. "[T]he irreducible constitutional minimum of standing" requires that a plaintiff establish three elements: (1) he or she suffered an "injury in fact;" (2) "a causal connection" between the injury and the challenged action, and (3) the redressability of the injury by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). Where the case is in the pleading stages, Plaintiffs must "clearly" allege facts "demonstrating each element." *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S. Ct. 1540, 1547 (2016) (quotation omitted).

Injury in fact is a legally protected interest, which is "concrete and particularized," as well as actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Procedural violations of statutes do not automatically confer standing absent a concrete harm that satisfies the injury in fact requirement. *Spokeo*, 136 S. Ct. at 1549. To be "concrete," an injury must be "de facto," or actually exist, even in the context of a statutory violation. *Id.* at 1548-49. Procedural violations may satisfy the concreteness requirement "[w]hen a procedural right protects a concrete interest, a violation of that right may create a sufficient 'risk of real harm' to the underlying interest." *Id.* at 1549. For an injury to be "particularized," it must affect the plaintiff "in a personal and individual way." *Id.* at 1548. For ERISA claims, the Second Circuit requires that a participant demonstrate an <u>individual loss</u> caused by the ERISA breach. *Kendall v. Employees Ret. Plan of Avon Prods.,* 561 F.3d 112, 118 (2d Cir. 2009); *Cent. States Se. & Sw. Areas Health & Welfare*

*Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005). An injury to the plan or to other participants is insufficient. *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015). Moreover, the causal connection element requires a plaintiff to allege facts "connecting her purported losses to the fiduciaries' alleged breaches." *Taveras*, 612 F. App'x at 29 (quotations omitted).

Plaintiffs lack standing to pursue their claims because they have failed to allege, nor can they allege, any personal loss caused by the alleged ERISA violations. Among other things, Plaintiffs do not allege they were denied access to participate in the Plan, or that they were improperly denied Plan benefits. Plaintiff Gonzalez concedes she never utilized the Plan. (Complaint ¶ 53) While Plaintiffs Mariya Kobryn and Ivan Kobryn allege they "have had difficulty accessing benefits under the Plan," they do not specify the alleged difficulty nor do they allege a causal connection between the alleged difficulty and the alleged ERISA violations. (Complaint ¶ 55) Nor do Plaintiffs allege the Plan was underfunded, or unable to pay on claims. To the contrary, Plaintiffs acknowledge the Plan was sufficiently funded. Specifically, they allege that in 2015 and 2016, Preferred and Edison set aside $35.5 million to contribute to the Plan on behalf of Plan participants, and $17.8 million to be paid as premiums to HealthCap, but the Plan and HealthCap paid out less than $10 million in claims. (Complaint ¶¶ 68, 69, 70). What is lacking is any allegation as to how such funding of the Plan harmed Plaintiffs. *See, e.g., Brown v. Medtronic, Inc.,* 628 F.3d 451, 458 (8th Cir. 2010) (concluding that plaintiff who netted a gain during the entire period of investment lacked Article III injury because he suffered no injury traceable to the breach of duty); *Taylor v. KeyCorp*, 680 F.3d 609, 615 (6th Cir. 2012) (affirming dismissal of ERISA claim where plaintiff suffered no net loss from purchases and sales of stock).

Other than a vague allegation of "difficulty accessing Plan benefits," there is no allegation of harm, or a denial of benefits to the Plaintiffs. As a result, standing is clearly lacking.

