## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YNES M. GONZALEZ DE FUENTE, MARIYA KORBRYN, and IVAN KORBRYN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PREFERRED HOME CARE OF NEW YORK LLC, EDISON HOME HEALTH CARE, HEALTHCAP ASSURANCE, INC., BERRY WEISS, SAMUEL WEISS, DOES 1-15, Inclusive,<br><br>Defendants. | Case No. 18-cv-6749-AMD-PK |

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>THE EDISON DEFENDANTS' MOTION TO DISMISS</u>

**HODGSON RUSS LLP**
Peter C. Godfrey
605 Third Avenue, Suite 2300
New York City, NY 10158
Telephone: (212) 751-4300
pgodfrey@hodgsonruss.com

**ALSTON & BIRD LLP**
Emily Costin, *Pro Hac Vice*
H. Douglas Hinson, *Pro Hac Vice*
The Atlantic Building
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3300
emily.costin@alston.com
doug.hinson@alston.com

*Attorneys for Defendants Preferred Home Care of New York, LLC, Edison Home Health Care, Berry Weiss, and Samuel Weiss*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 2

    I.     The Wage Parity Law ............................................................................... 2

    II.    The Edison Defendants ............................................................................ 3

    III.   Plaintiffs' Allegations ............................................................................. 4

STANDARDS OF REVIEW ............................................................................................ 5

ARGUMENT ................................................................................................................... 7

    I.     The Court lacks subject matter jurisdiction over the ERISA Claims because Plaintiffs lack constitutional standing to bring them................................ 7

         A.    Plaintiffs fail to allege any concrete and particularized injury arising from the ERISA Claims. ............................................. 8

         B.    Plaintiffs must still demonstrate personal injury even when bringing claims in a derivative capacity "on behalf of" the Plan. ............ 11

         C.    Plaintiff Gonzalez lacks statutory standing to bring the ERISA Claims. .......................................................................... 13

    II.    The Court should dismiss the Wage Parity Claim because Plaintiffs fail to state a claim upon which relief can be granted. .................................... 15

    III.   The Court should decline to exercise supplemental jurisdiction over the Wage Parity Claim. ........................................................................... 20

    IV.   The Court should dismiss the Wage Parity Claim against Preferred under the "first filed" rule. ............................................................................ 23

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Federal Cases**

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006)..................................................................................23

*Aetna Health Inc. v. Davila,*
    542 U.S. 200 (2004)..............................................................................................8

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS, Inc.,*
    465 F.3d 1123 (9th Cir. 2006) .......................................................................11, 12

*All. Indus. v. Longyear Holdings, Inc.,*
    854 F. Supp. 2d 321 (W.D.N.Y. 2012) ............................................................3, 17

*APWU v. Potter,*
    343 F.3d 619 (2d Cir. 2003)..................................................................................6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................6, 16, 20

*Babul v. Demty Assocs. Ltd. P'ship,*
    No. 17-CV-5993 (BMC), 2019 WL 79423 (E.D.N.Y. Jan. 2, 2019)......................22

*Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.,*
    134 F.3d 87 (2d Cir. 1998)..................................................................................21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................6, 16, 20

*Castillo v. Taco Bell of Am., LLC,*
    960 F. Supp. 2d 401 (E.D.N.Y. 2013) .................................................................23

*Cent. Laborers' Pension Fund v. Heinz,* 541 U.S. 739 (2004)......................................8

*Cent. States Se. & Sw Areas Health and Welfare Fund v. Merck-Medco Managed
    Care,*
    433 F.3d 181 (2d Cir. 2005)................................................................................11

*Connecticut v. Physicians Health Servs. of Conn., Inc.,*
    287 F.3d 110 (2d Cir. 2002)................................................................................14

*Cunningham v. Cornell Univ.,*
    No. 16-cv-6525 (PKC), 2017 U.S. Dist. LEXIS 162420 (S.D.N.Y. Sep. 29,
    2017) ...................................................................................................................16

*Daimler Chrysler Corp. v. Cuno*,
   126 S. Ct. 1854 (2006) ..................................................................................7

*David v Alphin*,
   704 F.3d 327 (4th Cir. 2013) .........................................................................9

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989) .....................................................................................14

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
   463 U.S. 1 (1983) .........................................................................................13

*Frank v. Gaos*,
   586 U.S. ___, No. 17-961, 2019 U.S. LEXIS 2089 (March 20, 2019) ..................13

*Harley v. Minn. Mining & Mfg. Co.*,
   284 F.3d 901 (8th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003) ........................11

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) .......................................................................................9

*Irish Lesbian & Gay Org. v. Bratton*,
   882 F. Supp. 315 (S.D.N.Y. 1995), *aff'd*, 52 F.3d 311 (2d Cir. 1995) ..................22

*Jones v. Ford Motor Credit Co.*,
   358 F.3d 205 (2d Cir. 2004) .......................................................................21, 22

*Kajoshaj v. N.Y.C. Dep't of Educ.*,
   543 F. App'x 11 (2d Cir. 2013) ....................................................................16

*Kendall v. Employees Retirement Plan of Avon Prods.*,
   561 F.3d 112 (2d Cir. 2009) .................................................................10, 11, 12

*Kytel Int'l Grp., Inc. v. Rent A Ctr., Inc.*,
   43 F. App'x 420 (2d Cir. 2002) ...................................................................23

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*,
   710 F.3d 57 (2d Cir. 2013) .......................................................................12, 13

*Lee v. Verizon Commc'ns, Inc.*,
   837 F.3d 523 (5th Cir. 2016) .........................................................................9

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ....................................................................................8, 9

*Loren v. Blue Cross & Blue Shield of Mich.*,
   505 F.3d 598 (6th Cir. 2007) ........................................................................11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................................................7

*Lynch v. U.S. Auto. Ass'n*,
  614 F. Supp. 2d 398 (S.D.N.Y. 2007).........................................................................22

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000).........................................................................................5

*Messmer v. Xerox Corp.*,
  139 F. Supp. 2d 398 (W.D.N.Y. 2001) ......................................................................15

*Morris v. Yale Univ. Sch. of Med.*,
  No. 05 CV 848, 2006 WL 908155 (D. Conn. Apr. 4, 2006) .......................................21

*Morrison v. National Australia Bank, Ltd.*,
  437 F.3d 167 (2d Cir. 2008).........................................................................................5

*Nechis v. Oxford Health Plans, Inc.*,
  421 F.3d 96 (2d Cir. 2005)....................................................................................14, 15

*Nolan v. Meyer*,
  520 F.2d 1276 (2d Cir. 1975), *cert. denied,* 423 U.S. 1034 (1975)............................22

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013)..........................................................................................6

