**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

YNES M. GONZALEZ DE FUENTE, MARIYA
KOBRYN, and IVAN KOBRYN, individually and
on behalf of all others similarly situated,

                    **Plaintiffs,**

    -against-

PREFERRED HOME CARE OF NEW YORK
LLC, EDISON HOME HEALTH CARE,
HEALTHCAP ASSURANCE, INC.,
HEALTHCAP ENTERPRISES, LLC, BERRY
WEISS, SAMUEL WEISS, MARK REISMAN,
GREGG SALZMAN, SHAYA MANNE, DANIEL
ELLENBERG, AMIR ABRAMCHIK, DOV
FEDER, DOES 1-15, Inclusive,

                    **Defendants.**

18-CV-6749 (AMD) (PK)

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS HEALTHCAP ASSURANCE, INC., HEALTHCAP ENTERPRISES, LLC, AMIR ABRAMCHIK AND DOV FEDER

PUTNEY, TWOMBLY, HALL & HIRSON LLP
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

*Attorneys for Defendants*
*HealthCap Assurance, Inc., HealthCap Enterprises, LLC,*
*Amir Abramchik and Dov Feder*

Of Counsel:
    Thomas A. Martin
    Rebecca K. Kimura

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTS ........................................................................................................... 3

    The Parties     ........................................................................................................... 3

    The Plan     ........................................................................................................... 4

    Allegations Concerning the HealthCap Defendants ................................................. 5

ARGUMENT ...................................................................................................................... 7

    POINT I         APPLICABLE STANDARD FOR A MOTION TO DISMISS ................... 7

    POINT II       PLAINTIFFS LACK STANDING TO PURSUE THEIR ERISA
                     CLAIMS ........................................................................................................ 8

    POINT III      PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUFFICIENT
                     TO SUPPORT A CLAIM FOR PROHIBITED TRANSACTIONS
                     AGAINST THE HEALTHCAP DEFENDANTS ...................................... 11

    POINT IV     DEFENDANTS' MOTION TO DISMISS SHOULD BE
                     GRANTED WITHOUT FURTHER LEAVE TO AMEND ...................... 16

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Credit Suisse Securities (USA) LLC*,
 895 F.3d 214 (2d Cir. 2018)........................................................................13

*Anderson News, L.L.C. v. American Media, Inc.*,
 680 F.3d 162 (2d Cir. 2012)........................................................................17

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..........................................................................7, 8, 15

*Away, Inc., Employees' 401(k) Thrift Investment Plan v. Magnuson*,
 2006 WL 2934391 (N.D.N.Y. Oct. 12, 2006) .........................................12

*Bell Atlantic v. Twombly*,
 550 U.S. 544 (2007)...................................................................................15

*Brown v. Medtronic, Inc.*,
 628 F.3d 451 (8th Cir. 2010) .....................................................................10

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
 Care, L.L.C.*,
 433 F.3d 181 (2d Cir. 2005)..........................................................................9

*DeLaurentis v. Job Shop Technical Services, Inc.*,
 912 F.Supp. 57 (E.D.N.Y. 1996) ...............................................................13

*Doyle v. Midland Credit Mgmt., Inc.*,
 722 F.3d 78 (2d Cir. 2013)............................................................................7

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*,
 530 U.S. 238, 120 S. Ct. 2180 (2000).............................................12, 14, 15, 16

*Hishon v. King & Spalding*,
 467 U.S. 69 (1984).......................................................................................7

*Kendall v. Employees Ret. Plan of Avon Prods.*,
 561 F.3d 112 (2d Cir. 2009)..........................................................................9

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)......................................................................................8

*Rent-A-Center, Inc. v. C.I.R.*,
 142 T.C. 1 (2014)........................................................................................14

*Ross v. AXA Equitable Life Insurance Company*,
    680 Fed. App'x 41 (2d Cir. 2017)....................................................................10, 11

*Rozo v. Principal Life Insurance Company*,
    344 F.Supp.3d 1025 (S.D. Iowa 2018) ..........................................................12, 14

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008).....................................................................................17

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d. Cir. 2001).......................................................................................7

*Spokeo, Inc. v. Robins*,
    -- U.S. --, 136 S. Ct. 1540 (2016) ..........................................................................8, 11

*Taveras v. UBS AG*,
    612 F. App'x 27 (2d Cir. 2015) .................................................................................9

*Teets v. Great-West Life & Annuity Insurance Company*,
    286 F.Supp.3d 1192 (D. Colo. 2017)..............................................................12, 13, 14

*Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Management*,
    131 F.Supp.3d 103 (S.D.N.Y. 2015)........................................................................13

