# EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
YNES M. GONZALEZ DE FUENTE, MARIYA
KOBRYN, and IVAN KOBRYN, individually and on
behalf of all others similarly situated,

                                    Plaintiffs,

            -against-

PREFERRED HOME CARE OF NEW YORK LLC,
EDISON HOME HEALTH CARE, HEALTHCAP
ASSURANCE, INC., BERRY WEISS, SAMUEL WEISS,
DOES 1-15, Inclusive,

                                      Defendants.
-------------------------------------------------------------------X

**CLASS ACTION COMPLAINT**
Case No. 18-CV-6749

Plaintiffs Ynes M. Gonzalez de Fuente, Mariya Kobryn, and Ivan Kobryn ("Plaintiffs"), by their undersigned attorneys, Levy Ratner, P.C. and Feinberg, Jackson, Worthman & Wasow LLP, individually and on behalf of all others similarly situated, allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## INTRODUCTION

1.      Plaintiff Ynes M. Gonzalez de Fuente ("Gonzalez") is a certified home health aide formerly employed by Defendant Preferred Home Care of New York LLC ("Preferred"), and Plaintiffs Mariya Kobryn and Ivan Kobryn are certified home health aides employed by Defendant Edison Home Health Care ("Edison"). Home health aides ("HHAs") provide care to sick, frail, and/or aged individuals ("clients") in their homes. Most Preferred and Edison clients are participants in the New York state medical assistance program (herein referred to as "Medicaid"). HHAs assist clients with the activities of daily living, including hygiene, bathing, toileting, and personal grooming, as well as household tasks and cooking. HHAs also provide

Case 1:18-cv-06749-AMD-PK Document 1 Filed 06/26/19 Page 2 of 31 PageID #: 2

assistance with health-related tasks such as medication reminders, dressing changes, transferring clients in and out of bed or a wheelchair, and other tasks as assigned by a nurse. HHAs are among the lowest-paid workers in New York City and their critical work enables hundreds of thousands of Medicaid recipients to remain in their homes and avoid institutionalization. As alleged below, Plaintiffs and the Class they seek to represent have been cheated out of millions of dollars of wages and benefits to which they were entitled, as a result of violations of the New York State Home Care Worker Wage Parity Law, Public Health Law § 3614-c ("Wage Parity Law"), and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

2.     The Wage Parity Law mandates that home care workers working on cases that are reimbursable, in whole or in part, by Medicaid be paid a minimum rate of total compensation ("Minimum Rate"), comprised of a cash portion and a benefit portion.

3.     Under the Wage Parity Law, the benefit portion of the Minimum Rate ("Benefit Portion"), currently $4.09 per hour, may be paid either in cash, or through any combination of cash, health, education, or pension benefits; wage differentials; supplements in lieu of benefits; or compensated time off. However, any portion of a benefit arrangement providing a refund or dividend of moneys contributed cannot satisfy an employer's Benefit Portion obligation.

4.     Upon information and belief, Defendants Preferred and Edison employ a combined total of approximately 4,000 home care workers, most of whom work on cases reimbursable, in whole or in part, by Medicaid and are entitled to be paid the Minimum Rate prescribed by the Wage Parity Law, including the Benefit Portion.

5.     Upon information and belief, Preferred and Edison created the Edison Home Health Care Welfare Plan a/k/a Edison Assist HHC Employee Benefit Plan ("the Plan"), a single employer welfare benefit plan within the meaning of Section 3(1) of ERISA, covering approximately 4,000 of their HHAs, for the purpose of appearing compliant with the Wage Parity Law, while actually evading its requirements and misappropriating ERISA-protected Plan assets.  Through this scheme, over a two-year period, Preferred and Edison purported to set aside approximately $35.5 million dollars into the Plan, but in fact paid out less than $10 million towards employee health benefits.   Instead, Preferred and Edison concocted a plan to retain millions of dollars of Plan assets for themselves and/or their principals, in violation of the Wage Parity Law and ERISA's fiduciary and prohibited transaction rules.

## JURISDICTION AND VENUE

6.     This action arises in part under Title I of ERISA, 29 U.S.C. §§ 1001 et seq., and is brought by Plaintiffs to enjoin acts and practices that violate the provisions of Title I of ERISA, to require the Defendants to make good to the Plan losses resulting from fiduciary violations, to restore to the Plan any profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

7.      The Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

8.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims arising under the Wage Parity Law, N.Y. Public Health Law § 3614-c and the New York Labor Law ("NYLL") §§ 190 et seq., § 651, and § 663.

