Er UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YNES M. GONZALEZ DE FUENTE, MARIYA KOBRYN, and IVAN KOBRYN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>PREFERRED HOME CARE OF NEW YORK LLC, EDISON HOME HEALTH CARE, HEALTHCAP ASSURANCE, INC., HEALTHCAP ENTERPRISES, LLC, BERRY WEISS, SAMUEL WEISS, MARK REISMAN, GREGG SALZMAN, SHAYA MANNE, DANIEL ELLENBERG, AMIR ABRAMCHIK, DOV FEDER, DOES 1-15, Inclusive,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE**<br>Case No. 18-cv-6749-AMD-PK |

## INTRODUCTION

Plaintiffs move the Court under Federal Rule of Civil Procedure 12(f) to strike the Motion to Dismiss filed by Defendant HealthCap Assurance, Inc. ("HealthCap") because HealthCap has not posted a bond in an amount sufficient to secure payment of a final judgment in this matter, as required by New York Insurance Law § 1213(c) ("Section 1213(c)"). On June 26, 2019, HealthCap and related Defendants moved to dismiss Plaintiffs' First Amended Complaint. ECF No. 58 ("Motion to Dismiss").[1] However, HealthCap has not deposited with the Court any pre-pleading security as mandated by Section 1213(c). Section 1213(c)'s bond requirement applies here because HealthCap is an unauthorized insurer and its motion to dismiss

---

[1] According to its Fed. R. Civ. P. Rule 7.1 Disclosure Statement, Defendant HealthCap Assurance, Inc. "is a closely held insurance company wholly funded by its owner, HealthCap Enterprises, LLC ('HCE'), whose managing members are Amir Abramchik and Dov Feder, who each own fifty percent (50%) of HCE, and its affiliates." ECF No. 33. This motion to strike is brought against the insurance company subject to Section 1213(c), HealthCap Assurance, Inc., and not the related HealthCap Defendants (HCE, Mr. Abramchik, and Mr. Feder).

is a pleading within the meaning of the statute. Further, federal courts in this Circuit routinely apply Section 1213(c). Finally, HealthCap's anticipated arguments to support its claim that Section 1213(c) is inapplicable lack merit. Accordingly, Plaintiffs request that the Court strike the Motion to Dismiss as to Defendant HealthCap if it does not post the required bond.

## ARGUMENT

I. **Section 1213(c) Background**

Section 1213(c) provides in relevant part that:

> Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall . . .
>
> deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding.

New York Ins. Law § 1213(c).

Section 1213(c) is intended to "impose[] accountability" upon insurance carriers who are not licensed to do business in New York by ensuring that such carriers have available funds to satisfy a judgment in favor of the plaintiffs. *Levin v. Intercontinental Ca. Ins. Co.*, 95 N.Y.2d 523, 526 (2000). Under Section 1213(c), "[p]re-pleading security is a mandatory statutory requirement." *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209 (CHS), 2014 WL 941444 at *2 (D. Conn. Mar. 11, 2014) (discussing an analogous Connecticut statute). When a party fails to post such pre-pleading security, "the consequence . . . is a judicial order . . . striking the pleading." *Id.*

II. **Section 1213 Applies to HealthCap's Motion to Dismiss**

Section 1213(c) applies to HealthCap and its Motion to Dismiss. Section 1213(c) requires "any unauthorized" insurer to post a bond with the court before it files "any pleading in any

2

proceeding against it." HealthCap is an unauthorized insurer within the meaning of the statute. Plaintiffs have filed with this Court a certificate from the New York State Department of Financial Services showing that HealthCap is not, and has never been, licensed under any section of the New York Insurance Law. ECF No. 25 at 4; *see also* Exhibit 1 attached to the Declaration of Catha Worthman in Support of Plaintiffs' Motion to Strike.

Further, HealthCap's Motion to Dismiss is a "pleading" within the meaning of Section 1213(c). In *Levin*, an unauthorized reinsurer moved to dismiss the complaint against it even though it had not paid a bond to secure a potential judgment. 95 N.Y.2d at 525. The defendant insurer argued that a motion to dismiss is not a pleading subject to the requirements of Section 1213(c). *Id.* at 527. The court disagreed, holding that it would "read the term 'pleading' to include [defendant's] motion to dismiss," noting that to find otherwise "would impede section 1213's objectives." *Id.* at 527-28; *see also In re Residential Capital, LLC*, 563 B.R. 756, 779 (Bankr. S.D.N.Y. 2016) (holding that "the weight of the case law and the plain language of the statute" show that "motions to dismiss for lack of subject matter jurisdiction are pleadings under Section 1213").

