UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
**YNES M. GONZALEZ DE FUENTE, MARIYA KOBRYN**, and **IVAN KOBRYN**, individually and on behalf of all others similarly situated,

                         Plaintiffs,

                -against-

**PREFERRED HOME CARE OF NEW YORK LLC, EDISON HOME HEALTH CARE, HEALTHCAP ASSURANCE, INC., HEALTHCAP ENTERPRISES LLC, BERRY WEISS, SAMUEL WEISS, MARK REISMAN, GREGG SALZMAN, SHAYA MANNE, DANIEL ELLENBERG, AMIR ABRAMCHIK, DOV FEDER, DOES 1-5**, inclusive,

                        Defendants.
------------------------------------------------------------- x

**MEMORANDUM & ORDER**

18-cv-06749 (AMD) (PK)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 13 2020 ★

BROOKLYN OFFICE

**ANN M. DONNELLY**, United States District Judge:

On April 24, 2019, the plaintiffs filed an amended complaint alleging that the defendants misappropriated employee benefit plan assets in violation of the New York Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c ("Wage Parity Law"), and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). (ECF No. 42.) On June 26, 2019, the defendants—the employer defendants and the HealthCap defendants—moved to dismiss the amended complaint (ECF Nos. 58, 61), and on July 26, 2019, the plaintiffs moved to strike the HealthCap defendants' motion to dismiss (ECF No. 63). On September 25, 2019, a week after the parties fully briefed both motions, all defendants moved to stay the action pending the Supreme Court's forthcoming decision in *Thole v. U.S. Bank*. (ECF Nos. 75, 77.) For the reasons that follow, I grant the motion to stay.

# BACKGROUND[1]

The plaintiffs are certified home health aides employed by the employer defendants, Preferred Home Care of New York LLC and Edison Home Health Care. (ECF No. 42 ¶ 1.) Under New York's Wage Parity Law, home health care workers must earn a "minimum rate," which consists of a "cash portion" and a "benefit portion." (*Id.* ¶ 2.) Employers may pay the benefit portion—which is set at $4.09 per hour in New York City and $3.22 per hour in Nassau, Suffolk, and Westchester counties—in cash, or through "any combination of cash, health, education, or pension benefits; wage differentials; supplements in lieu of benefits; or compensated time off." (*Id.* ¶ 3.)

In order to satisfy the benefit portion of their obligations under the Wage Parity Law, the employer defendants provided health benefits through a welfare benefit plan. (*Id.* ¶ 5.) The plan is a self-funded employee health benefit plan under ERISA § 3(1), which means that Edison and Preferred fund a trust that pays the cost of covered medical claims. (*Id.* ¶ 79.) The plan automatically enrolls employees, and requires 20% coinsurance and co-pays of $15-$40 with an out-of-pocket maximum of $6,600 for an individual and $13,200 for family coverage. (*Id.* ¶ 62.)

On February 1, 2016, the employer defendants' trust entered into an agreement with HealthCap in which HealthCap agreed to assume a 75% share of the plan's welfare benefit obligations. (*Id.* ¶¶ 81-82.) The plaintiffs allege that this arrangement—a so-called "captive insurance scheme"—was designed to refund benefit dollars to the employer defendants. (*Id.* ¶ 70.) According to the plaintiffs, in a captive insurance scheme, the employer pays premiums to the captive insurer, which then uses the premiums to establish a reserve to pay covered medical

---

[1] The facts are drawn from the plaintiffs' amended complaint. (ECF No. 42.)

claims. (*Id.* ¶¶ 70-71.) Meanwhile, the captive insurer invests the reserve amount and returns investment profits and excess premiums to the employer. (*Id.*) The plaintiffs allege that this arrangement violates ERISA, and does not provide them the benefit portion they are owed under the New York Wage Parity Law. (*Id.* ¶¶ 85-90.)

The named plaintiffs allege that while they are participants in the plan, they either (a) do not use it because of "high out of pocket costs," or (b) "have had difficulty accessing benefits" from it. (*Id.* ¶¶ 64, 66, 67-68.) In particular, Ivan Kobryn alleges that his healthcare provider told him he was not covered for cataract or glaucoma surgery or prescription eye drops under the plan. (*Id.* ¶¶ 67-68.) The plaintiffs claim that they have been harmed by the "wrongful use of plan assets for Defendants' personal gain" because they were deprived of "their right to benefit exclusively from those plan assets…cash and/or benefits that they are owed…[and] legal and equitable rights to assets that are wrongfully being retained by Defendants." (*Id.* ¶ 90.)

