UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
YNES M. GONZALEZ DE FUENTE, MARIYA
KOBRYN, and IVAN KOBRYN, individually and
on behalf of all others similarly situated,

                       Plaintiffs,

               -against-

PREFERRED HOME CARE OF NEW YORK
LLC, EDISON HOME HEALTH CARE,
HEALTHCAP ASSURANCE, INC.,
HEALTHCAP ENTERPRISES LLC, BERRY
WEISS, SAMUEL WEISS, MARK REISMAN,
GREGG SALZMAN, SHAYA MANNE,
DANIEL ELLENBERG, AMIR ABRAMCHIK,
DOV FEDER, DOES 1-5, inclusive,

                       Defendants.
------------------------------------------------------------ x

**MEMORANDUM & ORDER**

18-cv-06749 (AMD) (PK)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 13 2020 ★

BROOKLYN OFFICE

**ANN M. DONNELLY**, United States District Judge:

On April 24, 2019, the plaintiffs filed an amended complaint alleging that the defendants misappropriated employee benefit plan assets in violation of the New York Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c ("Wage Parity Law"), and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). (ECF No. 42.) On June 25, 2019, all of the defendants moved to dismiss the amended complaint. (ECF Nos. 58, 61.) On July 26, 2019, the plaintiffs moved to strike HealthCap's motion to dismiss because HealthCap, an insurer unlicensed in New York, did not post a bond as required by New York Insurance Law § 1213(c). (ECF No. 63.)

On February 13, 2020, I granted a motion to stay the action pending the Supreme Court's forthcoming decision in *Thole v. U.S. Bank*, which will resolve whether plan participants in an overfunded benefit plan have constitutional standing to bring claims under ERISA. (ECF No.

80.) In their letter opposing the motion to stay, the plaintiffs argue that the Supreme Court's decision in *Thole* will have no bearing on the motion to strike. (ECF No. 79 at 2.) I agree and, notwithstanding the stay, consider whether HealthCap was required to post a bond before filing its motion to dismiss.[1] For the reasons discussed below, I grant the plaintiffs' motion to strike.

## BACKGROUND

I assume the parties' familiarity with the facts of this case, as outlined in my order granting a motion to stay. (ECF No. 80.) As relevant here, the plaintiffs assert claims pursuant to ERISA against their employers, Preferred and Edison, and their employers' "captive insurer," HealthCap. (ECF No. 42.) In the amended complaint, the plaintiffs allege that the employer defendants set up a health benefit plan for their employees to comply with the New York Wage Parity Law, and funded a trust to pay the cost of covered medical claims. (*Id.* ¶ 79.) According to the plaintiffs, on February 1, 2016, the employer defendants entered into a "quota share reinsurance agreement" with HealthCap "to reduce the Plan's exposure to welfare benefit obligations under the plan." (*Id.* ¶ 81) (alteration omitted). Under the agreement, HealthCap assumes a 75% quota share of the trust's welfare benefit obligations, and returns investment profits and excess premiums to the employers.[2] (*Id.* ¶¶ 70-71, 81-82.) The plaintiffs allege that this arrangement violates ERISA and the Wage Parity Law. (*Id.* ¶¶ 85-90.)

HealthCap is not a licensed insurance business in New York. (ECF No. 63-3.) The plaintiffs say that New York Insurance Law Section 1213(c) requires that HealthCap post a bond

---

[1] New York's bonding requirement for unauthorized insurers applies notwithstanding potential flaws in a complaint. *See Levin v. Intercontinental Cas. Ins. Co.*, 95 N.Y.2d 523, 528 (2000) ("Allowing [the defendant] to raise its defenses without posting a bond would compromise section 1213 (c)'s goal of assuring that funds are available to satisfy any judgment in plaintiff's favor."). Therefore, I must decide whether the bonding requirement applies even though the defendants move to dismiss for lack of constitutional standing.

[2] The defendants describe this as a form of "stop-loss" insurance. (ECF No. 61-7 at 4.)

to secure payment of a final judgment before filing any pleading, including a motion to dismiss. (ECF No. 63-1.) Because HealthCap did not deposit any pre-pleading security with the Court, the plaintiffs argue that I must strike its motion to dismiss. (*Id.*) (citing *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 11-CV-1209, 2014 WL 941444, at *2 (D. Conn. Mar. 11, 2014) (when a party fails to post a pre-pleading security, "the consequence...is a judicial order...striking the pleading.")).

