UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
**YNES M. GONZALEZ DE FUENTE**, **MARIYA KOBRYN**, and **IVAN KOBRYN**, individually and on behalf of all others similarly situated,

                        Plaintiffs,

            -against-

**PREFERRED HOME CARE OF NEW YORK LLC**, **EDISON HOME HEALTH CARE**, **HEALTHCAP ASSURANCE, INC.**, **HEALTHCAP ENTERPRISES LLC**, **BERRY WEISS**, **SAMUEL WEISS**, **MARK REISMAN**, **GREGG SALZMAN**, **SHAYA MANNE**, **DANIEL ELLENBERG**, **AMIR ABRAMCHIK**, **DOV FEDER**, **DOES 1-5**, inclusive,

                        Defendants.
--------------------------------------------------------------- x

**MEMORANDUM DECISION & ORDER**

18-cv-06749 (AMD) (PK)

**ANN M. DONNELLY**, United States District Judge:

       The plaintiffs, certified home health aides, allege in their amended complaint that the defendants misappropriated employee benefit plan assets in violation of the New York Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c ("Wage Parity Law"), and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). (ECF No. 42.) On February 13, 2020, I stayed the litigation pending the Supreme Court's decision in *Thole v. U.S. Bank*. (ECF No. 80.) On June 1, 2020, the Supreme Court ruled that participants in a defined-benefit retirement plan did not have Article III standing to challenge the management of that plan. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020). Before the Court is the defendants' motion to dismiss the plaintiffs' ERISA and Wage Parity Law claims.[1] For the

---

[1] On February 13, 2020, I granted the plaintiff's motion to strike the HealthCap defendants' motion to dismiss.

reasons that follow, I grant the motion to dismiss the plaintiffs' ERISA claims and decline to exercise jurisdiction over the remaining state law claim.

## BACKGROUND[2]

The plaintiffs are certified home health aides employed by the employer defendants, Preferred Home Care of New York LLC and Edison Home Health Care. (ECF No. 42 ¶ 1.) Under New York's Wage Parity Law, home health care workers must earn a "minimum rate," which consists of a "cash portion" and a "benefit portion." (*Id.* ¶ 2.) Employers may pay the benefit portion—which is set at $4.09 per hour in New York City and $3.22 per hour in Nassau, Suffolk, and Westchester counties—in cash, or through "any combination of cash, health, education, or pension benefits; wage differentials; supplements in lieu of benefits; or compensated time off." (*Id.* ¶ 3.)

In order to satisfy the benefit portion of their obligations under the Wage Parity Law, the employer defendants provided health benefits through a welfare benefit plan (the "Plan"). (*Id.* ¶ 5.) The Plan is a self-funded employee health benefit plan under ERISA § 3(1), which means that Edison and Preferred fund a trust that pays the cost of covered medical claims. (*Id.* ¶ 79.) The Plan automatically enrolls employees, and requires 20% coinsurance and co-pays of $15-$40 with an out-of-pocket maximum of $6,600 for an individual and $13,200 for family coverage. (*Id.* ¶ 62.)

On February 1, 2016, the employer defendants' trust entered into an agreement with HealthCap in which HealthCap agreed to assume a 75% share of the Plan's welfare benefit obligations. (*Id.* ¶¶ 81-82.) The plaintiffs allege that this arrangement—a so-called "captive insurance scheme"—was designed to refund benefit dollars to the employer defendants. (*Id.* ¶

---

[2] The facts are drawn from the plaintiffs' amended complaint. (ECF No. 42.)

2

70.) According to the plaintiffs, in a captive insurance scheme, the employer pays premiums to the captive insurer, which then uses the premiums to establish a reserve to pay covered medical claims. (*Id.* ¶¶ 70-71.) Meanwhile, the captive insurer invests the reserve amount and returns investment profits and excess premiums to the employer. (*Id.*) The plaintiffs allege that this arrangement violates ERISA, and does not provide them the benefit portion they are owed under the New York Wage Parity Law. (*Id.* ¶¶ 85-90.)