The court's discussion in *Ross v. AXA Equitable Life Insurance Company*, 680 Fed. App'x 41 (2d Cir. 2017) is instructive. There, plaintiffs-insureds brought a putative class action on behalf of those who purchased, renewed or paid premiums for group life insurance issued by insurer and captive reinsurers, alleging violation of NY Insurance Law § 4226. *Id.* at 44. The statute at issue provided that an insurer shall not "make any misleading representation, or any misrepresentation of the financial condition of any such insurer or of the legal reserve system upon which it operates." *Id*. at 45. The plaintiffs-insureds alleged they had suffered an injury in fact because there was an increased risk that the insurer and its captive reinsurer would be unable to fully pay out life insurance and annuity rider claims in the event of an economic downturn, and because of various "shadow" insurance transactions. *Id.* at 46. The district court dismissed for lack of Article III standing. The Second Circuit affirmed, holding that the plaintiffs failed to allege injury in fact based on an increased risk of nonpayment, because "the speculative chain of possibilities" did not establish that the alleged injury was "certainly impending." *Ibid.* (citations omitted). Similarly the procedural violation alleged here -- a prohibited transaction of payment of insurance premium between the Plan and HealthCap -- even if true, is insufficient to confer standing upon Plaintiffs. Plaintiffs here have not identified the harm they have suffered, nor have they linked such harm to a violation of the statute and have made no attempt to argue that the harm would be imminent. *Spokeo*, 136 S. Ct. at 1549 (violation of a statute, standing alone, is insufficient to confer standing).

Accordingly, Plaintiffs lack standing to pursue their claims.

# POINT III

# PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM FOR PROHIBITED TRANSACTIONS AGAINST HEALTHCAP

Section 406(a) of ERISA prohibits a fiduciary from causing the plan to engage in a transaction that it knows or should have known involves the "sale or exchange, or leasing, or any property between the plan and a party in interest" (ERISA § 406(a)(1)(A)), and the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." (ERISA § 406(b)(1)(D)).

Plaintiffs allege HealthCap participated as a "party in interest" in a prohibited transaction, by simply receiving premium payments from the Plan pursuant to an insurance policy, and therefore is liable under ERISA § 406(a). (Complaint ¶¶ 20, 66, 67) Plaintiffs do not allege that HealthCap is a fiduciary. Plaintiffs claim should be dismissed because it does not satisfy the requirements for non-fiduciary liability.

In *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 250, 120 S. Ct. 2180, 2189 (2000), the Supreme Court held that a non-fiduciary party in interest may be liable under ERISA § 406(a) if it had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Ibid.* at 251. This standard has been interpreted to require heightened knowledge that is different from what is required to impose liability on a plan fiduciary. *See, e.g., Away, Inc., Employees' 401(k) Thrift Investment Plan v. Magnuson,* 2006 WL 2934391 at * 26 (N.D.N.Y. Oct. 12, 2006) (noting that liability of a non-fiduciary is "dependent upon a showing of actual participating in the prohibited transaction at issue."); *Rozo v. Principal Life Insurance Company*, 344 F.Supp.3d 1025, 1037-38 (S.D. Iowa 2018) (explaining that heightened knowledge of the potential unlawfulness of the transaction is required for non-fiduciary liability); *Teets v. Great-West Life & Annuity Insurance Company*, 286 F.Supp.3d 1192, 1209 (D. Colo. 2017) (holding that "an ERISA plaintiff cannot rely solely on the knowledge that would satisfy a

fiduciary's liability for a prohibited transaction to likewise hold a nonfiduciary party in interest liable for that transaction," but must show that the defendant knew or should have known that the transaction violated ERISA). In *Teets*, the court explained that prohibited transactions with regard to <u>plan fiduciaries</u> are essentially strict liability offenses and only require knowledge of "basic facts, particularly that a party in interest will use plan property for its own gain," while a <u>non-fiduciary party in interest</u> must have knowledge beyond just the underlying facts, but must have "knowledge of their potential unlawfulness." *Id*. at 1208.

Moreover, mere conclusory allegations of knowledge and participation are insufficient to survive a motion to dismiss. *Allen v. Credit Suisse Securities (USA) LLC*, 895 F.3d 214, (2d Cir. 2018) (factual allegations that are "wholly conclusory" are insufficient to avoid dismissal) (internal quotations omitted). In *Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Management,* 131 F.Supp.3d 103, 131-32 (S.D.N.Y. 2015), the plaintiff alleged that the non-fiduciary Bank knowingly participated in co-defendants' fiduciary breach. The court found the plaintiff failed to allege facts sufficient to show participation, where plaintiff simply alleged that, "by virtue of its acquiescence and its receipt of the investment advisory fees paid by the Plan," the Bank became a knowing participant. *Id.* at 132. Instead, the court held that knowledge, combined with receipt of fees, was insufficient to state a claim for knowing participation in the co-defendants' breach. *Ibid*. *See also DeLaurentis v. Job Shop Technical Services, Inc.*, 912 F.Supp. 57, 64 (E.D.N.Y. 1996) (dismissing cause of action for knowing participation in a breach of fiduciary duty claim, where plaintiffs only allege that defendants were aware of the breach, but do not explain how or why they knew or should have known.).