*Promisel v. First Am. Artificial Flowers Inc.*,
  943 F.2d 251 (2d Cir.1991)..........................................................................................23

*Pyskaty v. Wide World of Cars, LLC*,
  856 F.3d 216 (2d Cir. 2017).........................................................................................16

*Scanlan v. Kodak Ret. Income Plan*,
  678 F.Supp.2d 110 (W.D.N.Y. 2010) ..........................................................................15

*Sheedy v. Adventist Health Sys.*,
  No. 6:16-cv-1893-Orl-31GJK, 2018 WL 3538441 (M.D. Fla. July 23, 2018)........................9

*Somin v. Total Cmty. Mgmt. Corp.*,
  494 F. Supp. 2d 153 (E.D.N.Y. 2007) ..........................................................................22

*Spiegel v. Schulmann*,
  No. 03–CV–5088, 2006 WL 3483922 (E.D.N.Y. Nov. 30, 2006) .........................................21

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 1540 (2016).....................................................................................7, 10, 12, 13

*Taveras v. UBS AG*,
   612 Fed. App'x. 27 (2d Cir. 2015)..................................................................11, 12

*Turkmen v. Ashcroft*,
   589 F.3d 542 (2d Cir. 2009)..................................................................................16

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966)..........................................................................................21, 22

*United States v. Davis*,
   319 F. Supp. 3d 608 (E.D.N.Y. 2018) .............................................................12, 13

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State,*
   *Inc.*, 102 S. Ct. 752 (1982)....................................................................................7, 8

*Veeco Instruments, Inc. v. SGL Carbon LLC*,
   2017 WL 8676438 (E.D.N.Y. 2017)......................................................................12

*Williams v. Berkshire Fin. Grp., Inc.*,
   491 F. Supp. 2d 320 (E.D.N.Y. 2007) ...................................................................22

**State Cases**

*Theurer v. Trustees of Columbia Univ. in City of New York*,
   59 A.D.2d 196 (N.Y. App. Div., 3d Dept. 1977)...................................................19

**Federal Statutes**

28 U.S.C. § 1367..............................................................................................................21, 22

29 U.S.C. §§ 1001, *et seq.*...........................1, 2, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 20, 22

29 U.S.C. § 1024..................................................................................................................1

29 U.S.C. § 1132......................................................................................................1, 13, 24

40 U.S.C. § 3141(2)(B)(i)...................................................................................................18

40 U.S.C. § 3142(c)(1)........................................................................................................18

**State Statutes**

N.Y. Public Health Law § 3614-c....................1, 2, 3, 5, 10, 13, 15, 16, 17, 18, 19, 20, 21, 23, 24

N.Y. Stat. L. § 222 .............................................................................................................19

New York Labor Law Section 220 ................................................................................18, 19

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................1, 6

Fed. R. Civ. P. 12 .................................................................................................1, 6

**Regulations**

29 C.F.R. § 4.171 ...................................................................................................19

29 C.F.R. § 4.175 ..............................................................................................18, 19

N.Y. Comp. Codes R. & Regs. tit. 12 § 220.2(a) ........................................19

**Other Authorities**

Self-Funded Health Insurance Plans, 2011 Colum. Bus. L. Rev. 429, 440 (2011) ........................3

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1) and 12(b)(6), Defendants Preferred Home Care of New York, LLC ("Preferred"), Edison Home Health Care ("Edison"), Berry Weiss, and Samuel Weiss ("Edison Defendants") submit this Memorandum of Law in support of their motion to dismiss Counts II-IV ("ERISA Claims") and Count V ("Wage Parity Claim") of the Complaint filed by Ynes Gonzalez de Fuente, Mariya Kobryn, and Ivan Kobryn ("Plaintiffs").[1]  Specifically, Counts II-V of Plaintiffs' Complaint should be dismissed for the following reasons:

1.      As to Plaintiffs' ERISA Claims, this Court lacks subject matter jurisdiction because Plaintiffs lack the requisite constitutional standing.  In addition, Plaintiff Gonzalez lacks statutory standing under ERISA to pursue such claims.

2.      As to Plaintiffs' Wage Parity Claim, Plaintiffs have failed to allege any actual violation of the Wage Parity Law under its plain terms.  In fact, Plaintiffs have failed to meet their burden under Fed. R. Civ. P. 8(a) to plead sufficient facts to support their assertion that any of the Edison Defendants received an improper financial benefit under their Wage Parity Law theory.

3.      Even if Plaintiffs had properly pled a Wage Parity Claim, because the ERISA Claims are fatally defective, this Court should decline to exercise supplemental jurisdiction over the Wage Parity Claim.[2]

---

[1]     As used herein, "ERISA" refers to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.*  The "Wage Parity Law" refers to the New York Home Health Care Wage Parity Law, N.Y. Public Health Law Section 3614-c.

[2]     Plaintiff Gonzalez also brings an individual (non-class) claim against Edison and Preferred pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c) for the alleged failure to provide certain requested Plan documents in violation of 29 U.S.C. § 1024(b) (Count I) (the "Document Claim").  The Document Claim is not at issue in this Motion.  For the reasons discussed herein at Argument Section III, the remaining Document Claim does not provide a sufficient basis for this Court to retain supplemental jurisdiction over the Wage Parity Claim.

4.      Finally, the Wage Parity Claim should be dismissed as against Defendant Preferred based upon the first filed rule, as another action seeking relief against Preferred for alleged violations of the Wage Parity Law is already pending in this Court.

## BACKGROUND

## I.      **The Wage Parity Law**

Plaintiffs' allegations, both as to their federal ERISA Claims and their Wage Parity Claim, are premised on the Wage Parity Law, a relatively new New York statute.  The Wage Parity Law, which took effect on March 1, 2012, provides that "no payments by government agencies shall be made to certified home health agencies, long term home health care programs, [or] managed care plans  . . .  for any episode of care furnished, in whole or in part, by any home care aide who is compensated at amounts less than the applicable minimum rate of home care aide total compensation established pursuant to this section."  N.Y. Public Health Law § 3614-c(2).  "Total Compensation" is defined to include "wages and other direct compensation paid to or provided on behalf of the employee including, but not limited to, wages, health, education or pension benefits, supplements in lieu of benefits and compensated time off."  *Id.* § 3614-c(1)(b).

"Total Compensation" consists of two elements: (1) the "Cash Portion" and (2) the "Benefit Portion."  *Id.* § 3614-c(1)(g), (h).  The "Cash Portion" is the portion that must be paid in "cash wages."  *Id.* § 3614-c(1)(g).  The "Benefit Portion" may be paid either in cash *or* through the provision of certain enumerated benefits including, "health, education or pension benefits . . . . ."  *Id.* § 3614-c(1)(h).  Pertinent to this Motion, the Wage Parity Law does not specify what type of employee health benefits program an employer must offer, or how such health benefits must be funded in order to satisfy the Wage Parity Law requirements.  *Id.* § 3614-c.