*U.S. v. Space Hunters. Inc.*,
    429 F.3d 416 (2d Cir. 2005)......................................................................................7

**Statutes**

29 U.S.C. § 1001, *et seq*............................................................................................1

29 US.C. §1002(14)(H).................................................................................................3

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001............. *passim*

ERISA § 3(14) ...............................................................................................................3

ERISA § 406(a), 29 U.S.C. § 1106(a) ................................................................... *passim*

ERISA § 406(b) .............................................................................................................12

New York Insurance Law § 4226 ..................................................................................11

New York State Home Care Worker Wage Parity Law,
    Public Health Law § 3614-c ............................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) .......................................................................................1, 2, 7

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 2, 7

Fed. R. Civ. P. 15(a)(2)...................................................................................................16

U.S. Const. Art. III ...................................................................................... *passim*

## PRELIMINARY STATEMENT

This Memorandum Of Law is submitted by HealthCap Assurance, Inc. ("HealthCap"), HealthCap Enterprises, LLC ("HCE"), Amir Abramchik ("Abramchik") and Dov Feder ("Feder") (collectively "HealthCap Defendants"), by and through their attorneys, Putney, Twombly, Hall & Hirson LLP, in support of their Motion to Dismiss the First Amended Complaint ("FAC") of Plaintiffs Ynes M. Gonzalez De Fuente ("Gonzalez"), Mariya Kobryn and Ivan Kobryn (collectively "Plaintiffs"), in its entirety, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

Plaintiffs, who are home health aides employed by Defendant Preferred Home Care of New York LLC ("Preferred") or Defendant Edison Home Health Care ("Edison"), filed a Complaint on November 27, 2018, alleging they were participants in the Edison Home Health Care Welfare Plan a/k/a Edison Assist HHC Employee Benefit Plan (the "Plan"). [Dkt No. 1] Plaintiffs claimed that Preferred and Edison misappropriated Plan assets by retaining the assets for themselves and/or their principals, in violation of the New York State Home Care Worker Wage Parity Law, Public Health Law § 3614-c ("Wage Parity Law") and the Employee Retirement Income Security Act of 1974, as amended, ("ERISA") 29 U.S.C. § 1001, *et seq.* Plaintiffs' sole claim against HealthCap was that it was a "party in interest" and allegedly engaged in prohibited transactions under ERISA § 406(a), 29 U.S.C. § 1106(a).

On April 3, 2019, HealthCap filed its Motion to Dismiss under FRCP Rule 12(b)(1), arguing that Plaintiffs lacked Article III standing, because they failed to allege an injury in fact. [Dkt Nos. 34-36] HealthCap also moved to dismiss the Complaint under FRCP Rule 12(b)(6), for failure to state a claim for prohibited transactions under ERISA § 406(a), because Plaintiffs failed to allege facts showing that the funds received by HealthCap were unlawfully obtained, or that HealthCap knowingly participated in the unlawful transaction, or that Plaintiffs were injured as a

result of such transaction.  (*Ibid.*)

Rather than oppose the motion, Plaintiffs filed their FAC on April 24, 2019, adding seven (7) additional parties, including three additional HealthCap defendants – HCE, Abramchik and Feder.  [Dkt No. 42]  In addition, Plaintiffs inserted additional allegations, none of which cure the jurisdictional or substantive defects identified in HealthCap's original motion to dismiss.  As in the original Complaint, the sole claim against the HealthCap Defendants in the FAC is for engaging in prohibited transactions as non-fiduciary parties-in-interest in violation of ERISA § 406(a).

Accordingly, for the same reasons set forth in their motion to dismiss the original Complaint, the HealthCap Defendants now move to dismiss Plaintiffs FAC under FRCP Rule 12(b)(1) and 12(b)(6).  Specifically, as demonstrated below, the FAC should be dismissed in its entirety because Plaintiffs lack Article III standing.  Indeed, Plaintiffs have not pled, nor can they plead, an injury in fact because they have no concrete or particularized individual loss from the alleged ERISA violations.  Nor can they establish any causal connection between any purported losses to the fiduciaries' alleged breaches. In fact, Plaintiffs have failed to articulate any concrete injury or losses whatsoever resulting from the alleged breach.

The FAC should also be dismissed against the HealthCap Defendants for failure to state a claim under ERISA § 406(a).  The sole claim against HealthCap Defendants is that they are non-fiduciary parties in interest, and that HealthCap received premium payments from the Plan assets as a reinsurer for the Plan. Plaintiffs allege such receipt constitutes a prohibited transaction under ERISA.  The claim is fatally deficient against the HealthCap Defendants because Plaintiffs fail to allege facts showing that the funds received by HealthCap were unlawfully obtained, or that the HealthCap Defendants knowingly participated in the unlawful transaction, or that Plaintiffs were injured as a result of such transaction.