9.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. §

1132(e)(2), because some or all of the events or omissions giving rise to the claims occurred in

this District, the Plan is administered in this District, and Defendants reside or may be found in

this District.

**THE PARTIES**

10.      At all relevant times, Plaintiff Gonzalez has been a participant, as defined in

ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.  Plaintiff Gonzalez resides in Elmhurst, New

York. Plaintiff Gonzalez worked for the Defendant Preferred as a certified Home Health Aide

from on or about October 2, 2015 through on or about October 1, 2018.

11.      At all relevant times, Plaintiff Mariya Kobryn has been a participant, as defined in

ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.  Plaintiff Mariya Kobryn resides in Brooklyn,

New York. Plaintiff Mariya Kobryn has worked for the Defendant Edison as a certified Home

Health Aide from on or about November 2012 through the present.

12.      At all relevant times, Plaintiff Ivan Kobryn has been a participant, as defined in

ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.  Plaintiff Ivan Kobryn resides in Brooklyn, New

York. Plaintiff Ivan Kobryn has worked for the Defendant Edison as a certified Home Health

Aide from on or about November 2012 through the present.

13.      At all times relevant times, the Plaintiffs were Defendant Preferred or Edison's

"employees" within the meaning the NYLL § 2(5).

14.      At all relevant times, the Plaintiffs were "home care aides" within the meaning of

the Wage Parity Law § 3614-c(d).

4

15.     At all relevant times, Preferred and Edison were "licensed home care services agencies" within the meaning of Public Health Law § 3602(13).

16.     At all relevant times, Defendant Edison has been the Plan Administrator and Named Fiduciary of the Plan and at all relevant times was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the Plan and/or exercised authority or control respecting management of distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.  As a fiduciary, Defendant Edison at all relevant times was also a party in interest under ERISA, § 3(14)(A), 29 U.S.C. § 1002(14)(A).  Defendant Edison is also a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C), which defines a party in interest to an employee benefit plan to include an employer whose employees are covered by such plan. Defendant Edison is headquartered and maintains its primary place of business at 946 McDonald Ave., Brooklyn, NY 11218.

17.     At all relevant times, Defendant Preferred has been a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the Plan and/or exercised authority or control respecting management of distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.  As a fiduciary, Defendant Preferred at all relevant times was also a party in interest under ERISA, § 3(14)(A), 29 U.S.C. § 1002(14)(A).  Defendant Preferred is also a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C), which defines party in interest to an employee benefit plan to

5

include an employer whose employees are covered by such plan. Defendant Preferred is headquartered and maintains its primary place of business at 1267 57th St., Brooklyn, NY 11219.

18.     At all relevant times, Defendant Samuel Weiss was Defendant Edison's President and Chief Executive Officer.  Thus, at all relevant times, Samuel Weiss was a "party in interest" as to the Plan under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), which defines a party in interest to include an "employee, officer, [or] director" of an employer with respect to that employer's plan.

19.     At all relevant times, Defendant Berry Weiss was Defendant Preferred's President and Chief Executive Officer.  Thus, at all relevant times, Berry Weiss was a "party in interest" as to the Plan under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), which defines a party in interest to include an "employee, officer, [or] director" of an employer with respect to that employer's plan.

20.     Since at least the 2015 Plan Year, which runs from February 1 until January 31 ("Plan Year"), Defendant HealthCap Assurance, Inc. ("HealthCap") has provided captive insurance to the Plan and is thus a Plan service provider and a "party in interest" within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).  Additionally, on information and belief, HealthCap, and/or the captive cell within HealthCap that Defendants Preferred, Edison, Berry Weiss and/or Samuel Weiss own and/or control, is also a party in interest under ERISA §§ 3(14)(C), (E) and/or (G), 29 U.S.C. § 1002(14)(C), (E), and/or (G), which define parties in interest to include employers, entities acting indirectly in the interests of an employer with respect to an employee benefit plan, and entities of which employers own more than 50 percent.

6

HealthCap, a North Carolina corporation, is a captive insurance company and maintains its primary place of business in Aberdeen, North Carolina.

21.     Defendants Preferred and Edison hired Plaintiffs, set Plaintiffs' work schedules, supervised Plaintiffs' work, maintained Plaintiffs' employment records, oversaw payroll and were responsible for ensuring that Plaintiffs received their wages and benefits, in accordance with the Wage Parity Law and New York Labor Law.