Finally, Section 1213(c)'s bond requirement applies without regard to the strength or weakness of Plaintiffs' case. In *Levin*, the defendant insurer argued that because the plaintiff's "complaint [was] so flawed that it cannot survive a motion to dismiss" there was "no need to ensure that funds are available to satisfy [a judgment]." 95 N.Y.2d at 528. But the court rejected that argument, reasoning that "[a]llowing [the defendant] to raise its defenses without posting a bond would compromise section 1213(c)'s goal of assuring that funds are available in New York to satisfy any judgment in plaintiff's favor." *Id*. Moreover, conditioning the payment of a bond on the strength of a plaintiff's case would allow unauthorized insurers to "wage extensive, costly

3

motion practice, and yet avoid the bond requirement by simply advancing a host of defenses before interposing a formal answer." *Id*.

### III. Section 1213 Applies in Federal Court

Federal courts in this Circuit regularly apply Section 1213(c). In *Signal Capital Corp. v. Eastern Marine Management, Inc.*, 899 F. Supp. 1167, 1168 (S.D.N.Y. 1995), the plaintiff moved to strike the defendant insurer's answer because it failed to comply with Section 1213(c). The court granted the motion, writing that the defendant "must now either post a bond or have its Answer stricken and a default judgment entered." *Id*. at 1171 (Sotomayor, J.); *see also British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 212 F.3d 138, 144 (2d Cir. 2000) (affirming the application of Section 1213(c)'s pre-pleading security requirement to defendant insurer); *Signal Mut. Indem. Ass'n, Ltd. v. Rice Mohawk U.S. Const., Co., Ltd.*, No. 95 Civ. 3721 (LMM), 1997 WL 148813 at *3 (S.D.N.Y. Mar. 28, 1997) (requiring an insurance company to post a bond with the court for $100,000 in accordance with Section 1213(c)).

Further, Section 1213(c) applies in this Court under Federal Rule of Civil Procedure 64 because the required bond is a "remedy . . . to secure satisfaction of the potential judgment." Rule 64 provides that:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment

Fed. R. Civ. P. 64(a). The Rule continues: "[t]he remedies available under this rule include the following—however designated and regardless of whether state procedure requires an independent action . . . attachment." *Id.* 64(b). The Second Circuit has held Section "1213's security requirement" is "equivalent to an attachment." *British Intern. Ins. Co. Ltd.*, 212 F.3d at 140-42.

4

In *Travelers*, a federal court applied a Connecticut state law analogous to Section 1213(c), reasoning that a pre-pleading security is a remedy under Rule 64. *Travelers*, 2014 WL 941444, at *6. The state law in question was nearly identical to New York's, requiring "any unauthorized person or insurer" to "[d]eposit with the clerk of the court . . . an amount . . . sufficient to secure the payment of any final judgment" before filing a pleading. *Id.* at *2. Indeed, the Connecticut statute shares Section 1213(c)'s purpose: "to ensure that any insurer . . . will have sufficient assets in this state to satisfy any judgment." *Id* (quotation marks, citation omitted). The *Travelers* court held that under Second Circuit authority and a "plain reading" of Rule 64, the Connecticut statute "is incorporated by reference into Federal Rule 64, based on the statute's status and function as a remedy for seizure of person or property to satisfy potential judgment under the forum state's law." *Travelers*, 2014 WL 941444, at *5.[2]

The Court should reach the same result here. Section 1213(c) is a state law that "provides for seizing . . . property to secure satisfaction of the potential judgment." Under Second Circuit precedent, the plain language of Rule 64, and the reasoning in *Travelers*, Section 1213(c) applies in this Court. *See* Fed. R. Civ. P. 64; *Travelers*, WL 941444, at *5.

## IV. **HealthCap's Arguments that Section 1213(c) Does Not Apply in This Case Fail**

In its pre-motion conference letter dated February 22, 2019, Defendant HealthCap put forth two flawed arguments that it is not required to post a bond under Section 1213(c). ECF No. 31. First, it argued that HealthCap is not required to post a bond because Section 1213(c) is preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C.