The plaintiffs assert five claims for relief—four under ERISA (*id.* ¶¶ 105-141), and one under the New York Wage Parity Law (*id.* ¶¶ 142-147). The plaintiffs' ERISA claims, which arise under ERISA Sections 502(a)(2) and (a)(3) allowing plan participants to bring actions to enforce ERISA, allege that the defendants participated in prohibited transactions in violation of ERISA § 406(a) and (b), and breached their fiduciary duties in violation of ERISA § 404(a)(1).

On June 26, 2019, the defendants moved to dismiss the action, arguing, in part, that the plaintiffs do not have constitutional standing to bring their claims under ERISA Sections 502(a)(2) or (a)(3). (ECF No. 59 at 8-11; ECF No. 61-7 at 7-14.) Two days later, on June 28, 2019, the Supreme Court granted certiorari to review *Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617, 628 (8th Cir. 2017), in which the Eighth Circuit held that ERISA plan participants in an overfunded defined benefit plan do not have statutory standing to bring claims under ERISA

3

Sections 502(a)(2) or (a)(3). In its opinion granting certiorari, the Supreme Court directed the parties to brief and argue "[w]hether the petitioners have demonstrated Article III standing." *Thole v. U.S. Bank, N.A.*, 139 S. Ct. 2771 (2019) (Mem.). The defendants moved to stay this action pending the Supreme Court's decision on constitutional standing.

## DISCUSSION

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (alteration omitted) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). District courts in this circuit consider five factors in determining whether to stay a civil action: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *United States v. Town of Oyster Bay*, 66 F. Supp. 3d 285, 289 (E.D.N.Y. 2014) (citing *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

The plaintiffs, as low wage workers seeking injunctive relief, "[h]ave an interest in an expeditious resolution of this suit." *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438, 2019 WL 2725625, at *2 (S.D.N.Y. July 1, 2019). The Supreme Court has already heard oral argument in *Thole*,[2] so the delay caused by a stay will in all likelihood be a short one. *See Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012); *see also Duchene v. Westlake Servs., LLC*, No. 13-CV-01577, 2015 WL 5947669, at *11 (W.D. Pa. Oct. 13, 2015) ("[H]aving to wait eight to nine months to continue litigation is not, itself, sufficiently prejudicial to

---

[2] *See* Oral Argument, *Thole v. U.S. Bank, N.A.*, (No. 17-1712) https://www.supremecourt.gov/oral_arguments/argument_transcripts/2019/17-1712_1a7d.pdf.

4

outweigh the very plain benefits of staying the case, particularly when the issues pending at the Supreme Court go to this Court's power to hear the case."). Because the stay has a short, definite time period, it is not unduly prejudicial to the plaintiffs' private interest. Accordingly, I find that the first factor does not weigh against a stay.

The burden on the defendants in continuing to litigate the case without a stay is minimal, at best. The parties have briefed the motions, so all that remains is the preparation for oral argument. While that will require time and effort, it is not enough to militate in favor of a stay.

I consider the third, fourth, and fifth factors together because issues of judicial economy affect the interests of non-parties and the public. *See Albert v. Blue Diamond Growers*, 232 F. Supp. 3d 509, 513 (S.D.N.Y. 2017) (efforts to "conserve judicial resources and promote judicial economy" promote the "interests of non-parties and the public"); *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11-CV-1608, 2012 WL 2865485, at *4 (S.D.N.Y. July 10, 2012) ("[C]onsiderations of judicial economy are frequently viewed as relevant to the public interest, and, as noted, they weigh against the investment of court resources that may prove to have been unnecessary.") (citation omitted). The defendants argue that it would be an "inefficient use of [the Court's] time and resources" to proceed while the Supreme Court might very well "settle" or at the very least "simplify" core questions of justiciability. (ECF No. 76 at 4.) The plaintiffs respond that the Supreme Court's decision will not affect one of their two theories of constitutional standing.