HealthCap makes two arguments in response. First, it argues that Section 1213(c) does not apply because the plaintiffs are not bringing any claims against HealthCap "arising under" an insurance contract. Second, it says that even if Section 1213(c) does apply, it is preempted by ERISA because it "relates to" an employee benefit plan.

## DISCUSSION

### I. New York's Bonding Requirement

Under Section 1213 of the New York Insurance Law, "[b]efore any unauthorized foreign...insurer files any pleading in any proceeding against it," it must either "(A) deposit with the clerk of the court in which the proceeding is pending, cash or securities...in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding," or "(B) procure a license to do an insurance business in this state." N.Y. Ins. Law § 1213(c) (McKinney). The purpose of the statute is "to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts." *Id.* § 1213(a). Under New York law, the term "pleading" encompasses a defendant's motion to dismiss. *Levin*, 95 N.Y.2d at 528.

## II. Applicability of the Bonding Requirement to this Action

HealthCap argues that Section 1213 does not apply to this action because the plaintiffs are not suing HealthCap "under an insurance contract," as required by the statute's statement of purpose. (ECF No. 71 at 3-5) (quoting N.Y. Ins. Law § 1213(a)). According to HealthCap, the plaintiffs are suing "under ERISA...not 'under an insurance contract.'" (*Id.* at 4.)

I do not agree. The essence of the plaintiffs' claim is that the employer defendants' reinsurance contract with HealthCap violates ERISA, because it refunds benefit dollars meant for the plaintiffs to their employer. The plaintiffs' prohibited transaction claim, for example, alleges that the reinsurance contract with HealthCap facilitated the misuse of plan assets so that the employer defendants could retain "the funds for their own benefit at the expense of plan participants." (ECF No. 42 ¶ 119; *see also id.* ¶ 71: "Defendant HealthCap is the vehicle through which Defendants Preferred and Edison engaged in the above-described shell game."). Thus, although the lawsuit proceeds formally under ERISA, it takes aim at the insurance contract under which the ERISA plan is operated. Accordingly, the plaintiffs' claims arise under an insurance contract.

*Recumar, Inc. v. G. Simons & Co. N.V., S.A.*, upon which HealthCap relies, does not compel a different result. No. 92-CV-3580, 1993 WL 88263 (S.D.N.Y. Mar. 25, 1993). The *Recumar* insurer wanted the plaintiff to investigate an insurance claim. The *Recumar* plaintiff subsequently sued the insurer for breach of the employment contract, and moved to strike the insurer's responsive pleading because it did not post a bond pursuant to Section 1213. The court denied the motion to strike because the insurance contract was incidental to the plaintiff's claim. "Simply because one party hires another party to carry out an investigation involving an insurance claim does not make the contract governing that arrangement an insurance contract."

*Id.* at *1. This case is different. The insurance contract is not merely incidental—it is at the heart of the ERISA action.

HealthCap's other arguments—that the plaintiffs cannot be "beneficiaries" of an insurance contract between HealthCap and the employer defendants, and that HealthCap is a party in interest, not an "insurer"—are no more persuasive. Courts define a "beneficiary" protected by Section 1213 broadly: "a party that is a beneficiary of an insurance policy may utilize the statute even if that party is not the insured or even specifically designated as a beneficiary by the insured."[3] *Republic Ins. v. Atlantica Ins. Co., Ltd.*, No. 91-CV-8362, 1994 WL 163705, at *2 (S.D.N.Y. Apr. 28, 1994). The insurance contract between HealthCap and the employers exists for a specific purpose—to provide welfare benefit obligations to the plan participations, including the plaintiffs. (ECF No. 42 ¶¶ 70, 81, 85-88.) Accordingly, the plaintiffs are "beneficiaries" of HealthCap's insurance contract within the meaning of Section 1213. Moreover, HealthCap is a party in interest only because it is a captive insurer for the plan. Thus, HealthCap is both an "insurer" within the meaning of Section 1213 and a "party in interest" within the meaning of ERISA § 3(14)(B).

Accordingly, Section 1213 of the New York Insurance Law applies to this action.