The plaintiffs allege that while they are participants in the Plan, they either (a) do not use it because of "high out of pocket costs," or (b) "have had difficulty accessing benefits" from it. (*Id.* ¶¶ 64, 66, 67-68.) In particular, Ivan Kobryn alleges that his healthcare provider told him he was not covered for cataract or glaucoma surgery or prescription eye drops under the Plan. (*Id.* ¶¶ 67-68.) The plaintiffs claim that they have been harmed by the "wrongful use of Plan assets for Defendants' personal gain" because they were deprived of "their right to benefit exclusively from those plan assets…cash and/or benefits that they are owed…[and] legal and equitable rights to assets that are wrongfully being retained by Defendants." (*Id.* ¶ 90.)

The plaintiffs assert five claims for relief—four under ERISA (*id.* ¶¶ 105-141), and one under the New York Wage Parity Law (*id.* ¶¶ 142-147). The plaintiffs' ERISA claims, which arise under ERISA Sections 502(a)(2) and (a)(3) allowing Plan participants to bring actions to enforce ERISA, allege that the defendants participated in prohibited transactions in violation of ERISA § 406(a) and (b), and breached their fiduciary duties in violation of ERISA § 404(a)(1).

On June 26, 2019, the defendants moved to dismiss the action. Two days later, on June 28, 2019, the Supreme Court granted certiorari in *Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617, 628 (8th Cir. 2017), in which the Eighth Circuit held that ERISA plan participants in an overfunded defined benefit plan did not have statutory standing to bring claims under ERISA

3

Sections 502(a)(2) or (a)(3).  As explained above, the Supreme Court held that the *Thole* plaintiffs did not have Article III standing to challenge the management of their defined-benefit retirement plan.  *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020).

## STANDARD OF REVIEW

"Determining the existence of subject matter jurisdiction is a threshold inquiry," *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010), and dismissal is proper under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate" the claim.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*.  A court deciding a motion to dismiss pursuant to Rule 12(b)(1) may consider evidence outside of the pleadings, *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986), but must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pleadings are to be construed in the light most favorable to the plaintiff.  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

4

**DISCUSSION**

**I.      ERISA Claims**

Standing is "the threshold question in every federal case," and determines "the power of the court to entertain the suit." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999). To establish constitutional standing, a plaintiff must prove: "(1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). Standing under ERISA requires a plaintiff to establish "a constitutionally sufficient injury arising from the breach of a statutorily imposed duty" and "identify a statutory endorsement of the action." *Hoeffner v. D'Amato*, No. 09-CV-3160 (PKC) (CLP), 2016 WL 8711082, at *14 (E.D.N.Y. Sept. 30, 2016) (quoting *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)); *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (applying *Kendall* to determine standing in an ERISA action).

Focusing on the "injury in fact" requirement of Article III, the defendants say that *Thole* requires dismissal of the plaintiffs' ERISA claims. Like the *Thole* plaintiffs, the defendants argue, the plaintiffs here have received all the benefits to which they are entitled under the Plan, and have not established any individual harm. According to the defendants, "[w]inning or losing the ERISA claims will not increase Plaintiffs' health benefits, and will not result in any money flowing to the Plaintiffs as participants" in the Plan. (ECF No. 82 at 4.)

The plaintiffs respond that they are in a different position than the *Thole* plaintiffs because of their state law claim under New York's Wage Parity Law. But for the defendants' ERISA violations, the plaintiffs argue, they would have received additional benefits under the

Wage Parity Law in the form of cash compensation or improved benefits. (ECF No. 84 at 3.) According to the plaintiffs, if they prevail, they will receive tangible benefits because the defendants will have to return money to the Plan.