Plaintiffs here have failed to state a claim against HealthCap for non-fiduciary liability under *Harris Trust*. Plaintiffs make only two conclusory allegations: (1) that "Defendants

knowingly participated in such prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a);" and (2) "[t]hrough their knowing participation in prohibited transactions, Defendants benefitted in amounts to be proven at trial but numbering in the millions of dollars." (Complaint ¶¶ 96, 98) HealthCap is solely alleged to be the recipient of premium payments, which, in turn, it used to insure $4.4 million in health benefit claims in 2016. (Complaint ¶ 69) Other than these two conclusory statements, the Complaint contains no factual allegations indicating how the alleged transaction of receiving insurance premium payments in return for providing medical benefits under the Plan was unlawful, or the circumstances by which HealthCap obtained knowledge that the transaction was unlawful. *Harris Trust*, 530 U.S. at 251.

These allegations simply cannot suffice to make out an ERISA claim. As noted above, with regard to the first allegation, the receipt of monies alone – even ill-gotten monies – is insufficient to establish an ERISA claim against a non-fiduciary. *Harris Trust*, 530 U.S. at 251; *Rozo*, 344 F.Supp.3d at 1037-38; *Teets*, 286 F.Fupp.3d at 1209. Stated differently, the fact that HealthCap received premiums from the Plan is simply a description of how insurance works, rather than an allegation that is consistent with, or demonstrative of, an ERISA violation. In addition, there is nothing inherently unlawful about captive insurance arrangements. *See Rent-A-Center, Inc. v. C.I.R.*, 142 T.C. 1, 10, 11, 24 (2014) (the Tax Court respects the "separate taxable treatment of a captive unless there is a finding of sham or lack of business purpose," and a "captive may achieve adequate risk distribution by insuring only subsidiaries within its affiliated group"). Thus, Plaintiff's bare allegations regarding HealthCap's receipt of premiums lend nothing to their claim.

Plaintiffs' second allegation is equally insignificant. They allege HealthCap reimbursed the Plan for $4.4 million paid in benefits. (Complaint ¶ 69) However, that allegation is also simply reflective of what health insurers – like HealthCap – do: they insure risk for claims. What is lacking

in the Complaint is a specific allegation that the level of benefits insured was incorrect <u>and</u> somehow injured these Plaintiffs. Gonzalez could not have been injured because she never utilized the Plan. (Complaint ¶ 53) Plaintiffs Mariya Kobryn and Ivan Kobryn allege only "difficulty" accessing the Plan. (Complaint ¶ 55) They do not allege they were denied Plan benefits. Plaintiffs' ERISA claim is thus premised on the notion that HealthCap should have made greater reimbursed payments. Not only could that argument be made as against any insurer, it fails here entirely because these Plaintiffs have not alleged that they were harmed under ERISA by HealthCap's failure to make greater reimbursement payments to the Plan.

As Plaintiffs themselves cannot articulate the unlawful nature of the premium payments, they cannot meet their burden of pleading that HealthCap knew of the circumstances rendering the transactions unlawful. Regardless, even if knowledge could be established, simply knowing that HealthCap was receiving plan assets, without more, does not establish knowing participation as contemplated in *Harris Trust*. Plaintiffs' Second Claim must be dismissed against HealthCap.

## CONCLUSION

For the foregoing reasons, Defendant HealthCap respectfully requests that this Court grant its motion to dismiss the Complaint in its entirety as against HealthCap, and provide such other and further relief as this Court deems just and appropriate.

Dated: New York, New York
      April 3, 2019

**PUTNEY, TWOMBLY, HALL & HIRSON LLP**

  /s/ Thomas A. Martin
Thomas A. Martin
Rebecca K. Kimura
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

*Attorneys for Defendant HealthCap Assurance, Inc.*