The amount of the Cash and Benefit Portions have varied since the Wage Parity Law was passed, and also depend on whether the care was provided in New York City or in other covered

locations.  *Id.* § 3614-c(3)(a), (b).  For periods relevant to Plaintiffs' Complaint, the Cash Portion and Benefit Portions for care furnished in New York City were as follows:

| Dates | Cash Portion | Benefit Portion |
|---|---|---|
| 3/1/2014 – 12/30/2016 | $10.00 | $4.09 |
| 12/31/2016 – 12/30/2017 | $11.00 | $4.09 |
| 12/31/2017 – 12/30/2018 | $13.00 | $4.09 |

*See* § 3614-c(3); Compl. ¶¶ 36, 38, 40.

## II.    **The Edison Defendants**

Edison and Preferred are home health care providers based in Brooklyn, New York. Compl. ¶¶ 16-17.  Individual Defendants Berry and Samuel Weiss are alleged to be officers of the respective companies.  *Id.* ¶¶ 18-19.  Edison and Preferred opted to satisfy the Benefit Portion of the Wage Parity Law, in material part, by providing eligible home health care aides with health benefits through creation of the Edison Home Health Care Welfare Plan (the "Plan").  *Id.* ¶¶ 28, 36-41.  The Plan is a "self-funded" employee health benefit plan, meaning that Edison and Preferred fund a trust that pays the cost of covered medical claims.[3]  *Id.* ¶ 63.  The Plan, in turn, entered into a form of stop-loss insurance – a "quota share reinsurance agreement" with HealthCap Assurance, Inc. ("HealthCap"), which assumed a portion of and limited the Plan's overall medical claims exposure.  *Id.* ¶¶ 20, 64-67.[4]

---

[3]    There are generally two types of employee welfare benefit plans: "self-funded" and fully "insured."  In a "self-funded" plan, rather than contracting with a commercial health insurer to provide medical benefits coverage for a premium, employers instead assume direct financial responsibility for the costs of the employee's claims.  *See generally*, David Goldin, Survey, External Review Process Options for Self-Funded Health Insurance Plans, 2011 Colum. Bus. L. Rev. 429, 440 (2011).

[4]    *See generally All. Indus. v. Longyear Holdings, Inc.*, 854 F. Supp. 2d 321, 330 (W.D.N.Y. 2012) (explaining how a self-funded plan may choose to cover itself with stop loss insurance).

III.  **Plaintiffs' Allegations**

Plaintiff Ynes M. Gonzalez de Fuente ("Gonzalez") is a home health aide formerly employed by Preferred, and Plaintiffs Maria Kobryn and Ivan Kobryn are home health aides currently employed by Edison. *Id.* ¶¶ 1, 10-14. Plaintiffs do not complain they were ever denied access to participate in the Plan. Rather, they admit they were automatically enrolled in the Plan upon employment, and provided a Plan benefit card and accompanying Summary Plan Description. *Id.* ¶¶ 49-50, 62. Though Plaintiffs complain about the expense of certain co-pay, deductible, and premium components of the Plan, and suggest that certain participants may have had "difficulty accessing benefits under the Plan" (*id.* ¶¶ 51-55), Plaintiffs do not allege that they were ever denied health benefits promised under the terms of the Plan, or that any specific health benefit claims they incurred and submitted to the Plan for payment were unpaid or underpaid. Nor do Plaintiffs complain that the Plan trust is underfunded, or will be unable to pay future health benefits that may come due.

Instead, Plaintiffs generally complain about the Plan's reinsurance arrangement with HealthCap. *Id.* ¶¶ 1, 20, 64-67. HealthCap is a captive insurance company; Plaintiffs allege that HealthCap, or an affiliated "cell" entity, is "own[ed] or control[led]" by Defendants. *Id.* ¶ 20. Plaintiffs contend the Plan's use of HealthCap was somehow a "scheme" or a "shell game" designed to divert benefit dollars back to the control of the Edison Defendants. Significantly though, Plaintiffs do not allege any *facts* to support their conclusory allegations that any funds have, in fact, been returned to any of the Edison Defendants "for their own financial gain." Rather, Plaintiffs simply make broad generalizations about the captive insurance industry and conclusory allegations about the HealthCap arrangement "upon information and belief." *Id.* ¶¶ 56-70.

Plaintiffs *admit* they received the minimum Cash Portion of the Total Compensation, and *admit* they received all health benefits owed under the terms of the Plan. Nevertheless, Plaintiffs

inexplicably claim they were somehow "cheated out of millions of dollars of wages and benefits to which they were entitled." *Id.* ¶ 1.[5]  To that end, Plaintiffs allege that each of the Edison Defendants is cloaked in fiduciary status under ERISA, and that, in their capacity as ERISA fiduciaries they engaged in several violations of that statute's fiduciary rules in connection with the captive insurance arrangement with HealthCap.  Plaintiffs generally seek to have the Edison Defendants "disgorge" any "profits" they have supposedly made as a result of such arrangement. *See* Counts II-IV.  Plaintiffs also claim that, because this self-funded Plan obtained reinsurance through a captive insurance company (as opposed to acquiring a fully-insured health insurance policy through a general commercial insurer), the health benefits promised under and provided through the Plan are somehow illusory, and not legally creditable towards the Benefit Portion of Total Compensation under the Wage Parity Law.  *See* Count V.  Plaintiffs seek damages in the form of back wages to "make [them] whole" for this alleged violation. *Id.* at p. 29; *see also* Plaintiffs' Response to Defendants' Pre-Motion Conference Letter (ECF No. 30) at 1 ("*Plaintiffs allege they were denied the Benefit Portion due under the Wage Parity Law. . .*").

## STANDARDS OF REVIEW

A case is "properly dismissed . . . under [Rule] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  *Id.*  "[J]urisdiction must be shown affirmatively, and the showing is not made by drawing from the pleadings inferences favorable to the party asserting

---

[5]     To the extent any of the Plaintiffs claimed they were denied any health benefits under the terms of the Plan, or that any health benefits were unpaid or underpaid, such a claim would arise under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (enabling a participant to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"). No such claim under ERISA § 502(a)(1)(B) has been raised in this case.

it." *Morrison v. National Australia Bank, Ltd.,* 437 F.3d 167, 170 (2d Cir. 2008), quoting *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir. 2003).

Further, Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* citing *Twombly*, 550 U.S. at 570. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citations omitted). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). In short, "Federal Rule of Civil Procedure 8(a)(2) requires a "*showing,* rather than a blanket assertion, of entitlement to relief," and the "*factual allegations* must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56, n.3 (emphasis added).