For the reasons set forth below, this motion should be granted and the FAC should be dismissed in its entirety against the HealthCap Defendants, without leave to amend.[1]

## RELEVANT FACTS

### The Parties

Edison and Preferred are home health care providers, based in Brooklyn, New York. (FAC ¶¶ 15, 18-19). Plaintiffs allege they are home health aides, employed by Defendant Preferred or Defendant Edison. (*Id*. at ¶ 1) Defendant Samuel Weiss was Edison's President and Chief Executive Officer. (*Id*. at ¶ 20) Defendant Berry Weiss was Preferred's President and Chief Executive Officer. (*Id*. at ¶ 21) At various times from December 29, 2014 to the present, Defendants Mark Reisman, Gregg Salzman, Shaya Manne and Daniel Ellenberg ("Trustee Defendants") were Trustees of the Plan. (*Id*. at ¶¶ 22-25)

Plaintiffs allege that HealthCap is a North Carolina corporation and maintains its primary place of business in Aberdeen, North Carolina. (FAC ¶ 27) Plaintiffs further allege that since the 2015 Plan Year, which runs from February 1 until January 31 ("Plan Year"), HealthCap provided captive insurance to the Plan and is thus a Plan service provider and a "party in interest" within the meaning of ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B) and ERISA §§ 3(14)(C), (E), (G) and/or (H). (*Ibid.*) HCE is alleged to be the owner of HealthCap and a "party in interest." (*Id.* at ¶ 29) Plaintiffs further allege that Defendants Abramchik and Feder each own 50% of HCE, and are "parties in interest" within the meaning of ERISA §§ 3(14)(B), (C), (E), (G) and/or (H), 29 US.C. §1002(14)(H). (*Id.* at ¶¶ 30, 31)

---

[1] The HealthCap Defendants also hereby adopt and incorporate by reference all of Defendants' Preferred, Edison and the Trustee Defendants' factual assertions and legal argument concerning standing in their Motion to Dismiss the Amended Complaint, as if set forth in their entirety herein.

## The Plan

As home health aides to clients on Medicaid, Plaintiffs allege they are entitled to be paid a minimum rate under the Wage Parity Law, comprised of a cash portion and a benefit portion. (FAC ¶ 2)  From March 2014 to the present, Plaintiffs allege Preferred and Edison were required to provide them with an hourly compensation package that included a benefit portion of $4.09 per hour.[2]  (*Id.* ¶¶ 45, 47, 49, 51)

In order to satisfy the benefit portion of their obligations under the Wage Parity Law, Plaintiffs further allege that Preferred and Edison provided health benefits through the Edison Home Health Care Welfare Plan a/k/a Edison Assist HHC Employee Benefit Plan (the "Plan"). (*Id.* ¶ 5)  The Plan is a self-funded plan, but since February 2015, it is secured by a reinsurance agreement with HealthCap.  (*Id.* ¶¶ 27, 81, 82)  Edison is the alleged Plan Administrator for the Plan.  (FAC ¶ 18)  Plaintiffs allege that Preferred and Edison are fiduciaries of the Plan in that they exercise discretionary authority or control with regard to managing the distribution of Plan assets.  (*Id.* ¶¶ 18, 19)

According to Plaintiffs, captive insurance companies, in general, provide insurance for parent companies as follows:  the parent company pays premiums to the captive insurer; the captive insurer uses the premiums to establish a reserve and acts as a reinsurance agent for benefits owed by the parent company; the assets of the captive are invested so that the profit, interest and/or dividends return to the captive owners; the captive insurer eventually returns excess premiums and any earnings to the parent company or its owners in the form of shareholder distributions.  (FAC ¶ 71)

---

[2] Plaintiffs allege that the benefit portion for home health aides employed in Nassau, Suffolk, or Westchester Counties was $1.43 per hour for the period March 1, 2014 to December 30, 2016, and $3.22 for the period March 1, 2016 to the present.  (*Id.* ¶¶ 45, 47, 49, 51)

Plaintiff Gonzalez alleges she has been a participant in the Plan since October 2, 2015, while Plaintiffs Mariya Kobryn and Ivan Kobryn allege they have been participants in the Plan since November 2012 to the present. (FAC ¶¶ 10, 11) However, Gonzalez alleges she never utilized the Plan benefits, and Mariya Kobryn and Ivan Kobryn allege only that they "have had difficulty accessing benefits under the Plan." (*Id.* ¶¶ 64, 66) In particular, Ivan Kobryn alleges that he needed cataract and glaucoma surgery and prescription eye drops, which his healthcare provider told him were not covered under the Plan. (*Id.* at ¶¶ 67, 68)