22.     At all relevant times, Defendants Preferred and Edison have been an "employer" of one or more of the Plaintiffs within the meaning of the NYLL §2(6), and have been subject to the requirements of the Wage Parity Law § 3614-c.

23.     Plaintiffs are ignorant of the true names and capacities of Doe Defendants and therefore sue them by fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of Doe Defendants when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of these fictitiously named Defendants is responsible in some manner for the occurrences alleged herein. Plaintiffs are further informed and believe, and allege thereon, that at all times relevant, Doe Defendants have been fiduciaries to the Plan and/or parties in interest.

## FACTUAL ALLEGATIONS

### Defendants Preferred and Edison's Failure to Lawfully
### Compensate Plaintiffs Under the Wage Parity Law

24.     On most weeks, Plaintiff Gonzalez worked between three and five ten-hour shifts for Preferred.

25.     On most weeks, Plaintiff Mariya Kobryn works three eleven-hour shifts for Edison.

26.     On most weeks, Plaintiff Ivan Kobryn works four twelve-hour shifts for Edison.

27.     All of the hours worked by Plaintiffs were within New York City on Medicaid cases.

28.     Under the Wage Parity Law, the Benefit Portion of the Minimum Rate, currently $4.09 per hour, may be paid either in cash, or through any combination of cash, health, education, or pension benefits; wage differentials; supplements in lieu of benefits; or compensated time off.  However, any portion of a benefit arrangement providing a refund or dividend of moneys contributed cannot satisfy an employer's Benefit Portion obligation.

29.     Upon information and belief, at no time did the total compensation package provided to Plaintiffs satisfy the Benefit Portion of the minimum rate under the Wage Parity Law of $4.09 per hour worked.

30.     Upon information and belief, prior to March 1, 2014, Plaintiffs Mariya Kobryn and Ivan Kobryn's regular hourly rate of pay was $9.50 per hour.

31.     Upon information and belief, between March 1, 2014 and December 30, 2016, Plaintiffs Mariya Kobryn and Ivan Kobryn's regular hourly rate of pay was $10.50 per hour.

32.     For the period October 2, 2015 until December 30, 2016, Plaintiff Gonzalez's regular hourly rate of pay was $10.00 per hour.

33.     For the period December 31, 2016 until December 30, 2017, Plaintiffs' regular hourly rate of pay was $11.00 per hour.

34.     For the period December 31, 2017 until her employment ended, Plaintiff Gonzalez's regular hourly rate of pay was $13.00 per hour.

35.     For the period December 31, 2017 through the present, Plaintiffs Mariya Kobryn and Ivan Kobryn's regular hourly rate of pay is $13.00 per hour.

36.     For the period March 1, 2014 through December 30, 2016, the Wage Parity Law required Defendants Preferred and Edison to pay to Plaintiffs an hourly compensation package of $14.09 per regular hour worked, including at least $10.00 to satisfy the cash portion, plus $4.09 to satisfy the Benefit Portion.

37.     Plaintiffs' regular hourly rate of pay between March 2014 and December 30, 2016 was at least $10.00 per hour, satisfying the cash portion of the Minimum Rate.

38.     For the period December 31, 2016 and continuing through December 30, 2017, the Wage Parity Law required Defendants Preferred and Edison to pay to Plaintiffs an hourly compensation package of $15.09 per regular hour worked, including at least $11.00 to satisfy the cash portion, plus $4.09 per hour to satisfy the Benefit Portion.

39.     Plaintiffs' regular hourly rate of pay for the period December 31, 2016 through December 30, 2017 was $11.00 per hour, satisfying the cash portion of the Minimum Rate.

40.     For the period December 31, 2017 and continuing through the present, the Wage Parity Law required Defendants Preferred and Edison to pay Plaintiffs an hourly compensation package of $17.09 per regular hour worked, including at least $13.00 to satisfy the cash portion, plus $4.09 per hour to satisfy the Benefit Portion.

41.     The regular hourly rate of pay for Plaintiffs Mariya and Ivan Korbyn from December 31, 2017 through the present is $13.00 per hour, satisfying the cash portion of the Minimum Rate. The cash portion of the Minimum Rate was also satisfied for Plaintiff Gonzalez from December 31, 2017 through the last date of her employment.

42.     From October 2, 2015 until in or around June 2017, Plaintiff Gonzalez received no compensated time off from Preferred.