---

[2] The *Travelers* court also discussed *Wachovia Bank, N.A. v. Cummings*, No. 3:09-cv-957, 2010 WL 466160 (D. Conn. Feb. 8, 2010), which used the *Erie* doctrine to "reach[] the same conclusion with respect to the applicability of the Connecticut pre-pleading security statute." *Travelers*, 2014 WL 941444, at *8.

5

§ 1001 et seq. ("ERISA"). ECF No. 31 at 1-2. Second, it claimed that Section 1213(c) is inapplicable because "plaintiff has failed to properly plead the required enumerated acts." ECF No. 31 at 3. Both of HealthCap's argument are wrong, as discussed below.

### A. Section 1213(c) Is Not Preempted Because It Does Not Have an Impermissible Reference to or Connection with an Employee Benefit Plan.

Analysis of whether a state law is preempted by ERISA begins with the principle that courts do not "assume[] lightly that Congress has derogated state regulations." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995) (construing 29 U.S.C. § 514(c)). The "starting presumption [is] that Congress does not intend to preempt state law." *Id.* Consistent with this principle, ERISA preempts a state law only when that law has an impermissible "reference to" or "connection with" an ERISA plan. *See id.* at 653; *accord Hattem v. Schwarzenegger*, 449 F.3d 423, 429 (2d Cir. 2006). Laws that "apply" to employee benefit plans do not necessarily "relate" to them so as to trigger ERISA preemption. *See, e.g.*, *id.* at 435 (California's unrelated business income tax on an ERISA-regulated pension plan was not preempted); *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 320, 330 (2d Cir. 2003) (state law claims for promissory estoppel, breach of contract, and professional malpractice brought against the trustees of an ERISA-regulated pension fund not preempted by ERISA); *Travelers Ins. Co. v. Pataki*, 63 F.3d 89, 93-95 (2d Cir. 1995) (state surcharges on self-insured plans not preempted by ERISA).

Section 1213(c) lacks any prohibited "reference to" or "connection with" any ERISA plan. Section 1213(c) does not make "reference to" any ERISA plan, because it does not "single[] out ERISA plans for special treatment," and it "function[s] irrespective of the existence of an ERISA plan." *Hattem*, 449 F.3d at 432-33 (citing, *inter alia*, *Cal. Div. of Labor Standards Enforcement v. Dillingham Const., Inc.*, 519 U.S. 316, 326 (1997)). First, the statute places

6

requirements on *insurers*, not on *benefit plans*. Second, the statute applies to all forms of insurance, whether or not the insurance policies are sold to private employer benefit plans subject to ERISA, or in different markets such as directly to individuals, or to church plans or government employers exempt from ERISA. *See* 29 U.S.C. § 1003(b) (exempting church plans and government plans from ERISA); *Dillingham*, 519 U.S. at 325 (law governing apprenticeship programs not preempted because a governed program "need not necessarily be ERISA plans"). Thus, Courts have applied Section 1213(c) to insurers providing many different types of insurance, such as an errors and omissions policy, *MF Global Holdings, Ltd.*, 569 B.R. 544; reinsurance, *e.g.*, *British Intern. Ins. Co. Ltd.*, 212 F.3d 138; and workers' compensation, *Signal Mut. Indem. Ass'n*, 1997 WL 148813.[3]

It is also well established that a state law does not have an impermissible "connection with" an ERISA plan where it "'has only a tenuous, remote, or peripheral connection with covered plans, *as is the case with many laws of general applicability*.'" *Hattem*, 449 F.3d at 429 (quoting *New York State Conference*, 514 U.S. at 661) (emphasis in *Hattem*). "Furthermore, it is not sufficient that the law in question has an indirect economic effect on choices; rather, the law must actually dictate which choices *must* be made." *Id.* (emphasis in original). Section 1213(c) applies generally to unlicensed insurers and does not force any ERISA governed fiduciary to "act in a certain matter." *Id.* at 431-32. The law exists as a safeguard to ensure that that funds are available in New York to satisfy judgments against unlicensed insurers in the state, not to regulate ERISA plans. Similar to the challenged state laws in *Hattem*, *New York State Conference*, and numerous other laws of general applicability, the requirement that an unlicensed

---

[3] *Signal* also ruled that the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., did not preempt Section 1213(c). 1997 WL 148813, at *2-*3.

insurance company post a bond before filing a pleading "is no different than any other economic factor that weighs into a decision." *Hattem*, 449 F.3d at 431. The insurer can either post a bond, decline to file a pleading, or apply to become licensed in New York.