A court may "properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action." *Sikhs for Justice*, 893 F. Supp. 2d at 622 (collecting cases). A stay is proper even where the pending decision "may not settle every question of fact and law" before the court, "but in all likelihood it will settle many and simplify

them all." *In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90, 2001 WL 204212, at *1 (S.D.N.Y. Mar. 1, 2001) (quoting *Landis* 299 U.S. at 256). This is especially true for issues that determine a district court's jurisdiction to hear a case under Article III. For example, courts in this Circuit stayed cases pending the Supreme Court's decision on Article III standing issues in *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016). *See, e.g.*, *Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076, 2016 WL 787963, at *4 (W.D.N.Y. Mar. 1, 2016) (Since the court's subject matter jurisdiction "may not survive the Supreme Court's decision [on Article III standing] in *Spokeo*...a stay is appropriate"); *Ernst v. Dish Network, LLC*, No. 12-CV-8794, 2016 U.S. Dist. LEXIS 10724, at *6 (S.D.N.Y. Jan. 28, 2016) ("While it is possible that the Supreme Court will decide *Spokeo* in a way that supports Plaintiffs' position or does not impact this case, the question the Supreme Court granted certiorari for and heard argument on is broad enough to suggest that the decision will shed light on the contours of Article III standing in the FCRA context.").

The Supreme Court's anticipated decision in *Thole* will address whether plan participants in an overfunded benefit plan have constitutional standing to bring claims under ERISA Sections 502(a)(2) and 502(a)(3)—which is the same issue that the parties dispute in the briefing on the motion to dismiss. (*See* ECF No. 61-7 at 9-12; ECF No. 64 at 13-15.) Nevertheless, the plaintiffs argue that "[a]lthough *Thole* overlaps with the standing issues Defendants raise, it will not determine standing in this case, because Plaintiffs have established standing based on individual, *de facto* injuries, and need not rely on representational standing to proceed." (ECF No. 64 at 16.) According to the plaintiffs, "the only way in which *Thole* would be relevant would be for the Court to determine that all the other ways in which Plaintiffs have demonstrated

standing are unavailing, and even then, the Wage Parity Law Claims and Motion to Strike are unaffected." (ECF No. 79 at 3.)

Of course, if I decide that the plaintiffs have not adequately alleged individual injuries, I would be deciding an issue of law that the Supreme Court will answer definitively in a few months' time. Not only would that be an inefficient use of the Court's time and resources, it raises the possibility of issuing a ruling inconsistent with the Supreme Court's eventual ruling in *Thole*.[3] *See In re Literary Works*, 2001 WL 204212, at *3 ("It would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision that all agree will significantly impact this multidistrict litigation."); *Ernst*, 2016 U.S. Dist. LEXIS 10724, at *6 ("Proceeding in the absence of such guidance would risk rulings in the present case that are inconsistent with the Supreme Court's eventual ruling in *Spokeo*, requiring vacating or amending them after the fact."). Accordingly, the interests of the Court, non-parties, and the public weigh strongly in favor of a stay.

Within fourteen days of the Supreme Court's decision in *Thole*, the defendants are to submit a letter, not to exceed five pages, explaining how the *Thole* holding affects their motion to dismiss. The plaintiffs will have seven days thereafter to submit a letter, not to exceed five pages, in response.

---

[3] The fact that *Thole* might not affect the plaintiffs' Wage Parity Law claim is irrelevant. That is a state law claim over which the Court would not have jurisdiction in the absence of the ERISA claims, since there does not appear to be complete diversity. (ECF No. 42 ¶¶ 10-12, 18-19.) If the plaintiffs' ERISA claims—which are the basis of the Court's subject matter jurisdiction (*id.* ¶¶ 6-8)—do not survive *Thole*, the Court will likely decline to exercise supplemental jurisdiction over the Wage Parity Law claim. *See Wolfinger v. Consolidated Edison Co. of N.Y., Inc.*, No. 17-CV-1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) ("Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims.") (citing 42 U.S.C. § 1367(c)(3)).

7

## CONCLUSION

For the reasons stated above, the defendants' motion to stay this action is granted.

**SO ORDERED.**

                                                              s/Ann M. Donnelly
                                            _____
                                            Ann M. Donnelly
                                            United States District Judge

Dated: Brooklyn, New York
        February 13, 2020