### III. Whether ERISA Preempts New York's Bonding Requirement

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (quoting 29 U.S.C. § 1144(a)). A state law "relates to" an employee benefit plan if it has either a "reference to" ERISA plans or an impermissible "connection with" ERISA plans—in other

---

[3] As a general matter, courts construe Section 1213 broadly. *See In re Residential Capital, LLC*, 563 B.R. 756, 779 (Bankr. S.D.N.Y. 2016) (adopting an "expansive interpretation of Section 1213"); *In re MF Glob. Holdings Ltd.*, 569 B.R. 544, 553 (Bankr. S.D.N.Y. 2017) (rejecting a "narrow reading" of Section 1213 in favor a "broader approach").

5

words, if it "'governs a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* (quoting *Cal. Div. of Labor Standard Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997) and *Engelhoff v. Engelhoff*, 532 U.S. 141, 148 (2001)) (alterations omitted). A state law also has an impermissible "connection with" ERISA plans if "acute, albeit indirect, economic effects" of the state law "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers."[4] *Id.* (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995)).

HealthCap argues that the New York bonding requirement has an impermissible connection with ERISA plans because it would impose "greater administrative costs to insure plans in New York[.]" (ECF No. 71 at 7.) According to HealthCap, out-of-state insurers would shift these higher administrative costs to the ERISA plans they insure, which, in turn, would cause plan administrators "to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." (*Id.*) (citing *Gobeille*, 136 S. Ct. at 943 (citation omitted)).

This argument is premised on a speculative chain of events. Section 1213 could only forge an "impermissible connection" with ERISA plans if each of the following occurred: (1) the plan at issue chose an unlicensed insurer, (2) the unlicensed insurer was sued, (3) the insurer chose to remain unlicensed and post a bond, (4) the unlicensed insurer chose to shift the administrative costs of posting a bond to the ERISA plan, and (5) those administrative costs caused plan administrators "to adopt a certain scheme of substantive coverage or effectively

---

[4] The parties dispute whether ERISA's preemption provision is "broad" or "narrow," but the Supreme Court's standards, formulated in *Gobeille* and *Travelers* "ensure that ERISA's express pre-emption clause receives the broad scope Congress intended while avoiding the clause's susceptibility to limitless application." *Gobeille*, 136 S. Ct. at 943.

6

restrict its choice of insurers." This connection is too "tenuous, remote, [and] peripheral," to come within the scope of ERISA's preemption provision. *Travelers*, 514 U.S. at 661.

In fact, courts regularly strike down preemption challenges to laws of general applicability on this basis. *See, e.g., DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 816 (1997) ("Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute."); *Dillingham*, 519 U.S. at 334 ("The prevailing wage statute alters the incentives, but does not dictate the choices, facing ERISA plans."); *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 574 (2d Cir. 1995) ("A law having only such an indirect effect on plan assets is exactly the kind that *Blue Cross* and *Mackey* save from the pre-emptive sweep of § 514(a).").

Section 1213 is a law of general applicability requiring unlicensed insurers to post a bond before they file responsive pleadings where insured's rights are at stake.[5] It is of course possible to conjure up a convoluted chain of events that would create an impermissible "connection with" ERISA plans. That is not the standard for preempting a state law in an area of traditional state regulation. *See Dillingham*, 519 U.S. at 334 ("We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violence to our presumption that congress intended nothing of the sort.").

---

[5] By contrast, the state law at issue in *Minnesota Chamber of Commerce & Industry v. Hatch* specifically targeted employers providing health benefit plans and thus, by its terms, "related to" employee benefit plans. 672 F. Supp. 393, 397 (D. Minn. 1987) ("The statute thus plainly refers to benefit plans and seeks to exercise state control over their administration."). Contrary to HealthCap's contention, the Minnesota statute is not "nearly identical" to Section 1213. (ECF No. 71 at 8.)

## CONCLUSION

I grant the plaintiffs' motion to strike HealthCap's Motion to Dismiss. (ECF No. 58.) Before filing a responsive pleading, HealthCap is required to post a bond "sufficient to secure payment of any final judgment which may be rendered in the proceeding." N.Y. Ins. Law § 1213 (McKinney). The amount of the bond "necessarily falls within the trial court's discretion." *Levin*, 95 N.Y.2d at 529 (citation omitted). The plaintiffs calculate that a successful judgment is likely to be at least $25 million. (ECF No. 63-1 at 9.) I accept that calculation, and require that HealthCap post a bond of $25 million before entering a pleading in this case.

**SO ORDERED.**

                                           s/Ann M. Donnelly
                                           Ann M. Donnelly
                                           United States District Judge

Dated: Brooklyn, New York
        February 13, 2019