I agree that *Thole* is dispositive. 140 S. Ct. 1615 (2020). There, participants in a defined-benefit retirement plan sued under ERISA for alleged mismanagement of the plan, claiming that the "defendants violated ERISA's duties of loyalty and prudence by poorly investing the assets of the plan." *Id.* at 1618. The *Thole* plaintiffs, however, received defined fixed monthly contributions regardless of the plan's value, and did not suffer any loss from the alleged mismanagement. *Id.* Observing that if the plaintiffs "were to *lose* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny less" and if they "were to *win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more," the Court found that the plaintiffs had "no concrete stake in [the] lawsuit." *Id.* at 1619 (emphasis in original).

Here, as in *Thole*, the plaintiffs are participants in a form of defined benefit plan; Plan participants are guaranteed certain health benefits, regardless of the Plan's funding. While the plaintiffs cite the Plan's high out of pocket costs and accessibility issues (ECF No. 42 at ¶¶ 63-68), they do not claim that they were denied any of the healthcare benefits promised under the Plan.[3] Nor have the plaintiffs alleged that Plan management was "so egregious that it substantially increased the risk that the plan and the employer would fail and be unable to pay the participants' future pension benefits." *Thole*, 140 S. Ct. at 1621. In fact, the plaintiffs concede that the Plan was overfunded by $22.8 million. (ECF No. 42 at ¶ 88.) Moreover, even

---

[3] The plaintiffs did not bring a claim under 29 U.S.C. § 1132(a)(1)(B) to contest wrongful denial of a benefit.

6

if the plaintiffs were successful in their ERISA claims, their benefits would not change; any disgorged funds would be deposited back into the Plan's trust.

Apparently conceding that they have not claimed concrete harm under ERISA, the plaintiffs argue that their case is different because of their claims under New York's Wage Parity Law; they assert that "[t]here is…no reason why violation of more than one law cannot result in the same harm." (ECF No. 64 at 17.) However, the alleged ERISA violation has not caused the plaintiffs *any* harm. While ERISA "impose[s] a general fiduciary duty" to comply with ERISA, it "does not confer a right to every plan participant to sue the plan fiduciary for alleged ERISA violations without a showing that they were injured by the alleged breach of the duty." *Kendall*, 561 F.3d at 120. It may be true that the plaintiffs are entitled to additional compensation under the Wage Parity Law, but they have no right under ERISA to receive additional benefits. An alleged violation of ERISA's duties of loyalty and prudence does not alone confer standing.

*Thole* also forecloses the plaintiffs' attempt to bring a claim derivatively on behalf of the Plan. "[I]n order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the issue in dispute.'" *Thole*, 140 S. Ct. at 1620 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)). Because the plaintiffs have not established individual injury in fact, they cannot assert standing as representatives of the Plan itself. *Id*; *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 200 (2d Cir. 2005) ("Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss.") (internal quotation and citation omitted).

Accordingly, the plaintiffs' ERISA claims are dismissed for lack of subject matter jurisdiction.[4]

## II. Wage Parity Law Claim

I decline to exercise jurisdiction over the plaintiff's Wage Parity Law claim, which arises under New York state law. "Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims." *Wolfinger v. Consolidated Edison Co. of New York, Inc.*, No. 17-CV-1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) (citing 42 U.S.C. § 1367(c)(3)). In deciding whether to exercise supplemental jurisdiction, district courts should balance the values of judicial economy, convenience, fairness, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) ("[F]ederal policy concerns may argue in favor of exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed."); *see also Klein & Co. Futures. Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

---

[4] The plaintiffs argue that their ERISA claims can survive on a theory of unjust enrichment. However, the plaintiffs did not make this claim in the amended complaint. They claimed that the defendants were unjustly enriched by the alleged failure to pay the Benefit Portion of the Wage Parity Law. The plaintiffs may not amend their complaint through motion papers. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting new claim raised for first time in plaintiff's opposition to a motion to dismiss).

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss this action is granted.

**SO ORDERED.**

 s/Ann M. Donnelly  
ANN M. DONNELLY  
United States District Judge

Dated: Brooklyn, New York
      October 9, 2020

9