To the extent that a complaint fails to meet this threshold level of plausibility, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 557-58; *see also Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 719 (2d Cir. 2013) ("Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, as interpreted in *Twombly* and *Iqbal*, help to prevent settlement extortion — using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit." (internal quotation marks and citations omitted)).

# ARGUMENT

I. **The Court lacks subject matter jurisdiction over the ERISA Claims because Plaintiffs lack constitutional standing to bring them.**

The Constitution carefully confines the power of the federal courts to deciding cases and controversies. *See* U.S. Const. Art. III, § 2. In order for there to be a "case or controversy" granting a court with subject matter jurisdiction, a plaintiff must demonstrate constitutional standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). The "irreducible constitutional minimum" of standing requires that the plaintiff must have suffered: (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 1548 citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (citations omitted).

As in *Spokeo*, this Motion primarily concerns the "first and foremost" of standing's three elements – an injury-in-fact. *Id.* (citations omitted). "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* "To establish injury-in-fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.*

The Supreme Court has made clear "time and time again" that an injury-in-fact must be *both* concrete and particularized. *Id.* For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* citing *Daimler Chrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1856 (2006) ("plaintiff must allege personal injury") and *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 102 S. Ct. 752, 758 (1982) (standing requires

that the plaintiff "personally has suffered some actual or threatened injury"). Though particularization is necessary to establish injury-in-fact, it is not sufficient on its own. *Id.* To be "concrete" an injury must be "real, and "not abstract," and "must actually exist." *Id.*

A.   **Plaintiffs fail to allege any concrete and particularized injury arising from the ERISA Claims.**

ERISA has two fundamental purposes. First, ERISA ensures that employees who are eligible to participate in ERISA-regulated benefit plans are given a fair right to participate and actually receive their promised benefits. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) ("Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'") quoting 29 U.S.C. § 1001(b). Second, to the extent that employers fund such plans, ERISA ensures employers do so in a manner that will ensure the promised benefit is provided to the employee when due. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) ("ERISA . . . seek[s] to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits."). There is no doubt that ERISA's central objective is "protecting employees' justified expectations of receiving the benefits their employers promise them." *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 743 (2004).

Here, Plaintiffs do not allege that they have suffered any actual injury – an injury that personally and concretely exists – arising from their ERISA Claims. Plaintiffs admit that they were allowed to participate in the Plan, and do not claim any of their actually incurred health

benefits went unpaid.  Nor do Plaintiffs allege that they suffered injury from Plan design features that failed to satisfy ERISA.[6]

Moreover, Plaintiffs do not allege that the Plan is currently underfunded or will be underfunded, such that there is concrete, personal risk to Plaintiffs that the Plan will not be able to pay their health benefits in the future.  Even if Plaintiffs did allege some "risk" to the Plan's future funding, courts have routinely held that such speculative allegations of risk of plan underfunding do not constitute an injury – let alone an injury that is concrete and particularized, and actual or imminent.  *See, e.g., Lee v. Verizon Commc'ns, Inc.,* 837 F.3d 523, 546 (5th Cir. 2016) ("[Plaintiff's] allegations do not further allege the realization of risks which would create a likelihood of direct injury to participants' benefits."); *David v Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) ("We find on this record the alleged risk [to plan funding] to be insufficiently 'concrete and particularized' to constitute an injury-in-fact for Article III standing purposes."); *see also Sheedy v. Adventist Health Sys.,* No. 6:16-cv-1893-Orl-31GJK, 2018 WL 3538441, *4 (M.D. Fla. July 23, 2018) ("[Plaintiff] does not explain what benefit she is entitled to under the [plan], or when that benefit is due.  She does not indicate whether the [plan] has ever failed to make a required payment, nor does she indicate when the [plan] will need additional funding in order to meet its payment obligations.  The Plaintiff has not adequately pleaded that she faces a substantial, rather than merely speculative, risk of future injury. Thus, the Plaintiff lacks standing to bring Count III with respect to the [plan].").

---

[6]      Even if the Plan's features somehow violated ERISA, such plan design decisions are a plan sponsor/settlor function, not a fiduciary function, and Plaintiffs plead only ERISA breach of fiduciary duty claims. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("composition or design" of an ERISA plan "does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets"); *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) (indicating that plan design was not subject to fiduciary review but was instead a settlor function).

On the contrary, the Complaint makes clear that the Plan is actually *overfunded*. Specifically, Plaintiffs allege that Edison and Preferred contributed approximately $35.5 million dollars to the Plan, but the Plan paid out less than $10 million in health benefits.  Compl.¶¶ 5; 68-70.  Perhaps this is because "many" employees – including Plaintiff Gonzalez – affirmatively and voluntarily *chose* not to use the Plan, but to use alternative insurance instead.  *Id.* ¶¶ 53-54.  Based on Plaintiffs' own allegations, Edison and Preferred contributed the requisite funds to provide the benefits promised, *and* Plaintiffs received their ERISA-regulated benefits.[7]

The Second Circuit has made clear that this flaw in an ERISA complaint deprives the federal courts of subject matter jurisdiction.  "The statute does impose a general fiduciary duty to comply with ERISA, but it does not confer a right to every plan participant to sue the plan fiduciary for ERISA violations without a showing that they were injured by the alleged breach of the duty." *Kendall v. Employees Retirement Plan of Avon Prods.*, 561 F.3d 112, 120 (2d Cir. 2009).  A plaintiff "cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing."  *Id*. at 121.  Nor will a complaint survive if the "injury [is] entirely speculative and any harm to plaintiffs [is] hypothetical at best."  *Id.* at 122 (quotation marks and brackets omitted).  Here, Plaintiffs do not allege that they have suffered (or will suffer) any injury, speculative or not.  Their ERISA Claims cannot survive.

Indeed, seven years after *Kendall,* the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo*, 136 S.Ct. at 1549.

---

[7]     The only actual injury Plaintiffs identify anywhere in their Complaint is the supposed deprivation of the "Benefit Portion of their Total Compensation required under the Wage Parity Law."  (ECF No. 30 at 1.)  As explained below, that is not the case as a matter of the plain meaning of the Wage Parity Law.  *See infra*, at p. 15.  And in all events such injury would be as a consequence of conduct violative of the Wage Parity Law (Count V), not from any alleged fiduciary breach under Plaintiffs' ERISA Claims (Counts II-IV).

The Supreme Court thus confirmed that every plaintiff must plead an actual injury in order for the federal courts to hear his or her case.  In Counts II-IV, Plaintiffs claim a statutory violation but fail to allege an actual injury.  For this reason, the ERISA Claims should be dismissed.