Plaintiffs allege that they were harmed by the "wrongful use of plan assets for Defendants' personal gain" in that they were deprived of their right to "benefit exclusively from those plan assets," deprived of cash and/or benefits that they were owed if Defendants complied with ERISA in administering the Plan, and deprived of their legal and equitable rights to assets that are wrongfully retained by Defendants. (*Id.* ¶ 90)

### Allegations Concerning the HealthCap Defendants

The FAC makes the following limited additional allegations concerning the HealthCap Defendants:

- "While some captive insurers are lawful enterprises, careful compliance with ERISA and the Wage Parity Law is required. Defendants have failed to comply with these laws, which exist to protect employees' rights to their wages and benefits. Instead, Defendants have devised a scheme through the payment of enormous "premiums" from plan assets to HealthCap and its captive cell, which Defendants then use to enrich themselves." (FAC ¶ 72)

- "Defendant HealthCap is a sponsored captive insurer, or, more specifically, a protected cell captive insurance company. It is composed of numerous unincorporated protected 'cells,' each of which corresponds to a company that is reinsuring through the captive insurer. Each cell corresponds to a specific series of Class B shares that are available for purchase." (*Id.* ¶ 73)

- "Each protected cell exists to insure the risk arising from the employee benefit plans sponsored by each cell's shareholders, and the assets and liabilities of each protected cell are completely segregated from the assets and liabilities of Defendant HealthCap and every other protected cell of which it is composed." (*Id.* ¶ 74)

- "Effective February 1, 2016, the Trust entered into a quota share reinsurance agreement with Defendant HealthCap on behalf of the Plan, allegedly to 'reduce [the Plan's] exposure to welfare benefit obligations under the Plan.'" (*Id.* ¶ 81)

- "Under the agreement with Defendant HealthCap, the captive assumes a 75% quota share of the Plan's welfare benefit obligations." (*Id.* ¶ 82)

- "Defendants Edison and Preferred and the Trust Defendants, as fiduciaries, direct that the Plan pay premiums to Defendant HealthCap in an amount equal to the quota share portion of the premiums collected by the Plan on the welfare benefit obligations." (*Id.* ¶ 83)

- "The premiums paid to HealthCap are paid from the assets of the Plan trust." (*Id.* ¶ 84)

- "In the 2015 Plan Year, ... the Plan set aside approximately $6.4 million in Plan assets to be paid as premiums to Defendant HealthCap, which did not have an agreement to provide captive insurance with the Plan until February 1, 2016." (*Id.* ¶ 85)

- "In the 2016 Plan Year, ... the Plan also set aside approximately $11.4 million in Plan assets to purchase premiums through Defendant HealthCap." (*Id.* ¶ 86)

- "Upon information and belief, based on that arrangement, because the Plan paid less than $1.5 million in claims directly, Defendant HealthCap would have paid a maximum of approximately $4.4 million in claims, less than $0.39 of benefits claims for each dollar of premiums that it received from the Plan." (*Id.* ¶ 86)

- "In the 2017 Plan Year, ... the Plan also set aside approximately $14.6 million in Plan assets to purchase premiums through Defendant HealthCap." (*Id.* ¶ 87)

- "Upon information and belief, based on that arrangement, because the Plan paid less than $815,000 in claims directly, Defendant HealthCap would have paid a maximum of approximately $2.4 million in claims, less than $0.17 of benefit claims for each dollar of premiums that it received from the Plan." (*Id.* ¶ 87)

- "During the 2015, 2016 and 2017 Plan Years, upon information and belief, the Plan and HealthCap in total paid less than $12.8 million in claims, while during the same period the Plan paid approximately $7.1 million in administrative expenses." (*Id.* ¶ 89)

On that basis, Plaintiffs allege that "the Plan fiduciaries violated ERISA § 406(a), 29 U.S.C. § 1106(a), "by causing a direct or indirect sale or exchange with a party in interest and/or a transfer or use of plan assets to or by or for the benefit of parties in interest." (FAC ¶ 118) Moreover, Plaintiffs allege that all Defendants "knowingly participated" in the alleged prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), because they had "knowledge of the

circumstances that made the transactions unlawful," including the fact that Plan assets were paid to HealthCap as premiums, which were "far in excess" of the amounts required to provide Plan benefits, pay claims or maintain adequate reserves. (*Id.* ¶¶ 118, 119)

Plaintiffs further allege that they were harmed by the prohibited transactions in that the amount of money and/or value of benefits they received for the benefit portion required under the Wage Parity Law was reduced. (FAC ¶ 122) The claim under the Wage Parity Law is, however, asserted only as against Preferred and Edison, and <u>not</u> against the HealthCap Defendants. (*See* FAC, Count V).