43.     Beginning in or around July 2017, Plaintiff Gonzalez is alleged to have earned three paid time off days per year, but upon information and belief, has never used them or been paid for them.

44.     Upon information and belief, since 2017, Plaintiffs Mariya Kobryn and Ivan Kobryn have received three paid days off per year.

45.     From 2012 to 2017, Plaintiffs received no shift or other wage differentials.

46.     From 2012 to the present, Plaintiffs received no education or pension benefits.

47.     From 2015 to the present, Plaintiff Gonzalez received no supplements in lieu of benefits.

48.     Upon information and belief, since in or around 2014, Plaintiffs Mariya Kobryn and Ivan Kobryn have each received a debit card valued at $60 per month for the purchase of a monthly unlimited half-price Senior Citizen MetroCard for use on Metropolitan Transportation Authority operated buses and subway trains.

49.     Upon information and belief, in or around July 2014, Edison provided Plaintiffs Mariya Kobryn and Ivan Kobryn with a Plan benefit card and accompanying brochure.

50.     Upon information and belief, in or around July 2016, Preferred provided Plaintiff Gonzalez with a Plan benefit card and accompanying brochure.

51.     The Plan requires participants to pay 20% coinsurance and co-pays of $15-$40 with an out of pocket maximum for the Plan of $6,600 for an individual and $13,200 for family coverage. The Plan provides for an individual deductible of $750 and a $1,500 family deductible

10

for an employee working 31-40 hours per week.  The Plan provides for an individual deductible of $1,000 and a $2,000 family deductible for an employee working 21-30 hours per week.  The Plan provides for an individual deductible of $3,000 and a family deductible of $6,000 for an employee working up to 20 hours per week.  The monthly premium for dependent coverage is $276.68 for an HHA working 35 hours per week.

52.     Given the out-of-pocket expense of the Plan, HHAs such as the Plaintiffs working 2,080 hours in a year would be forced to spend up to approximately $3.17 per hour worked for coverage under the Plan.

53.     Plaintiff Gonzalez has never utilized the Plan because she cannot afford to pay the high out-of-pocket costs, including deductible, co-insurance, and co-pays.

54.     Plaintiff Gonzalez is a Medicaid recipient.  Upon information and belief, many Plan participants are also Medicaid recipients and not utilizing benefits under the Plan.

55.     Plaintiffs Mariya Kobryn and Ivan Kobryn have had difficulty accessing benefits under the Plan.

### Defendants Use a Captive Insurance Scheme to Unlawfully Divert Benefit Dollars For Their Financial Gain Through the Misuse of ERISA Plan Assets

56.     Defendants Preferred and Edison have created a scheme using a captive health insurance company through which, annually, millions of Benefit Portion dollars of the Minimum Rate of Wage Parity Law compensation, which are ostensibly spent to provide HHAs with health insurance, are instead returned as surplus or result in other direct or indirect financial benefit to the Defendants.

57.     Captive insurance companies are essentially wholly-owned subsidiaries created to provide insurance for parent companies.  Typically, the parent company pays premiums to the

11

captive insurer, for which it takes a tax deduction. The captive insurer then uses the premiums to establish a reserve and acts as a reinsurance agent for benefits owed by the parent company. Moreover, the assets of the captive are typically invested so that investment profit, interest, and/or dividends return to the captive owners. The captive insurer eventually returns excess premiums (or, upon liquidation, reserves) and any earnings thereon to the parent company or its owners in the form of shareholder distributions. All of this is done while evading the regulatory requirements that apply to traditional insurance companies. Defendant HealthCap is the vehicle through which Defendants Preferred and Edison engage in the above-described shell game.

58. Defendant HealthCap is a sponsored captive insurer, or, more specifically, a protected cell captive insurance company. It is composed of numerous unincorporated protected "cells," each of which corresponds to a company that is reinsuring through the captive insurer. Each cell corresponds to a specific series of Class B shares that are available for purchase.

59. Each protected cell exists to insure the risk arising from the employee benefit plans sponsored by each cell's shareholders, and the assets and liabilities of each protected cell are completely segregated from the assets and liabilities of Defendant HealthCap and every other protected cell of which it is composed.

60. The voting rights and management power conferred by each series of Class B shares are limited to their corresponding protected cells, but within that domain they are absolute. Importantly, the holders of each series of Class B shares are entitled to operating distributions based upon the exclusive operational results of their corresponding protected cell.