Accordingly, Section 1213(c) does not have a prohibited "reference to" or "connection with" any ERISA plan and therefore is not preempted by ERISA.

### B. Plaintiffs Are Not Required to Plead Enumerated Acts.

HealthCap has also argued that Plaintiffs must plead that the policy at issue was "issued or delivered" in New York for Section 1213(c) to apply. ECF No. 31 at 3. But—regardless of whether Plaintiffs can so plead—this argument misconstrues the statute. Contrary to HealthCap's assertion, there is no requirement that Plaintiffs allege one of Section 1213's enumerated acts in order to "trigger" the statute's bond requirement. As *MF Global Holdings* explained: "the enumerated acts in section 1213(b) are not prerequisites to the bond requirement set out in [S]ection 1213(c)." 569 B.R. at 550. Rather, Section 1213(b)'s enumerated acts are relevant only to an analysis of whether a defendant is subject to personal jurisdiction under the statute. *Id.* at 549 (citing *In re Residential Capital,* 563 B.R. at 777). The question of personal jurisdiction is not at issue here. Thus, as in *MF Global Holdings*, the Court should hold that the defendant insurer must post a bond before the Court will consider HealthCap's pending motion. *See id.* at 546; *see also Travelers Ins. Co. v. Underwriting Members of Lloyd's of London*, 240 A.D.2d 278, 279 (N.Y. App. Div. 1997) (finding that "whether defendants had engaged in any of the activities of enumerated in [Section] 1213(b)(1) . . . is immaterial" to whether they are required to post bond under Section 1213(c)).

## V. HealthCap Is Required to Post a Bond of Approximately $25 Million.

For the reasons discussed above, HealthCap is required to post a bond "sufficient to secure payment of any final judgment which may be rendered in the proceeding." Section 1213(c). The amount of the security "necessarily falls within the trial court's discretion." *Levin*, 95 N.Y.2d at 529.

Here, Plaintiffs calculate that the amount of the bond that should be posted is approximately $25 million. Plaintiffs' prohibited transaction claim under ERISA § 406, 29 U.S.C. § 1106 (Second Claim for Relief), *inter alia*, seeks as a remedy restitution, an accounting of profits, or disgorgement of the premiums received by HealthCap in excess of the benefits paid by HealthCap for plan participants. Based on the Form 5500 Annual Reports filed by Defendant Edison Home Health Care on behalf of the Edison Home Health Care Welfare Plan ("the Plan"), the Plan paid Defendant HealthCap approximately $32.4 million in premiums out of plan assets for Plan Years 2015, 2016 and 2017, but HealthCap has only paid approximately $9.6 million in benefits for those Plan Years. *See also* First Amended Class Action Complaint ¶¶ 85-89, ECF No. 42 (describing excessive contributions paid out of plan assets to HealthCap that are the subject of Plaintiffs' disgorgement and restitution claims under ERISA). Thus, any final judgment is likely to be at least approximately $25 million, representing the $22.8 million net surplus of premiums over benefits paid, plus any earnings thereon, and HealthCap is required to post this amount pursuant to Section 1213(c).

## CONCLUSION

Because Section 1213(c) applies to Defendant HealthCap and to this action, HealthCap has failed to post the required bond, and its anticipated arguments lack merit, Plaintiffs request that the Court strike HealthCap's Motion to Dismiss.

Dated: July 26, 2019       By:      /s/ *Catha Worthman*

FEINBERG, JACKSON, WORTHMAN & WASOW LLP
Daniel Feinberg, *Pro Hac Vice*
Catha Worthman, *Pro Hac Vice*
2030 Addison Street, Suite 500
Berkeley, CA 94704
(510) 269-7998
dan@feinbergjackson.com
catha@feinbergjackson.com

LEVY RATNER, P.C.
Laureve Blackstone
Ryan Barbur
Attorneys for Plaintiffs
80 Eighth Avenue
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
lblackstone@levyratner.com
rbarbur@levyratner.com