### B. Plaintiffs must still demonstrate personal injury even when bringing claims in a derivative capacity "on behalf of" the Plan.

Because they have not identified any concrete or particularized injury arising from the alleged ERISA violations, Plaintiffs suggest they need not show such individualized harm because they assert their claims in a "derivative capacity on behalf of the Plan."  ECF No. 30 at 1-2.  The Second Circuit has plainly rejected this very argument.  *Kendall,* 561 F.3d at 118 (rejecting plaintiff's argument that "she need not show individualized harm" to sustain a claim under ERISA as a "clear misstatement of law.") citing *Cent. States Se. & Sw Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 197 (2d Cir. 2005); *see also Taveras v. UBS AG*, 612 Fed. App'x. 27, 29 (2d Cir. 2015) ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant.").

Further, every other Circuit Court to address this issue is in accord with *Kendall* – finding that an ERISA plaintiff who seeks recovery in a "derivative" or "representative" capacity "on behalf of" a plan must still establish an individualized, personal injury to meet the requirements of Article III standing.  *See, e.g., Harley v. Minn. Mining & Mfg. Co*., 284 F.3d 901, 906-07 (8th Cir. 2002) (determining that there was no constitutional standing because the "loss did not cause actual injury to plaintiff's interests in the plan," and that Article III limits "participants . . .  who have suffered no injury . . . from suing to enforce ERISA fiduciary duties on behalf of the Plan"), *cert. denied*, 537 U.S. 1106 (2003); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007)  ("Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing"); *Glanton*

*ex rel. ALCOA Prescription Drug Plan v. AdvancePCS, Inc.,* 465 F.3d 1123, 1125 (9th Cir. 2006) (holding that only plaintiffs who suffer individual injury have standing to bring ERISA class action in representative capacity and finding "no . . . tradition of unharmed ERISA beneficiaries bringing suit on behalf of their plans").  No Circuit Court has held otherwise.

Plaintiffs will undoubtedly cite to footnote 5 of *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc*., 710 F.3d 57 (2d Cir. 2013); *see* ECF No. 30 at 2 (citing *Head Start*).  In that footnote, the Second Circuit noted that the plaintiffs had "asserted their claims in a derivative capacity, to recover for injuries to the plan" and then summarily concluded (with no analysis) that constituted an "injury-in-fact sufficient for constitutional standing." *Id.* at 65, n.5.  The Second Circuit made no effort to reconcile its footnote with its prior decisions in *Kendall* and *Central States*. "Given this conflict, th[is] Court [should] view[] the Second Circuit's earlier decision[s] . . . as the governing authority." *Veeco Instruments, Inc. v. SGL Carbon LLC*, 2017 WL 8676438, at *7 (E.D.N.Y. 2017).

In any event, footnote 5 of *Head Start* is not good law.  *Head Start* was decided three years before the Supreme Court's 2016 decision in *Spokeo*.  In *Spokeo*, the Supreme Court rejected the very premise that "a plaintiff automatically satisfies the 'injury-in-fact' requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549.  Instead, the Supreme Court made clear that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1543.  For that reason, the conclusory statement in footnote 5 of *Head Start* that the plaintiffs "automatically" achieved constitutional standing because they brought their claims in a "derivative capacity" on behalf of the plan, has been overruled by the Supreme Court's subsequent authority in *Spokeo* and should be rejected.  *See Taveras*, 612 Fed. App'x. at 29; *see also United States v. Davis*, 319 F.

Supp. 3d 608, 612 (E.D.N.Y. 2018) ("When 'a subsequent decision of the Supreme Court so undermines [Second Circuit precedent] that it will almost inevitably be overruled,' the [d]istrict [c]ourt is bound by the Supreme Court's ruling and not by the Second Circuit's prior decisions."); *see, e.g., Frank v. Gaos,* 586 U.S. ___, No. 17-961, 2019 U.S. LEXIS 2089, at *8-9  (March 20, 2019) (reiterating holding in *Spokeo* and remanding for the courts below to address plaintiffs' standing in light of *Spokeo*).

Moreover, footnote 5 of *Head Start* is properly read as mere dicta.  In *Head Start*, the plaintiffs — participating employers who had previously prevailed in a lawsuit against an ERISA plan and its trustees — sued the plan administrators who had depleted ERISA plan funds such that the plaintiffs could not collect on the judgment owed them.  *Head Start*, 710 F.3d at 61-63.  In other words, the plaintiffs had suffered concrete, personal injury – not merely injury to the plan.  The administrators' failure "to keep the [p]lan financially solvent" meant that the plan could not pay the money judgment that otherwise would have been paid to the plaintiffs.  *Id.* at 65.  The statement in footnote 5 was therefore dicta because the plaintiffs, as well as the plan, *had* suffered actual, redressable, personal injury by conduct of the plan administrators.  Here, by contrast, Plaintiffs do not allege they suffered any personal harm as a result of Defendants' alleged ERISA violations.

Because Plaintiffs have not identified any personal, concrete injury from alleged ERISA violations, but instead allege they were injured only as a result of violations of the Wage Parity Law, they lack Article III standing to bring their ERISA claims.  Therefore, this Court has no subject matter jurisdiction to adjudicate their ERISA Claims (Counts II-IV).

C.     **Plaintiff Gonzalez lacks statutory standing to bring the ERISA Claims.**

ERISA § 502(a) only allows participants, beneficiaries, and fiduciaries to bring claims under ERISA.  29 U.S.C. § 1132(a).  The Supreme Court has made clear that ERISA § 502(a) is

to be narrowly construed to permit *only* those enumerated parties to sue directly for relief. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 27 (1983); *see also Nechis v. Oxford Health Plans, Inc*., 421 F.3d 96, 100–01 (2d Cir. 2005) ("The Supreme Court has construed § 502 narrowly to allow only the stated categories of parties to sue for relief directly under ERISA."); *Connecticut v. Physicians Health Servs. of Conn., Inc.,* 287 F.3d 110, 112 (2d Cir. 2002) ("Because Congress 'carefully drafted' § 1132, parties other than those explicitly named therein — plan participants, beneficiaries, and fiduciaries—may not bring suit.").

ERISA defines a "participant" as:

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).  The Supreme Court has interpreted this language as it applies to former employees:

> In our view, the term "participant" is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or ***former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits.*** . . . A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the phrase "may become eligible."

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–18 (1989) (citations, internal quotation marks, and alterations omitted) (emphasis added).