## ARGUMENT

## POINT I

## APPLICABLE STANDARD FOR A MOTION TO DISMISS

Pursuant to Rule 12(b)(1), a district court must dismiss a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate it." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013).

A party may also move to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d. Cir. 2001) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In ruling on a Rule 12(b)(6) motion, a court must "accept all of plaintiffs factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *U.S. v. Space Hunters. Inc.*, 429 F.3d 416, 424 (2d Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Pleadings that are no more than

conclusions "are not entitled to the assumption of truth," nor are "naked assertion[s] devoid of further factual enhancement." *Id*. at 678-79 (quotations omitted). Based upon the allegations asserted in the FAC, Plaintiffs have failed to state a claim upon which relief may granted against the HealthCap Defendants.

## POINT II

## PLAINTIFFS LACK STANDING TO PURSUE THEIR ERISA CLAIMS

As a threshold matter, Plaintiffs must have standing to pursue their ERISA claims under Article III of the Constitution, or the Court lacks subject matter jurisdiction. "[T]he irreducible constitutional minimum of standing" requires that a plaintiff establish three elements: (1) he or she suffered an "injury in fact;" (2) "a causal connection" between the injury and the challenged action, and (3) the redressability of the injury by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). Where the case is in the pleading stages, Plaintiffs must "clearly" allege facts "demonstrating each element." *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S. Ct. 1540, 1547 (2016) (quotation omitted).

Injury in fact is a legally protected interest, which is "concrete and particularized," as well as actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Here, Plaintiff allege only bare procedural violations of the ERISA statute, divorced from any concrete injury. Procedural violations of statutes do not automatically confer standing absent a concrete harm that satisfies the injury in fact requirement. *Spokeo*, 136 S. Ct. at 1549. To be "concrete," an injury must be "de facto," or actually exist, even in the context of a statutory violation. *Id*. at 1548-49. Procedural violations may satisfy the concreteness requirement "[w]hen a procedural right protects a concrete interest, a violation of that right may create a sufficient 'risk of real harm' to the underlying interest." *Id*. at 1549. For an injury to be "particularized," it must affect the plaintiff "in a personal and individual way." *Id*. at 1548. For ERISA claims, the Second Circuit requires

that a participant demonstrate an <u>individual loss</u> caused by the alleged ERISA breach. *Kendall v. Employees Ret. Plan of Avon Prods.,* 561 F.3d 112, 118 (2d Cir. 2009); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005). An injury to the plan or to other participants is insufficient. *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015). Moreover, the causal connection element requires a plaintiff to allege facts "connecting her purported losses to the fiduciaries' alleged breaches." *Taveras*, 612 F. App'x at 29 (quotations omitted).

Plaintiffs lack standing to pursue their claims because they have failed to allege, nor can they allege, any personal loss caused by the alleged ERISA violations. Among other things, Plaintiffs do not allege they were denied access to participate in the Plan. Plaintiff Gonzalez concedes she never utilized the Plan. (FAC ¶ 64) Plaintiff Mariya Kobryn alleges she has had "difficulty accessing benefits under the Plan," but does not specify the alleged difficulty nor does she allege a causal connection between the alleged difficulty and the alleged ERISA violations. (FAC ¶ 66) While Plaintiff Ivan Kobryn alleges that his healthcare provider has told him that the Plan will not cover cataract or glaucoma surgery and eye drops, he does not allege that the failure to pay for these benefits was caused by the alleged improper captive funding scheme, or that the denial had anything to do with the Plan's funding. (FAC ¶¶ 67-68) His allegation concerns only the administration of claims. Plaintiffs' additional allegations that they were injured by "Defendants' wrongful use of plan assets" (FAC ¶ 90), are simply conclusory do not satisfy the pleading standard, as set forth more fully in Defendants Edison and Trustee Defendants' Motion to Dismiss the Amended Complaint.

Nor do Plaintiffs allege that the Plan was underfunded, or unable to pay on claims. To the contrary, Plaintiffs acknowledge the Plan was sufficiently funded. Specifically, they allege that in