61. Upon information and belief, Defendants Preferred, Edison and/or their respective owners, officers and directors, and/or other Doe Defendants subject to the control of Defendants

Preferred, Edison, Berry Weiss, and/or Samuel Weiss, are the holders of the Class B shares corresponding to the protected cell that insures the Plan.

62.     Employees of Defendants Preferred and Edison are automatically enrolled in the Plan.

63.     The Plan is a single employer welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), with certain Plan assets held in trust for the exclusive benefit of the Plan participants.

64.     The Plan has entered into a quota share reinsurance agreement with Defendant HealthCap, allegedly to "reduce [the Plan's] exposure to welfare benefit obligations under the Plan."

65.     Under the agreement with Defendant HealthCap, the captive assumes a 75% quota share of the Plan's welfare benefit obligations.

66.     Defendants Edison and Preferred, as fiduciaries, direct that the Plan pay premiums to Defendant HealthCap in an amount equal to the quota share portion of the premiums collected by the Plan on the welfare benefit obligations.

67.     The premiums paid to HealthCap are paid from the assets of the Plan trust.

68.     In the 2015 Plan Year, Defendants Preferred and Edison set aside approximately $18.0 million to contribute to the Plan on behalf of 1,598 Plan participants.  Of those contributions, Defendants Preferred and Edison, as fiduciaries, directed the Plan to pay approximately $925,000 in claims directly out of Plan assets. In the same Plan Year, the Plan set aside approximately $6.4 million in Plan assets to be paid as premiums to Defendant HealthCap. Upon information and belief, in the 2015 Plan Year, the HealthCap cell owned and/or controlled

13

by Defendants Preferred and Edison, Berry and/or Samuel Weiss, or other Doe Defendants accrued an estimated $3.6 million in surplus for their own benefit. Although these assets are required by ERISA and the Wage Parity Law to be used for the exclusive benefit of Plan participants, the Plan participants did not and will not receive any benefits from this surplus, which Defendants retain for their own financial gain.

69.     In the 2016 Plan Year, Defendants Preferred and Edison set aside approximately $17.5 million to contribute to the Plan on behalf of 3,851 Plan participants.   Of those contributions, Defendants Preferred and Edison, as fiduciaries, directed the Plan to pay approximately $1.5 million in claims directly out of Plan assets.   In the same Plan Year, the Plan also set aside approximately $11.4 million in Plan assets to purchase premiums through Defendant HealthCap.   Based on the Plan's financial statements, under the Plan's quota share reinsurance agreement the captive insurance company assumes liability for 75% of claims incurred by the Plan.   Upon information and belief, based on that arrangement, because the Plan paid less than $1.5 million in claims directly, Defendant HealthCap would have paid a maximum of approximately $4.4 million in claims.   Upon information and belief, in the 2016 Plan Year, the HealthCap cell owned and/or controlled by Defendants Preferred and Edison, Berry and/or Samuel Weiss, or other Doe Defendants accrued an estimated $7.1 million in surplus for their own benefit. Although these assets are required by ERISA and the Wage Parity Law to be used for the exclusive benefit of Plan participants, the Plan participants did not and will not receive any benefit from the surplus, which Defendants retain for their own financial gain.

70.     During the 2015 and 2016 Plan Years, upon information and belief, the Plan and HealthCap in total paid less than $10 million in claims, while during the same period the Plan

14

paid more than $5 million in administrative expenses. Accordingly, for every dollar believed to have been paid in claims, the Plan spent at least $0.50 in administrative expenses.

## DOCUMENT REQUEST ALLEGATIONS

71.     By certified letter dated August 31, 2018, Plaintiff Gonzalez requested documents from the Plan Administrator at Edison Home Health, including the current Plan document, the current summary plan description, any summary of material modification, the trust agreement, any insurance contract or agreement providing insurance for Plan benefits, and any other instruments under which the Plan is established or operated. Her request for insurance contracts included but was not limited to any contracts or agreements with HealthCap.

72.     By U.S. mail postmarked on or about September 24, 2018, Plaintiff Gonzalez received a copy of the Summary Plan Description but no other documents responsive to her request.

## CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring the Second, Third, Fourth and Fifth Claims for Relief for violations of ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), and of the New York Wage Parity Law, as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons who were participants in the Plan on February 1, 2014 or at any time thereafter, and/or beneficiaries of Plan participants on February 1, 2014 or at any time thereafter (hereinafter "Plaintiff Class" or "Class Members"). Excluded from the Plaintiff Class are Samuel Weiss, Berry Weiss, and their immediate families; the officers and directors of any of the corporate Defendants, or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

74. The Plaintiff Class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that over 4,000 employees and former employees are participants, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Although the exact number and identities of Class Members are unknown to Plaintiffs at this time, this information is easily ascertainable from the Plan through discovery of its records.

75. Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

    i.    Whether Defendants engaged in prohibited transactions under ERISA by paying premiums to HealthCap, a captive insurance company, a party in interest, resulting in Plan assets returning as profit or other financial gain to Defendants Preferred and Edison, Samuel Weiss and/or Berry Weiss and/or Doe Defendants;

    ii.    Whether Defendants Preferred, Edison, Samuel Weiss, and Berry Weiss and/or Doe Defendants breached their fiduciary duties to Plan participants by using Plan assets to generate profits and other financial gain for their own benefit;

    iii.    Whether Defendants Preferred and Edison violated the Wage Parity Law by failing to pay the Benefit Portion of the minimum rate;

    iv.    Whether Defendants are liable to Plaintiffs and Class Members for losses caused by Defendants' breaches of fiduciary duty and/or for other appropriate equitable relief under ERISA, including but not necessarily

limited to restitution, surcharge, a constructive trust, disgorgement of windfall profits, and injunctive relief.

76.     Plaintiffs' claims are typical of those of the Plaintiff Class. For example, Plaintiffs, like other Plan participants in the Plaintiff Class, have not received sufficient benefits or been paid adequately to satisfy the Benefit Portion of the minimum rate under the Wage Parity Law.

77.     Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class.  Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, Wage Parity Law, and employee benefits litigation.

78.     Class certification of Plaintiffs' Claims for Relief for violations of ERISA's prohibited transaction and fiduciary rules and of the Wage Parity Law is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class Members would as a practical matter be dispositive of the interests of non-party Class Members.

79.     In addition, class certification of Plaintiffs' Second, Third and Fourth Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Plaintiff Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Plaintiff Class as a whole. The Class Members are entitled to declaratory and injunctive relief to remedy Defendant's fiduciary violations.

17

80.     Class certification of Plaintiffs' Fifth Claim for Relief under the Wage Parity Act is appropriate under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Plaintiff Class. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendants have obtained wrongful profits that, measured in terms of harm to each individual Class Member, may be small and difficult to detect but in the aggregate have an enormous value on the impact of Class Members' employee benefits and/or wages. Individual participants have an insufficient stake in the outcome of this matter to devote the substantial resources that would be required to pursue it individually.

81.     The names and addresses of the Class Members are available from the Plan. Notice will be provided to all Class Members to the extent required by Rule 23.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**[Statutory Penalties - ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A),
Against Defendant Edison]**

82.     Plaintiff Gonzalez incorporates the preceding paragraphs as though fully set forth herein.

83.     ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that: "A civil action may be brought . . . by a participant or beneficiary . . . for the relief provided in subsection (c) of this section."

84.     ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), provides that: "Any administrator . . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . .. by mailing the material

18

requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure . . . and the court may in its discretion order such relief as it deems proper. For purposes of this paragraph, each violation . . . with respect to any single participant . . . shall be treated as a separate violation."

85.     Title 29 C.F.R. § 2575.502c-1 has increased the maximum civil penalty under ERISA § 502(c)(1), 29 U.S.C. §1132(c)(1), from $100 a day to $110 a day for failing to meet the requirements of ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

86.     ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), requires that the administrator of an individual plan provide upon written request of any participant or beneficiary a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

87.     Defendant Edison, as administrator of the Plan, failed to provide the documents requested in writing by Plaintiff Gonzalez that are required by ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

88.     Defendant Edison is therefore liable to Plaintiff Gonzalez for up to $110 a day for each day that the documents she is entitled to receive have remained outstanding.

89.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of

ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

90.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

91.    To remedy these violations of ERISA by Defendant Edison, Plaintiff Gonzalez also seeks injunctive relief and other equitable relief as prayed for below.

## SECOND CLAIM FOR RELIEF

### [In Defendants' Capacities as Parties in Interest, Engaging in Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), Against All Defendants]

92.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

93.    ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

94.    All Defendants are "parties in interest," as described above in Paragraphs 16 to 20.

95.     By transacting with all Defendants to arrange the transfer of Plan assets to and from HealthCap, the Plan fiduciaries violated ERISA § 406(a), 29 U.S.C. § 1106(a), by causing a direct or indirect sale or exchange with a party in interest and/or a transfer or use of plan assets to or by or for the benefit of parties in interest, namely, Defendants.