Plaintiff Gonzalez summarily alleges that she was a "participant" at all pertinent times (Compl. ¶ 10),  but (1) she admits she was no longer employed with Preferred at the time she filed the Complaint in November 2018 (*id.*), and (2) does not allege that she has a reasonable expectation

-14-

of returning to employment with Preferred.[8]  And, she does not (and cannot) allege she has a

colorable claim to "vested benefits" in the Plan.[9]  Thus, Plaintiff Gonzalez simply has not met the

requisite requirements to establish standing as a "participant" to bring the ERISA claims herein.

*See Scanlan v. Kodak Ret. Income Plan,* 678 F.Supp.2d 110, 115 (W.D.N.Y. 2010) (a former

employee lacked standing under ERISA based on the "reasonable expectation" prong because he

"[did] not expect to return to employment" and the benefit sought was not one for which he himself

is "eligible, or may become eligible"); *accord Nechis*, 421 F.3d at 101 (plaintiff lacked statutory

standing under ERISA because she was no longer a participant and could not establish a colorable

claim she might again become eligible for benefits).

## II.   The Court should dismiss the Wage Parity Claim because Plaintiffs fail to state a claim upon which relief can be granted.

Plaintiffs concede that they have, at all relevant times, been paid at or above the required

minimum Cash Portion of the Total Compensation required by the Wage Parity Law.  Compl. ¶¶

29-37.  They also concede that they received certain transit, paid time off, and health benefits.  *Id.*

¶¶ 10-12, 43, 44, 48.  All such benefits are creditable towards "Total Compensation" under the

Wage Parity Law.  *See* § 3614-c(1)(h).  Despite these dispositive factual concessions, Plaintiffs

grasp at straws by complaining about alleged defects in the structure of the Plan, which defects

allegedly violate the Wage Parity Law.

As discussed above, Plaintiffs admit they were covered under the Plan, and they do not

allege that they were ever denied access to benefits under the Plan.  Compl. ¶¶ 10-12, 49-50. To

the contrary, the Complaint acknowledges that Edison and Preferred employees were covered

---

[8]    It is worth noting that, even though she purports to be a "participant," Plaintiff Gonzalez concedes she never actually participated in the Plan, but chose to pursue health benefits through alternatives instead.  Compl. ¶¶ 53-54.
[9]    The Plan at issue here is a welfare benefit plan providing coverage for medical services for certain current, eligible employees.   "[B]enefits under such [welfare benefit] plans generally do not 'vest,' as do pension benefits." *Messmer v. Xerox Corp.,* 139 F. Supp. 2d 398, 402 (W.D.N.Y. 2001) (collecting cases).

under the Plan, and when employees sought to utilize the health benefits coverage that the Plan afforded them, they received all benefits promised. Therefore, the amounts the employer Defendants contributed to the Plan are, under the plain language of the Wage Parity Law, creditable towards the requisite Total Compensation. *See* N.Y. Public Health Law §§ 3614-c(1)(b), (h).

Moreover, Plaintiffs do not allege that the wage parity credit Edison and/or Preferred took for the amounts they contributed to the Plan exceeded the Plan's fair market or actuarial value. *See generally* Compl. Rather, the Wage Parity Claim rests entirely on Plaintiffs' conclusory allegation that "millions of Benefit Portion dollars of the Minimum Rate of Wage Parity Law compensation, which are ostensibly spent to provide HHAs with health insurance, *are instead returned as surplus or result in other direct or indirect financial benefit to the Defendants*." Compl.¶ 57 (emphasis added). To support this allegation, Plaintiffs make sweeping generalizations about the captive insurance industry and how such organizations "typically" operate, and then summarily allege – upon information and belief — that the Edison Defendants are equity holders of the affiliated captive insurance cell that provides reinsurance coverage and received payments from the Plan trust. *Id.* ¶¶ 57, 61, 68-70. Plaintiffs cite no facts in support of this penultimate accusation, and such speculative, conclusory allegations "upon information and belief" are insufficient to state a claim under *Iqbal/Twombly*.[10]

---

[10]  *See, e.g., Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (speculative allegations made "upon information and belief" are insufficient without underlying factual basis); *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 16 (2d Cir. 2013) (pleading on the basis of "information and belief" must be grounded in a good-faith basis in fact); *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (stating that *Twombly* and *Iqbal* require "factual amplification" where needed "to render a claim plausible"); *see also Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2017 U.S. Dist. LEXIS 162420, at *31 (S.D.N.Y. Sep. 29, 2017) (simply reciting the statute and alleging that "upon information and belief" without a factual basis for doing so is "insufficient"). Although Plaintiffs' allegations that profits have been returned to the Edison Defendants are presumed true for purposes of this Motion, they are factually incorrect.

Even if such skimpy factual allegations satisfy Rule 8, Plaintiffs' legal conclusions do not satisfy Rule 12(b)(6).  Plaintiffs assert that an employer cannot satisfy the wage parity credit with "any portion of a benefit arrangement providing a refund or dividend of moneys contributed." Compl. ¶¶ 3, 28.  Nothing in the Wage Parity Law, or any regulation or case law, supports Plaintiffs' position.  The term "Total Compensation" is defined broadly in the Wage Parity Law to include "*all* wages and other direct compensation paid to *or provided on behalf of* the employee including, but not limited to, wages, *health*, education or pension benefits, supplements in lieu of benefits and compensated time off."  N.Y. Public Health Law § 3614-c(1)(b) (emphasis added). The statute contains no exclusions that could remove any particular type of health benefits arrangement from "Total Compensation."  Simply put, even if one assumes that Plaintiffs' allegations are true (and they are not), there is nothing in the Wage Parity Law that prohibits crediting toward "Total Compensation" the amounts paid by an employer toward self-insured health benefits arrangements, or toward self-insured arrangements with reinsurance provided by captive insurers.

Rather, the Wage Parity Law is concerned with the *value* of the benefit provided to the home care worker, not the net *cost* that the employer expends.  This is evidenced by the broad definition of "Total Compensation" that includes "all wages and other direct compensation *paid to or provided on behalf* of the employee including, but not limited to, wages, health, education or pension benefits, supplements in lieu of benefits and compensated time off." *Id.* § 3614-c(1)(b) (emphasis added).  That the Wage Parity Law focuses on the *value* of the benefit provided, not the net cost expended, is also underscored by the 2016 amendments to the Wage Parity Law.  Prior to these amendments, the Wage Parity Law required covered employers to pay the greater of the living wage under New York City ordinance or the "prevailing rate" as measured by "the average

hourly amount of total compensation paid to all home care aides covered by whatever collectively bargained agreement covers the greatest number of home care aides in a city with a population of one million or more." *See* 2011 N.Y. Sess. Law Ch. 59, § 33 (establishing § 3614-c as in effect April 1, 2011 to April 3, 2016). Then, in 2016, the Legislature amended the statute to require payment of the Cash Portion, which is linked to the then-increasing minimum wage, and to fix a Benefit Portion in accordance with the previously determined rates, *e.g.,* $4.09 per hour for New York City. *See* 2016 Sess. Law News of N.Y. ch. 56, § 1 (amending § 3614-c effective April 3, 2016). The Legislative materials surrounding this amendment indicate that the intent was to "conform" the Wage Parity Law to the increasing minimum wage and ensure that the benefits portion was not invaded and reduced simply because of minimum wage increases. *See* N.Y. Bill Jacket, 2016 S.B. 8159, ch. 73; N. Y. Bill Jacket, 2015 S.B. 8159, ch. 56. Thus, the Legislature's focus was on the amount of money and value of benefits the worker received, not the net amount expended by the employer or any refund or dividend received by the employer.