2015, Preferred and Edison set aside $18.0 million to contribute to the Plan on behalf of Plan participants, and $6.4 million to be paid as premiums to HealthCap, yet Preferred, Edison and the Trustee Defendants directed the Plan to pay only $925,000 in claims, and directed HealthCap to assume less than $2.8 million in claims. (FAC ¶¶ 85). In 2016, Plaintiffs allege Preferred and Edison set aside $17.5 million to contribute to the Plan on behalf of Plan participants, and $11.4 million to be paid as premiums to HealthCap, while Preferred, Edison and the Trustee Defendants directed the Plan to pay only $1.5 million in claims, and that HealthCap would have paid a maximum of $4.4 million in claims. (FAC ¶¶ 86). Likewise, Plaintiffs allege that in 2017, Preferred and Edison set aside $27.3 million to contribute to the Plan on behalf of Plan participants, and $14.6 million to be paid as premiums to HealthCap, while Preferred, Edison and the Trustee Defendants directed the Plan to pay only $815,000 in claims, and directed HealthCap to assume less than $2.4 million in claims. (FAC ¶¶ 87). The FAC is devoid of any allegation as to how such funding, or overfunding, of the Plan harmed Plaintiffs. *See, e.g., Brown v. Medtronic, Inc.,* 628 F.3d 451, 458 (8th Cir. 2010) (concluding that plaintiff who netted a gain during the entire period of investment lacked Article III injury because he suffered no injury traceable to the breach of duty). Other than a vague allegation of "difficulty accessing Plan benefits," and allegations concerning the administration of benefits under the Plan, there are no allegations of harm, or a denial of benefits to the Plaintiffs, as a result of the funding arrangement. As a result, standing is clearly lacking for the ERISA claims.

To the extent Plaintiffs argue the alleged overfunding somehow creates a risk that the Plan may not be able to pay out claims in the future, the court's discussion in *Ross v. AXA Equitable Life Insurance Company*, 680 Fed. App'x 41 (2d Cir. 2017) is instructive. There, plaintiffs-insureds brought a putative class action on behalf of those who purchased, renewed or paid

10

premiums for group life insurance issued by an insurer and captive reinsurers, alleging violation of NY Insurance Law § 4226. *Id.* at 44. The statute at issue provided that an insurer shall not "make any misleading representation, or any misrepresentation of the financial condition of any such insurer or of the legal reserve system upon which it operates." *Id.* at 45. The plaintiffs-insureds alleged they had suffered an injury in fact because there was an increased risk that the insurer and its captive reinsurer would be unable to fully pay out life insurance and annuity rider claims in the event of an economic downturn, and because of various "shadow" insurance transactions. *Id.* at 46. The district court dismissed for lack of Article III standing, and the plaintiffs appealed. *Id.* at 43-44. The Second Circuit affirmed, holding that the plaintiffs failed to allege injury in fact based on an increased risk of nonpayment, because "the speculative chain of possibilities" did not establish that the alleged injury was "certainly impending." *Id.* at 46 (citations omitted). Similarly the procedural violation alleged here -- a prohibited transaction of payment of insurance premium from the Plan to HealthCap -- even if true, is insufficient to confer standing upon Plaintiffs. Other than two unrelated allegations concerning the administration of Plan benefits, Plaintiffs here have not identified the harm they have suffered as a result of the alleged violation of the statute and have made no attempt to argue that the harm would be imminent. *Spokeo*, 136 S. Ct. at 1549 (violation of a statute, standing alone, is insufficient to confer standing).

Accordingly, Plaintiffs lack standing to pursue their ERISA claims.

## POINT III

### PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM FOR PROHIBITED TRANSACTIONS AGAINST THE HEALTHCAP DEFENDANTS

Section 406(a) of ERISA prohibits a fiduciary from causing the plan to engage in a transaction that it knows or should have known involves the "sale or exchange, or leasing, or any

property between the plan and a party in interest" (ERISA § 406(a)(1)(A)), and the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." (ERISA § 406(b)(1)(D)).

Plaintiffs allege that HealthCap participated as a "party in interest" in prohibited transactions, by simply receiving premium payments from the Plan pursuant to an insurance policy, and therefore is liable under ERISA § 406(a). (FAC ¶¶ 27, 83, 84, 118) Defendants HCE, Abramchik and Feder are alleged to have participated as "parties in interest" in prohibited transactions solely because they are owners of HealthCap and therefore received the benefit of the payments. (*Id*. at ¶¶ 29-31, 118) Plaintiffs do not allege that any of the HealthCap Defendants are fiduciaries. Plaintiffs' claim should be dismissed because it does not satisfy the requirements for non-fiduciary liability.