96.     Defendants knowingly participated in such prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a).

97.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA.

98.     Through their knowing participation in prohibited transactions, Defendants benefitted in amounts to be proven at trial but numbering in the millions of dollars.

99.     These prohibited transactions harmed Plaintiffs and Class Members by reducing the amount of money and/or value of benefits that they received for the Benefit Portion required under the Wage Parity Law.

### THIRD CLAIM FOR RELIEF

**[Engaging in Prohibited Transactions Forbidden by ERISA § 406(b),
29 U.S.C. § 1106(b), Against Defendants Preferred, Edison, and Doe Fiduciary Defendants]**

100.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

101.    ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

102.    ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), mandates that a plan fiduciary shall not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

103. ERISA § 409, 29 U.S.C. § 1109, provides, <u>inter alia</u>, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

104. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

105. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

106. Defendants Preferred, Edison, and Doe Defendants are fiduciaries as set forth above.

107. Defendants engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by carrying out a scheme to enrich themselves through the use of plan assets.

108. Through these prohibited transactions, Defendants caused losses to Plaintiffs, the Plaintiff Class, and the Plan in amounts to be proven at trial but numbering in the millions of dollars.

## FOURTH CLAIM FOR RELIEF

**[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),
29 U.S.C. §§ 1132(a)(2) and (a)(3),
Against Defendants Preferred, Edison, and Doe Fiduciary Defendants]**

109. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

110. ERISA § 3(21), 29 U.S.C. § 1001(21), provides that a person is a fiduciary of a plan to the extent he "exercises any discretionary authority or discretionary control respecting management of such plan," "exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan."

111. Defendants Preferred, Edison, and Doe Defendants are fiduciaries as set forth above.

112. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, inter alia, that a plan fiduciary discharge his, her, or its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

113. ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the Court may deem appropriate.

114. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

115. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

23

116.    Defendants breached their duty of loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by acting in their own interests rather than with an "eye single" to the interests of the participants and beneficiaries of the Plan, by devising and using a scheme to reap corporate and individual profit through the use of plan assets.

117.    Defendants have profited from the fiduciary violations alleged herein in an amount to be proven at trial.

118.    Defendants' actions caused losses to the Plaintiffs, the Plaintiff Class, and the Plan in amounts to be proven at trial.

## FIFTH CLAIM FOR RELIEF

**[Violations of Wage Parity Law and New York Labor Law**
**Wage Parity Law, N.Y. Public Health Law § 3614-c and the New York Labor Law §**
**190 et seq., § 651, and § 663]**

119.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows:

120.    By failing to pay the Benefit Portion of the Minimum Rate, Defendants Preferred and Edison failed to pay "wages" owed within the meaning of the New York Labor Law § 190(1).

121.    Upon information and belief, at all times relevant to this Complaint, Defendants Preferred and Edison, in their contracts with managed care plans, as defined by the Wage Parity Law § 3614-c(1)(e), were required to certify and did certify that Defendants paid Plaintiffs and Class Members the wages required by the Wage Parity Law, pursuant to Wage Parity Law § 3614-c(6).

122.   The contracts with managed care plans and the certifications made to those plans promising to pay Plaintiffs and Class Members the wages and benefits required by the Wage Parity Law was made for the benefit of home care workers, including Plaintiffs and Class Members.

123.   Defendants breached their obligation to pay Plaintiffs and Class Members the minimum rate required by the Wage Parity Law, and Plaintiffs and Class Members were injured as a result of that breach.

124.   Plaintiffs and the Class Members, as third-party beneficiaries of Defendants' Preferred and Edison's contracts with managed care plans to pay the minimum rate as required by the Wage Parity Law, and as individuals protected by the Wage Parity Law, are entitled to relief for the breach of this contractual obligation and violation of the Wage Parity Law, plus interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants on each Claim for Relief and for the following relief:

**As to the First Claim for Relief:**

A.   Order Defendant Edison to pay statutory penalties in the amount of $110 per day to Plaintiff Gonzalez for each day from the date it was required to provide plan documents in response to Plaintiff's written request for documents;

B.   Order Defendant Edison to provide all documents requested and required to be provided under ERISA § 104(b)(4), § 1024(b)(4);