Had the Legislature intended to require a "minimum spend" or "minimum net spend" concept, or to prohibit "refunds or dividends," it could have done so. Indeed, the Legislature could have modeled the Wage Parity Law on other prevailing wage laws such as Section 220 of the New York Labor Law ("NYLL") or the federal Davis Bacon Act ("DBA") or Service Contract Act ("SCA"). For instance, the DBA requires that covered contracts contain a stipulation that the contractor will pay covered employees the prevailing wage "without subsequent deduction or rebate on any account." 40 U.S.C. § 3142(c)(1). Moreover, it defines wages to include fringe benefit funds only to the extent the employer's contribution thereto is "irrevocably made." 40 U.S.C. § 3141(2)(B)(i).

Likewise, the SCA regulations provide that the determination of minimum fringe benefits to be provided to employees working on covered contracts must be "based on the monetary cost to the employer rather than on the level of benefits provided." 29 C.F.R. § 4.175. The SCA regulations further provide that an employer's contributions to fringe benefits programs are only SCA-creditable if they are irrevocably paid to a trustee or other third party, except where the employer follows the regulatory process to obtain approval for a non-trusted, self-insured plan. *See* 29 C.F.R. § 4.171. And, the regulations under NYLL Section 220 limit supplements creditable towards the required compensation for employees working on a covered contract to the following:

> (1) any contribution ***irrevocably*** made by a contractor or subcontractor on behalf of laborers, workers and mechanics to a fund, plan or program to provide supplements; and

> (2) the cost to the contractor or subcontractor which is actually incurred in providing supplements not covered by paragraph (1) of this subdivision to laborers, workers and mechanics, provided such supplements are enumerated in the current annually determined prevailing wage rate schedule promulgated by the Commissioner of Labor for the applicable trade or occupation in the locality.

N.Y. Comp. Codes R. & Regs. tit. 12 § 220.2(a)(emphasis added).  Thus, the Legislature easily could have established a "minimum spend" or "minimum net spend" requirement under the Wage Parity Act.  Moreover, it could have prohibited "refunds or dividends" on amounts employers contribute toward health benefit arrangements from being credited toward "Total Compensation". It did neither.  This shows that Plaintiffs' focus on the net cost to the employer is not supported by the statute.  *See* N.Y. Stat. L. § 222 ("A statute is to be construed with reference to earlier statutes ***in pari material***.") (emphasis in original); *id.*, cmt ("It is a general rule of statutory construction that earlier statutes are properly considered as illuminating the intent of the Legislature in passing later acts, especially where there is doubts as to how the later act should be construed, since when enacting a statute the Legislature is presumed to act with deliberation and with knowledge of the existing statutes on the same subject."); *Theurer v. Trustees of Columbia Univ. in City of New*

-19-

*York*, 59 A.D.2d 196, 198 (N.Y. App. Div., 3d Dept. 1977) ("Where existing statutes encompass the same subject matter, the Legislature is presumed to act with deliberation and with knowledge thereof") (citations omitted).

Indeed, it is not surprising that the Legislature intentionally drafted the Wage Parity Law to allow employers to use a wide array of benefits and benefit structures to satisfy their obligations. When the Wage Parity Law was first enacted, the rate of Total Compensation was determined with reference to a local living wage law.  *See* N.Y. Public Health Law §§ 3614-c(3).  Beginning in 2014 and continuing until 2016, the statute used the value of wages and benefits provided under a certain collective bargaining agreement to determine the required rate of "prevailing rate of total compensation." *See id.* § 3614-c(3).  Then, in 2016, as noted above (*supra*, pp. 17 – 18), the statute was amended to codify the previously calculated $4.09 benefit contribution rate.  *See id.* § 3614-c(3).  Given these unique and varying methodologies, it makes good sense that the Legislature deliberately afforded employers significant latitude in designing permissible benefits structures to which the amounts contributed would be creditable toward Total Compensation.

For all of these reasons, Plaintiffs have failed to state any cognizable claim for violation of the Wage Parity Law.[11]

## III.    The Court should decline to exercise supplemental jurisdiction over the Wage Parity Claim.

Once Plaintiffs' ERISA Claims are properly dismissed, the Court should decline to exercise jurisdiction over the Wage Parity Claim in any event.  District courts properly decline to exercise supplemental jurisdiction over a claim grounded exclusively in State law if:

---

[11]    The Wage Parity Claim must also be dismissed to the extent it purports to seek relief under the NYLL.  Plaintiffs have merely cited the definition of "wages" in Section 190(1); they have not alleged a violation of any substantive NYLL provision.  Compl. ¶ 120.  Even if benefits that count towards Total Compensation for purposes of the Wage Parity Law constitute "wages," Plaintiffs have not articulated any NYLL violation.  Again, threadbare legal conclusions regarding NYLL violations do not satisfy Plaintiffs' pleading obligations. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Where one or more of the Section 1367(c) factors exist, district courts should decline to exercise supplemental jurisdiction, particularly where doing so will further the principles of economy, convenience, fairness, and comity.  *See Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 214 (2d Cir. 2004) (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966)).

The Wage Parity Claim undoubtedly raises novel and complex issues of State law. Specifically, Plaintiffs' allegation – that the use of a captive insurer to reinsure a self-funded health benefit plan violates the Wage Parity Law – is an issue of first impression.  As discussed above, there is nothing in the statute that supports this position in any way.  *See supra* at pp. 15-20.  Thus, this is exactly the type of situation 28 U.S.C. § 1367(c)(1) is intended to address. *See, e.g.*, *Lynch v. U.S. Auto. Ass'n*, 614 F. Supp. 2d 398, 401–02 (S.D.N.Y. 2007) ("The courts in this circuit have declined to exercise supplemental jurisdiction where, for example, the allegations raised a complex issue of first impression . . . or where uncertainty existed about the scope of the statutory mandate respecting the enactment and application of administrative regulations") citing *Spiegel v. Schulmann,* No. 03–CV–5088, 2006 WL 3483922, at *21 (E.D.N.Y. Nov. 30, 2006), *Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.,* 134 F.3d 87, 102 (2d Cir. 1998), and *Morris v. Yale Univ. Sch. of Med.,* No. 05 CV 848, 2006 WL 908155, at *4 n. 4 (D. Conn. Apr. 4, 2006).