In *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 250, 120 S. Ct. 2180, 2189 (2000), the Supreme Court held that a non-fiduciary party in interest may be liable under ERISA § 406(a) if it had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Ibid.* at 251. This standard has been interpreted to require heightened knowledge that is different from what is required to impose liability on a plan fiduciary. *See, e.g., Away, Inc., Employees' 401(k) Thrift Investment Plan v. Magnuson,* 2006 WL 2934391 at * 26 (N.D.N.Y. Oct. 12, 2006) (noting that liability of a non-fiduciary is "dependent upon a showing of actual participating in the prohibited transaction at issue."); *Rozo v. Principal Life Insurance Company*, 344 F.Supp.3d 1025, 1037-38 (S.D. Iowa 2018) (explaining that heightened knowledge of the potential unlawfulness of the transaction is required for non-fiduciary liability); *Teets v. Great-West Life & Annuity Insurance Company*, 286 F.Supp.3d 1192, 1209 (D. Colo. 2017) (holding that "an ERISA plaintiff cannot rely solely on the knowledge that would satisfy a fiduciary's liability for a prohibited transaction to likewise hold a nonfiduciary party in interest

liable for that transaction," but must show that the defendant knew or should have known that the transaction violated ERISA). In *Teets*, the court explained that prohibited transactions with regard to plan fiduciaries are essentially strict liability offenses and only require knowledge of "basic facts, particularly that a party in interest will use plan property for its own gain," while a non-fiduciary party in interest must have knowledge beyond just the underlying facts, but must have "knowledge of their potential unlawfulness." *Id*. at 1208.

Moreover, mere conclusory allegations of knowledge and participation are insufficient to survive a motion to dismiss. *Allen v. Credit Suisse Securities (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018) (factual allegations that are "wholly conclusory" are insufficient to avoid dismissal) (internal quotations omitted). In *Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Management,* 131 F.Supp.3d 103, 131-32 (S.D.N.Y. 2015), the plaintiff alleged that the non-fiduciary Bank knowingly participated in co-defendants' fiduciary breach. The court found the plaintiff failed to allege facts sufficient to show participation, where plaintiff simply alleged that, "by virtue of its acquiescence and its receipt of the investment advisory fees paid by the Plan," the Bank became a knowing participant. *Id.* at 132. Instead, the court held that alleging knowledge, combined with receipt of fees, was insufficient to state a claim for knowing participation in the co-defendants' breach. *Ibid. See also DeLaurentis v. Job Shop Technical Services, Inc.*, 912 F.Supp. 57, 64 (E.D.N.Y. 1996) (dismissing cause of action for knowing participation in a breach of fiduciary duty claim, where plaintiffs only allege that defendants were aware of the breach, but do not explain how or why they knew or should have known.).

Plaintiffs' claim is fatally deficient because they fail to allege facts showing that the funds received by HealthCap were unlawful, or that the HealthCap Defendants knowingly participated in the unlawful transactions. With regard to the lawfulness of the captive arrangement, Plaintiffs

state, in a conclusory fashion, that "[w]hile some captive insurers are lawful enterprises, careful compliance with ERISA and the Wage Parity Law is required. Defendants have failed to comply with these laws, which exist to protect employees' rights to their wages and benefits. Instead, Defendants have devised a scheme through the payment of enormous 'premiums' from plan assets to HealthCap and its captive cell, which Defendants then use to enrich themselves." (FAC ¶ 72) However, Plaintiffs fail to describe the illegality of the activity or even identify which laws have been broken. Instead, HealthCap is solely alleged to be the recipient of premium payments, which, in turn, it used to insure $2.8 million in health benefit claims in 2015, $4.4 million in claims in 2016, and $2.4 million in claims in 2017. (FAC ¶¶ 85-87)

These allegations simply cannot suffice to make out an ERISA claim. The receipt of monies by HealthCap alone – even excessive monies – is insufficient to establish an ERISA claim against a non-fiduciary. *Harris Trust*, 530 U.S. at 251; *Rozo*, 344 F.Supp.3d at 1037-38; *Teets*, 286 F.Fupp.3d at 1209. Stated differently, the fact that HealthCap received premiums from the Plan is simply a description of how insurance works, rather than an allegation that is consistent with, or demonstrative of, an ERISA violation. In addition, as Plaintiffs themselves acknowledge, there is nothing inherently unlawful about captive insurance arrangements. *See Rent-A-Center, Inc. v. C.I.R.*, 142 T.C. 1, 10, 11, 24 (2014) (the Tax Court respects the "separate taxable treatment of a captive unless there is a finding of sham or lack of business purpose," and a "captive may achieve adequate risk distribution by insuring only subsidiaries within its affiliated group"). Nor does the fact that the Defendants allegedly benefitted from the funding arrangement make it unlawful. What is lacking in the FAC is a specific allegation that the level of funding was insufficient. In fact, Plaintiffs acknowledge that the Plan was adequately funded to pay out benefits. Thus, Plaintiff's bare allegations regarding HealthCap's receipt of premiums in return

for providing medical benefits under the Plan, even premiums in excess of what may be required to pay benefits or maintain reserves, fail to show how the alleged transaction was unlawful.