25

      C.      Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. §1132(g); and

      D.      Provide such other relief as the Court deems equitable and just.

**As to the Second Claim for Relief:**

      A.      Certify this action as a class action under Federal Rule of Civil Procedure 23; certify the named Plaintiffs as class representatives and their counsel as class counsel;

      B.      Declare that Defendants have knowingly participated in prohibited transactions and violated ERISA in their capacity as parties in interest to the plans;

      C.      Enjoin Defendants from engaging in further prohibited transactions;

      D.      Order Defendants to disgorge any profits they have made through prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendants in the course of or as a result of prohibited transactions;

      E.      Order that Defendants provide other appropriate equitable relief to the Plaintiff Class and the Plan, including but not limited to restitution and an accounting for profits;

      F.      Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein under ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

      G.      Order Defendants to pay prejudgment interest; and

      H.      Award such other and further relief as the Court deems equitable and just.

**As to the Third Claim for Relief:**

      A.      Certify this action as a class action under Federal Rule of Civil Procedure 23; certify the named Plaintiffs as class representatives and their counsel as class counsel;

Case 1:18-cv-06749-AMD-PK   Document 60-1   Filed 11/27/18   Page 27 of 30 PageID #: 395

      B.     Declare that Defendants engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by dealing with plan assets in their own interest or for their own account or by knowingly participating in such self-dealing;

      C.     Enjoin Defendants from further prohibited transactions;

      D.     Order Defendants to make good to the Plan the losses resulting from their prohibited transactions;

      E.     Order Defendants to disgorge any profits they have made through prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendants in the course of or as a result of prohibited transactions;

      F.     Order that Defendants provide other appropriate equitable relief to the Plan, including but not limited to restitution and an accounting for profits;

      G.     Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein under ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

      H.     Order Defendants to pay prejudgment interest; and

      I.     Award such other and further relief as the Court deems equitable and just.

**As to the Fourth Claim for Relief:**

      A.     Certify this action as a class action under Federal Rule of Civil Procedure 23; certify the named Plaintiffs as class representatives and their counsel as class counsel;

      B.     Declare that Defendants have breached their fiduciary responsibilities to the Plaintiff Class and knowingly participated in breaches of fiduciary responsibility to the Plaintiff Class;

C.      Enjoin Defendants from further violations of their fiduciary responsibilities, obligations, and duties;

D.      Order Defendants to make good to the Plan the losses resulting from these fiduciary violations;

E.      Order that Defendants provide other appropriate equitable relief to the Plan, including, but not limited to, surcharge, restitution, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants, or ordering Defendants to disgorge any profits that they have made through breaches of fiduciary duty;

F.      Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein under ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

G.      Order Defendants to pay prejudgment interest; and

H.      Award such other and further relief as the Court deems equitable and just.

**As to the Fifth Claim for Relief:**

A.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel;

B.      Declare that Defendants Preferred and Edison violated the Wage Parity Law and New York Labor Law by failing to pay the Benefit Portion of the minimum rate of the Wage Parity Law;

C.      Enjoin Defendants Preferred and Edison from further violations of the Wage Parity Law and New York Labor Law;

28

D.    Order that Defendants Preferred and Edison make employees whole for its failure to pay the Benefit Portion of the Wage Parity Law, including interest, liquidated damages, and such amounts as may be awarded for Defendants' unjust enrichments;

E.    Award all costs, expenses and reasonable attorneys' fees associated with the prosecution of this civil action, pursuant to NYLL § 663;

F.    Award such additional or alternative relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

125.    Plaintiff demands trial by jury for all claims so triable.


Dated: November 27, 2018
       New York, New York

                                      LEVY RATNER, P.C.

                                      /s Laureve Blackstone
                          By:    Laureve Blackstone (LB2710)
                                    Ryan Barbur
                                    Attorneys for Plaintiffs
                                    80 Eighth Avenue
                                    New York, New York 10011
                                    (212) 627-8100
                                    (212) 627-8182 (fax)
                                    lblackstone@levyratner.com
                                    rbarbur@levyratner.com

                                    FEINBERG, JACKSON,
                                    WORTHMAN & WASOW LLP

                        By:    /s Daniel Feinberg
                                    Daniel Feinberg (*pro hac vice admission pending*)
                                    Catha Worthman (*pro hac vice admission pending*)
                                    2030 Addison Street, Suite 500
                                    Berkeley, California 94704

(510) 269-7998
(510) 269-7994 (fax)
dan@feinbergjackson.com
catha@feinbergjackson.com