It is particularly appropriate for this Court to decline supplemental jurisdiction here because interpretation of the Wage Parity Law will directly impact the functioning of the New

York State Medicaid system. The Wage Parity Law regulates the extent to which certified home health agencies and certain other health care program providers can receive payment for Medicaid-covered cases. *See generally* N.Y. Public Health Law § 3614-c. Thus, the complex and novel questions here "concern the state's interest in the administration of its government." *Lynch*, 614 F. Supp. 2d at 401-02.

Finally, declining to exercise supplemental jurisdiction over the Wage Parity Claim will further the principles of economy, convenience, fairness, and comity. *See Jones,* 358 F.3d at 214 (citing *Gibbs,* 383 U.S. at 726). It is appropriate to have state courts adjudicate matters of purely state law. *See, e.g.*, *Babul v. Demty Assocs. Ltd. P'ship*, No. 17-CV-5993 (BMC), 2019 WL 79423, at *7 (E.D.N.Y. Jan. 2, 2019) (declining to exercise supplemental jurisdiction over "uniquely state law claim"). Moreover, this case is in its infancy. Neither the parties nor the federal judicial system have invested significant resources in this litigation such that dismissal would create prejudice or waste. *See, e.g.*, *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) ("Where, as here, the court has dismissed before trial the only basis for Federal jurisdiction, the court should decline to exercise jurisdiction over the pendent state claims"); *Williams v. Berkshire Fin. Grp., Inc.*, 491 F. Supp. 2d 320, 329 (E.D.N.Y. 2007); *Irish Lesbian & Gay Org. v. Bratton*, 882 F. Supp. 315, 321 (S.D.N.Y. 1995), *aff'd*, 52 F.3d 311 (2d Cir. 1995) ("Where federal claims are disposed of well before trial, it is appropriate for the pendent state claims to be dismissed as well") citing *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir. 1975), *cert. denied,* 423 U.S. 1034, (1975).

Plaintiff Gonzalez's remaining individual (non-class) Document Claim (Count I) – even assuming she has standing under ERISA to bring it – is of no import to the § 1367 analysis. Count I alleges that Gonzalez requested certain documents from the Plan administrator and did not

receive a complete response.  This has nothing to do with, and shares no common fact or relationship with, the Wage Parity Claim.  *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are *so related to claims in the action within such original jurisdiction that they form part of the same case or controversy* under Article III of the United States Constitution" (emphasis added)); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) ("[D]isputes are part of the same case or controversy . . .  when they derive from a common nucleus of operative fact.") quoting *Promisel v. First Am. Artificial Flowers Inc.,* 943 F.2d 251, 254 (2d Cir.1991).  To adjudicate the Document Claim, the Court would not need to have any knowledge of the Wage Parity Law, the pay and benefits that Edison and Preferred paid to home health aides, the funding or structural features of any particular benefit program, or any other of the extensive facts necessary to adjudicate the Wage Parity Claim.  As the Document and Wage Parity Claims are distinct and involve different rights, interests, and facts, this Court should decline to exercise supplemental jurisdiction over the Wage Parity Claim.

## IV.   <u>The Court should dismiss the Wage Parity Claim against Preferred under the "first filed" rule</u>.

Finally, the Wage Parity Claims as against Preferred should be dismissed pursuant to the "first filed" rule which "permits the transfer or dismissal of subsequently commenced litigation involving the same parties and the same issues when both suits are pending in federal courts." *Kytel Int'l Grp., Inc. v. Rent A Ctr., Inc.*, 43 F. App'x 420, 422 (2d Cir. 2002); *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013).  When determining whether to dismiss a second action based on the first filed action, the court should consider whether the lawsuits assert the "same rights," and seek relief based upon the "same facts." *Castillo*, 960 F. Supp. 2d at 404.

Here, Preferred is the defendant in an action filed by Alla Medvedeva in the United States District Court of the Eastern District of New York under Index Number 1:17-cv-05739 ("*Medvedeva*"). *See* Affirmation of Peter C. Godfrey ("Godfrey Aff."), ¶ 4, Ex. B. *Medvedeva*, which was filed on or about September 29, 2017, seeks recovery for a class of home health aides employed by Preferred for alleged violations of, *inter alia*, the Wage Parity Law. *See* Godfrey Aff., Ex. B.

The *Medvedeva* action is well underway. On September 28, 2018, the plaintiff moved for conditional certification of a FLSA Collective Action. *See* Godfrey Aff., Ex. C. On March 19, 2019, the parties stipulated to conditional certification. *See id.* Pursuant to the Stipulation, which the Court granted on March 20, 2019, "the contents of the notice, the methods of dissemination and publication, who is similarly situation, to whom it is to be sent, and the production of notice-related discovery" will be negotiated by the parties with the assistance of the Court if necessary. *Id.* Plaintiff's Notice of Motion for Conditional Certification makes clear that the collective she seeks includes "all persons who worked as home care workers at Preferred" dating back to September 29, 2014. *Id.*

Because *Medvedeva* and this Action both assert violations of the Wage Parity Law, and seek to recover alleged underpayments under the Wage Parity Law, the standard for dismissal under the first filed rule is satisfied. Moreover, the *Medvedeva* action has progressed substantially to the conditional certification stage. It would be prejudicial to require Preferred to litigate simultaneously two cases involving alleged violations of the same statute. This would result in duplicative and costly discovery, and create the risk for inconsistent outcomes. Accordingly, dismissal of the Wage Parity Claim as against Preferred is warranted.

## CONCLUSION

For all of the foregoing reasons, the Edison Defendants respectfully submit that Counts II-

V of the Complaint should be dismissed.


Dated:  April 3, 2019

**HODGSON RUSS LLP**

_/s/ Peter Godfrey_
Peter C. Godfrey
605 Third Avenue, Suite 2300
New York City, NY 10158
Telephone: (212) 751-4300
pgodfrey@hodgsonruss.com


**ALSTON & BIRD LLP**

_/s/ Emily Costin_
Emily Costin, _Pro Hac Vice_
H. Douglas Hinson, _Pro Hac Vice_
The Atlantic Building
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3300
emily.costin@alston.com
doug.hinson@alston.com

_Attorneys for Defendants Preferred_
_Home Care of New York, LLC, Edison_
_Home Health Care, Berry Weiss, and_
_Samuel Weiss_

089786.00000 Litigation 15043893v3