With regard to Defendants HCE, Abramchik and Feder, Plaintiffs make no specific allegations concerning their participation in the alleged prohibited transaction. Instead, Plaintiffs only state a general allegation that all Defendants participated in prohibited transactions in violation of ERISA § 406(a) and benefitted from the transactions. (FAC ¶¶ 118-119) These bare assertions that simply recite the elements of a claim do not satisfy the pleading standards and fail to state a claim of prohibited transactions against Defendants HCE, Abramchik and Feder. *Ashcroft v. Iqbal*, 556 U.S. 662, 681-83 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-58 (2007).

Plaintiffs also fail to adequately plead the circumstances by which the HealthCap Defendants obtained knowledge that the transactions were allegedly unlawful. *Harris Trust*, 530 U.S. at 251. Again, the FAC contains only a conclusory allegation that "Defendants knowingly participated in such prohibited transactions in violation of ERISA section 406(a), 29 USC section 1106(a)," and that:

> All Defendants had actual and/or constructive knowledge of the circumstances that made the transactions unlawful, including but not limited to the facts that Defendants Preferred and Edison caused the Plan to pay tens of millions of dollars in Plan assets to HealthCap and its captive cell as premiums, that these enormous premiums were far in excess of the amounts required or appropriate to provide the plan's benefits, pay claims and/or maintain adequate reserves, and that Defendants Preferred and Edison and/or their principals retained the funds for their own benefit at the expense of plan participants. (FAC ¶ 119)

(FAC ¶ 119) These conclusory allegations are insufficient to plead knowledge. *See Iqbal*, 556 U.S. at 681 (conclusory allegations that that a party "knew of, condoned, and willfully and maliciously" acted are not entitled to be assumed true); *Twombly*, 550 U.S. at 557 ("conclusory

allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Nor have Plaintiffs alleged that the alleged overpayments somehow injured the Plaintiffs. Gonzalez could not have been injured because she never utilized the Plan. (FAC ¶ 64) Plaintiffs Mariya Kobryn and Ivan Kobryn allege only "difficulty" accessing the Plan, while Plaintiff Ivan Kobryn was advised by his healthcare provider that various procedures and/or medication were not covered under the Plan. (FAC ¶¶ 66-68) These are issues with claims administration, not funding. Plaintiffs do not allege they were denied Plan benefits due to the funding scheme, or insufficient Plan funds. Plaintiffs' ERISA claim is thus premised on the notion that HealthCap should have made greater reimbursed payments. Not only could that argument be made as against any insurer, it fails here entirely because these Plaintiffs have not alleged that they were harmed under ERISA by HealthCap's alleged failure to make greater reimbursement payments to the Plan. As Plaintiffs themselves cannot articulate the unlawful nature of the premium payments, they cannot meet their burden of pleading that the HealthCap Defendants knew of the circumstances rendering the transactions unlawful. Regardless, even if knowledge could be established, simply knowing that HealthCap was receiving plan assets, without more, does not establish knowing participation by the HealthCap Defendants as contemplated in *Harris Trust*. Plaintiffs' Second Claim must be dismissed against the HealthCap Defendants.

## POINT IV

## DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED WITHOUT FURTHER LEAVE TO AMEND

To the extent Plaintiffs request further leave to amend their complaint, it should be denied. Although FRCP Rule 15(a)(2) provides that leave to amend should be given freely "when justice so requires," leave to amend may be properly denied for "repeated failure to cure deficiencies by

amendments previously allowed" or "futility of amendment." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  Here, Plaintiffs have already had a full opportunity to amend their complaint after Defendants filed their motions to dismiss, pointing out specific deficiencies in their pleadings.  Nevertheless, Plaintiffs were unable to cure the defects.  Nor would Plaintiff be able to plead facts showing injury in fact or knowledge of prohibited transactions as to the HealthCap Defendants even if provided further opportunity to do so.  Defendants, on the other hand, would be prejudiced if Plaintiffs were granted further leave to amend, in that they would have to expended significant resources in yet a third round of motion practice.  Under the circumstances, leave to amend should be properly denied here, where further amendment would be futile. *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 195 (2d Cir. 2012).

## CONCLUSION

For the foregoing reasons, the HealthCap Defendants respectfully request that this Court grant their motion to dismiss the First Amended Complaint in its entirety as against them, and provide such other and further relief as this Court deems just and appropriate.

Dated: New York, New York
June 26, 2019

**PUTNEY, TWOMBLY, HALL & HIRSON LLP**

   /s/ Thomas A. Martin
Thomas A. Martin
Rebecca K. Kimura
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

*Attorneys for Defendants*
*HealthCap Assurance, Inc., HealthCap Enterprises, LLC,*
*Amir Abramchik and Dov Feder*