| | |
|---|---|
| YNES M. GONZALEZ DE FUENTE, individually, | ) |
| | ) |
| Plaintiff, | )     Case No. 18-cv-6749-AMD-PK |
| | ) |
| v. | ) |
| | ) |
| EDISON HOME HEALTH CARE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## EDISON HOME HEALTH CARE'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF GONZALEZ'S FIRST AMENDED COMPLAINT

**HODGSON RUSS LLP**
Peter C. Godfrey
605 Third Avenue, Suite 2300
New York City, NY 10158
Telephone: (212) 751-4300
pgodfrey@hodgsonruss.com

**ALSTON & BIRD LLP**
Emily Costin, *Pro Hac Vice*
H. Douglas Hinson, *Pro Hac Vice*
The Atlantic Building
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3300
emily.costin@alston.com
doug.hinson@alston.com

*Attorneys for Defendant Edison
Home Health Care*

Defendant Edison Home Health Care ("Edison"), hereby responds to the remaining allegations in the First Claim for Relief of the First Amended Complaint (ECF No. 42, "FAC") filed by Plaintiff Ynes M. Gonzalez in her individual capacity:

**FIRST DEFENSE**

Edison responds to the individually numbered paragraphs of the FAC as follows and denies all allegations except for those explicitly admitted below:

**INTRODUCTION**

1.     Plaintiff Ynes M. Gonzalez de Fuente ("Gonzalez") is a certified home health aide employed by Defendant Preferred Home Care of New York LLC ("Preferred"), and Plaintiffs Mariya Kobryn and Ivan Kobryn are certified home health aides employed by Defendant Edison Home Health Care ("Edison"). Home health aides ("HHAs") provide care to sick, frail, and/or aged individuals ("clients") in their homes. Most Preferred and Edison clients are participants in the New York state medical assistance program (herein referred to as "Medicaid"). HHAs assist clients with the activities of daily living, including hygiene, bathing, toileting, and personal grooming, as well as household tasks and cooking. HHAs also provide assistance with health-related tasks such as medication reminders, dressing changes, transferring clients in and out of bed or a wheelchair, and other tasks as assigned by a nurse. HHAs are among the lowest-paid workers in New York City and its surrounding counties and their critical work enables hundreds of thousands of Medicaid recipients to remain in their homes and avoid institutionalization. As alleged below, Plaintiffs and the Class they seek to represent have been cheated out of millions of dollars of wages and benefits to which they were entitled, as a result of violations of the New York State Home Care Worker Wage Parity Law, Public Health Law § 3614-c ("Wage Parity Law"), and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry, which directed the Clerk of Court to "amend the judgment [ECF No. 86] to dismiss claims two, three, four and five of the plaintiffs' amended complaint [ECF No. 42] and dismiss plaintiffs Mariya Kobryn and Ivan Kobryn from the action," (referred to herein as the "October 15, 2020 docket entry.")

2. The Wage Parity Law mandates that home care workers working on cases that are reimbursable, in whole or in part, by Medicaid be paid a minimum rate of total compensation ("Minimum Rate"), comprised of a cash portion and a benefit portion.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

3. Under the Wage Parity Law, the benefit portion of the Minimum Rate ("Benefit Portion"), currently $4.09 per hour in New York City and $3.22 in Nassau, Suffolk, and Westchester counties, may be paid either in cash, or through any combination of cash, health, education, or pension benefits; wage differentials; supplements in lieu of benefits; or compensated time off. However, any portion of a benefit arrangement providing a refund or dividend of moneys contributed cannot satisfy an employer's Benefit Portion obligation.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

4. Upon information and belief, Defendants Preferred and Edison employ a combined total of approximately 4,000 home care workers, most of whom work on cases reimbursable, in whole or in part, by Medicaid and are entitled to be paid the Minimum Rate prescribed by the Wage Parity Law, including the Benefit Portion.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

5. Upon information and belief, Preferred and Edison created the Edison Home Health Care Welfare Plan a/k/a Edison Assist HHC Employee Benefit Plan ("the Plan"), a single employer welfare benefit plan within the meaning of Section 3(1) of ERISA, covering approximately 4,000 of their HHAs, for the purpose of appearing compliant with the Wage Parity Law, while actually evading its requirements and misappropriating ERISA-protected Plan assets. Through this scheme, over a three-year period, Preferred and Edison purported to set aside approximately $62.9 million dollars into the Plan, but paid out less than $12.8 million towards employee health benefits. Instead, Preferred and Edison retained millions of dollars of Plan assets for themselves and/or their principals, in violation of the Wage Parity Law and ERISA's fiduciary and prohibited transaction rules.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

## JURISDICTION AND VENUE

6. This action arises in part under Title I of ERISA, 29 U.S.C. §§ 1001 et seq., and is brought by Plaintiffs to enjoin acts and practices that violate the provisions of Title I of ERISA, to require the Defendants to make good to the Plan losses resulting from fiduciary violations, to restore to the Plan profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

**ANSWER:** The Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry dismissed all claims except for the First Claim for Relief. Edison admits only that

the First Claim for Relief s brought under ERISA. Edison denies Gonzalez is entitled to any relief under ERISA.

7.      The Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

**ANSWER:**    Admitted.

8.      The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims arising under the Wage Parity Law, N.Y. Public Health Law § 3614-c and the New York Labor Law ("NYLL") §§ 190 et seq., § 651, and § 663.

**ANSWER:**    Denied. The facts and allegations related to this/these claim(s) were dismissed by the Court's October 13, 2020 Order (ECF No. 85) and October 15, 2020 docket entry.

9.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the events or omissions giving rise to the claims occurred in this District, the Plan is administered in this District, and Defendants reside or may be found in this District.

**ANSWER:**    Admitted.

## THE PARTIES

10.     At all relevant times, Plaintiff Gonzalez has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Plaintiff Gonzalez resides in Elmhurst, New York. Plaintiff Gonzalez has worked for the Defendant Preferred as a certified Home Health Aide from on or about October 2, 2015 through the present.

**ANSWER:**    Upon information and belief, Plaintiff Gonzalez resides in Elmhurst, New York. Edison admits that Gonzalez has, from time to time, been a participant as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. The remaining allegations require no response because

these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry. Any allegations not expressly admitted are denied.

**ANSWER:**

11. At all relevant times, Plaintiff Mariya Kobryn has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Plaintiff Mariya Kobryn resides in Brooklyn, New York. Plaintiff Mariya Kobryn has worked for the Defendant Edison as a certified Home Health Aide from on or about November 2012 through the present.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

12. At all relevant times, Plaintiff Ivan Kobryn has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Plaintiff Ivan Kobryn resides in Brooklyn, New York. Plaintiff Ivan Kobryn has worked for the Defendant Edison as a certified Home Health Aide from on or about November 2012 through the present.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

13. At all relevant times, the Plaintiffs were Defendant Preferred or Edison's "employees" within the meaning the NYLL § 2(5).

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

14. At all relevant times, the Plaintiffs were "home care aides" within the meaning of the Wage Parity Law § 3614-c(d).

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

15. At all relevant times, Preferred and Edison were "licensed home care services agencies" within the meaning of Public Health Law § 3602(13).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

16. Defendants Preferred and Edison hired Plaintiffs, set Plaintiffs' work schedules, supervised Plaintiffs' work, maintained Plaintiffs' employment records, oversaw payroll and were responsible for ensuring that Plaintiffs received their wages and benefits, in accordance with the Wage Parity Law and New York Labor Law.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

17. At all relevant times, Defendants Preferred and Edison have been an "employer" of one or more of the Plaintiffs within the meaning of the NYLL §2(6), and have been subject to the requirements of the Wage Parity Law § 3614-c.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

18. At all relevant times, Defendant Edison has been the Plan Administrator and Named Fiduciary of the Plan and at all relevant times was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the Plan and/or exercised authority or control respecting management of distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. As a fiduciary, Defendant Edison at all relevant times was also a party in interest under ERISA, § 3(14)(A), 29 U.S.C. § 1002(14)(A). Defendant Edison is also a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C), which defines

a party in interest to an employee benefit plan to include an employer whose employees are covered by such plan. Defendant Edison is headquartered and maintains its primary place of business at 946 McDonald Ave., Brooklyn, NY 11218.

**ANSWER:** Edison admits it is headquartered and has its primary place of business in New York. Edison admits that it is the Plan Administrator and Named Fiduciary of the Edison Home Health Care Employee Benefit Plan. Edison denies any remaining allegations contained in Paragraph 18.

19. At all relevant times, Defendant Preferred has been a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the Plan and/or exercised authority or control respecting management of distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. As a fiduciary, Defendant Preferred at all relevant times was also a party in interest under ERISA, § 3(14)(A), 29 U.S.C. § 1002(14)(A). Defendant Preferred is also a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C), which defines party in interest to an employee benefit plan to include an employer whose employees are covered by such plan. Defendant Preferred is headquartered and maintains its primary place of business at 1267 57th St., Brooklyn, NY 11219.

**ANSWER:** No response required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry wherein the Court directed the Clerk of Court to "dismiss Preferred Home Care of New York LLC, Healthcap Assurance Inc., HealthCap enterprises, LLC, Berry Weiss, Samuel Weiss, Mark Reisman, Gregg Salzman, Shaya Manne, Daniel Ellenberg, Amir Abrmachik, Dov Feder, and

Does 1-15 from the action." (referred to herein as the Court's "Order Dismissing Other Defendants").

20.     At all relevant times, Defendant Samuel Weiss was Defendant Edison's President and Chief Executive Officer. Thus, at all relevant times, Samuel Weiss was a "party in interest" as to the Plan under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), which defines a party in interest to include an "employee, officer, [or] director" of an employer with respect to that employer's plan.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

21.     At all relevant times, Defendant Berry Weiss was President and Chief Executive Officer of Defendant Preferred. Thus, at all relevant times, Berry Weiss was a "party in interest" as to the Plan under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), which defines a party in interest to include an "employee, officer, [or] director" of an employer with respect to that employer's plan.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

22.     From on or about December 29, 2014 until December 10, 2015, Defendant Mark Reisman was a Trustee of the Plan and a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercised discretionary authority or discretionary control respecting management of the Plan and/or exercised authority or control respecting management of distribution of the Plan's assets, and/or had discretionary authority or discretionary

responsibility in the administration of the Plan. As a fiduciary, Defendant Reisman at all relevant times was also a party in interest under ERISA, § 3(14)(A), 29 U.S.C. § 1002(14)(A).

**ANSWER:**   No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

23.    From on or about December 29, 2014 until January 1, 2018, Defendant Gregg Salzman was a Trustee of the Plan and a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercised discretionary authority or discretionary control respecting management of the Plan and/or exercised authority or control respecting management of distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. As a fiduciary, Defendant Salzman at all relevant times was also a party in interest under ERISA, § 3(14)(A), 29 U.S.C. § 1002(14)(A).

**ANSWER:**   No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

24.    From on or about December 10, 2015 until the present, Defendant Shaya Manne has been a Trustee of the Plan and a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercises discretionary authority or discretionary control respecting management of the Plan and/or exercises authority or control respecting management of distribution of the Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plan. As a fiduciary, Defendant Manne at all relevant times was also a party in interest under ERISA, § 3(14)(A), 29 U.S.C. § 1002(14)(A).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

25. From on or about January 1, 2018 until the present, Defendant Daniel Ellenberg has been a Trustee of the Plan and a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercises discretionary authority or discretionary control respecting management of the Plan and/or exercises authority or control respecting management of distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. As a fiduciary, Defendant Ellenberg at all relevant times was also a party in interest under ERISA, § 3(14)(A), 29 U.S.C. § 1002(14)(A).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

26. Defendants Reisman, Salzman, Manne, and Ellenberg are referred to below as the "Trustee Defendants."

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

27. Since at least the 2015 Plan Year, which runs from February 1 until January 31 ("Plan Year"), Defendant HealthCap Assurance, Inc. ("HealthCap") has provided captive insurance to the Plan and is thus a Plan service provider and a "party in interest" within the meaning of ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B). Additionally, on information and belief, HealthCap is also a party in interest under ERISA §§ 3(14)(C), (E) and/or (G), 29 U.S.C. §

1002(14)(C), (E), and/or (G), which define parties in interest to include employers, entities acting indirectly in the interests of an employer with respect to an employee benefit plan, and entities of which employers own 50 percent or more. HealthCap, a North Carolina corporation, is a captive insurance company and maintains its primary place of business in Aberdeen, North Carolina. HealthCap is not licensed under the New York Insurance Law, although it does business in New York as an insurer.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

28. On information and belief, Doe Defendant(s), the captive cell within HealthCap that Defendants Preferred, Edison, Berry Weiss and/or Samuel Weiss own and/or control, is also a Plan service provider and therefore a "party in interest" within the meaning of ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), and under ERISA §§ 3(14)(C), (E) and/or (G), 29 U.S.C. § 1002(14)(C), (E), and/or (G), which define parties in interest to include employers, entities acting indirectly in the interests of an employer with respect to an employee benefit plan, and entities of which employers own 50 percent or more.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

29. Defendant HealthCap Enterprises, LLC ("HCE") is the owner of HealthCap Assurance, Inc. and a party in interest within the meaning of ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B). It is also a party in interest under ERISA §§ 3(14)(C), (E) and/or (G), 29 U.S.C. § 1002(14)(C), (E), and/or (G), which define parties in interest to include employers, entities acting

indirectly in the interests of an employer with respect to an employee benefit plan, and/or entities of which employers own more than 50 percent. It is also a party in interest under ERISA §§ 3(14)(H), 29 U.S.C. § 1002(14)(H), which, as relevant here, defines a party in interest to include a 10 percent or more direct or indirect shareholder of a party-in-interest under ERISA §§ 3(14)(B), (C), (E), and/or (G), 29 U.S.C. § 1002(14)(B), (C), (E), and/or (G).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

30. Defendant Amir Abramchik, who owns 50% of HCE and its affiliates, is a party in interest within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), which as relevant here, defines a party in interest to include a 10 percent or more direct or indirect shareholder of a party-in-interest under ERISA §§ 3(14)(B), (C), (E), and/or (G), 29 U.S.C. § 1002(14)(B), (C), (E), and/or (G).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

31. Defendant Dov Feder, who owns 50% of HCE and its affiliates, is a party in interest within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), which, as relevant here, defines a party in interest to include a 10 percent or more direct or indirect shareholder of a party-in-interest under ERISA §§ 3(14)(B), (C), (E), and/or (G), 29 U.S.C. § 1002(14)(B), (C), (E), and/or (G).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

32. Plaintiffs are ignorant of the true names and capacities of Doe Defendants and therefore sue them by fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of Doe Defendants when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of these fictitiously named Defendants is responsible in some manner for the occurrences alleged herein. Plaintiffs are further informed and believe, and allege thereon, that at all times relevant, Doe Defendants have been fiduciaries to the Plan and/or parties in interest.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

## FACTUAL ALLEGATIONS

### Defendants Preferred and Edison's Failure to Lawfully Compensate Plaintiffs Under the Wage Parity Law

33. On most weeks through October 2018, Plaintiff Gonzalez worked between three and five ten-hour shifts for Preferred. Beginning in April 2019, Gonzalez generally works five four-hour shifts per week for Preferred.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

34. On most weeks, Plaintiff Mariya Kobryn works three eleven-hour shifts for Edison.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

35.     On most weeks, Plaintiff Ivan Kobryn works four twelve-hour shifts for Edison.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

36.     All of the hours worked by Plaintiffs were within New York City on Medicaid cases.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

37.     Under the Wage Parity Law, the Benefit Portion of the Minimum Rate, currently $4.09 per hour worked in New York City and $3.22 per hour worked in Nassau, Suffolk, and Westchester counties, may be paid either in cash, or through any combination of cash, health, education, or pension benefits; wage differentials; supplements in lieu of benefits; or compensated time off. However, any portion of a benefit arrangement providing a refund or dividend of moneys contributed cannot satisfy an employer's Benefit Portion obligation.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

38.     Upon information and belief, at no time did the total compensation package provided to Plaintiffs satisfy the Benefit Portion of the minimum rate under the Wage Parity Law of $4.09 per hour worked.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

39.     Upon information and belief, prior to March 1, 2014, Plaintiffs Mariya Kobryn and Ivan Kobryn's regular hourly rate of pay was $9.50 per hour.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

40. Upon information and belief, between March 1, 2014 and December 30, 2016, Plaintiffs Mariya Kobryn and Ivan Kobryn's regular hourly rate of pay was $10.50 per hour.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

41. For the period October 2, 2015 until December 30, 2016, Plaintiff Gonzalez's regular hourly rate of pay was $10.00 per hour.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

42. For the period December 31, 2016 until December 30, 2017, Plaintiffs' regular hourly rate of pay was $11.00 per hour.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

43. For the period December 31, 2017 through December 30, 2018, Plaintiffs' regular hourly rate of pay was $13.00 per hour.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

44. For the period December 31, 2018 through the present, Plaintiffs' regular hourly rate of pay is $15.00 per hour.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

45.     For the period March 1, 2014 through December 30, 2016, the Wage Parity Law required Defendants Preferred and Edison to pay to Plaintiffs an hourly compensation package of $14.09 per regular hour worked in New York City, including at least $10.00 to satisfy the cash portion, plus $4.09 to satisfy the Benefit Portion. For the period March 1, 2014 through December 30, 2016, the Wage Parity Law required Defendants Preferred and Edison to pay to home health aides employed in Nassau, Suffolk, or Westchester counties an hourly compensation package of $10.93 per regular hour worked, including at least $9.50 to satisfy the cash portion, plus $1.43 to satisfy the Benefit Portion.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

46.     Plaintiffs' regular hourly rate of pay between March 2014 and December 30, 2016 was at least $10.00 per hour, satisfying the cash portion of the Minimum Rate.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

47.     For the period December 31, 2016 and continuing through December 30, 2017, the Wage Parity Law required Defendants Preferred and Edison to pay to Plaintiffs an hourly compensation package of $15.09 per regular hour worked in New York City, including at least $11.00 to satisfy the cash portion, plus $4.09 per hour to satisfy the Benefit Portion. For the period March 1, 2016 and continuing through December 30, 2017, the Wage Parity Law required Defendants Preferred and Edison to pay to home health aides employed in Nassau, Suffolk, or Westchester counties an hourly compensation package of $13.22 per regular hour worked,

including at least $10.00 to satisfy the cash portion, plus $3.22 per hour to satisfy the Benefit Portion.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

48. Plaintiffs' regular hourly rate of pay for the period December 31, 2016 through December 30, 2017 was $11.00 per hour, satisfying the cash portion of the Minimum Rate.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

49. For the period December 31, 2017 and continuing through December 30, 2018, the Wage Parity Law required Defendants Preferred and Edison to pay Plaintiffs an hourly compensation package of $17.09 per regular hour worked in New York City, including at least $13.00 to satisfy the cash portion, plus $4.09 per hour to satisfy the Benefit Portion. For the period December 31, 2017 through December 30, 2018, the Wage Parity Law required Defendants Preferred and Edison to pay home health aides employed in Nassau, Suffolk, and Westchester counties an hourly compensation of $14.22 per regular hour worked, including at least $11.00 to satisfy the cash portion, plus $3.22 per hour to satisfy the Benefit Portion.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

50. The regular hourly rate of pay for Plaintiffs from December 31, 2017 through December 30, 2018 was $13.00 per hour, satisfying the cash portion of the Minimum Rate.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

51. For the period December 31, 2018 through the present, the Wage Parity Law required Defendants Preferred and Edison to pay Plaintiffs an hourly compensation package of $19.09 per regular hour worked in New York City, including at least $15.00 to satisfy the cash portion, plus $4.09 to satisfy the Benefit Portion. For the period December 31, 2018 through the present, the Wage Parity Law required Defendants Preferred and Edison to pay home health aides employed in Nassau, Suffolk, and Westchester counties an hourly compensation of $15.22 per regular hour worked, including at least $12.00 to satisfy the cash portion, plus $3.22 per hour to satisfy the Benefit Portion.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

52. The regular hourly rate of pay for Plaintiffs from December 31, 2018 through the present is $15.00 per hour, satisfying the cash portion of the Minimum Rate.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

53. From October 2, 2015 until in or around June 2017, Plaintiff Gonzalez received no compensated time off from Preferred.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

54.     Beginning in or around July 2017, Plaintiff Gonzalez is alleged to have earned three paid time off days per year, but upon information and belief, has never used them or been paid for them.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

55.     Upon information and belief, since 2017, Plaintiffs Mariya Kobryn and Ivan Kobryn have received three paid days off per year.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

56.     From 2012 to 2017, Plaintiffs received no shift or other wage differentials.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

57.     From 2012 to the present, Plaintiffs received no education or pension benefits.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

58.     From 2015 to the present, Plaintiff Gonzalez received no supplements in lieu of benefits.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

59.     Upon information and belief, since in or around 2014, Plaintiffs Mariya Kobryn and Ivan Kobryn have each received a debit card valued at $60 per month for the purchase of a monthly unlimited half-price Senior Citizen MetroCard for use on Metropolitan Transportation Authority operated buses and subway trains.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

60. Upon information and belief, in or around July 2014, Edison provided Plaintiffs Mariya Kobryn and Ivan Kobryn with a Plan benefit card and accompanying brochure.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

61. Upon information and belief, in or around July 2016, Preferred provided Plaintiff Gonzalez with a Plan benefit card and accompanying brochure.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

62. The Plan requires participants to pay 20% coinsurance and co-pays of $15-$40 with an out of pocket maximum for the Plan of $6,600 for an individual and $13,200 for family coverage. The Plan provides for an individual deductible of $750 and a $1,500 family deductible for an employee working 31-40 hours per week. The Plan provides for an individual deductible of $1,000 and a $2,000 family deductible for an employee working 21-30 hours per week. The Plan provides for an individual deductible of $3,000 and a family deductible of $6,000 for an employee working up to 20 hours per week. The monthly premium for dependent coverage is $276.68 for an HHA working 35 hours per week.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

63.     Given the out-of-pocket expense of the Plan, HHAs such as the Plaintiffs working 2,080 hours in a year would be forced to spend up to approximately $3.17 per hour worked for coverage under the Plan.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

64.     Plaintiff Gonzalez has never utilized the Plan because she cannot afford to pay the high out-of-pocket costs, including deductible, co-insurance, and co-pays.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

65.     Plaintiff Gonzalez is a Medicaid recipient. Upon information and belief, many Plan participants are also Medicaid recipients and not utilizing benefits under the Plan because, as minimum wage employees, they cannot afford the high out of pocket costs.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

66.     Plaintiffs Mariya Kobryn and Ivan Kobryn have had difficulty accessing benefits under the Plan.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

67.     Ivan Kobryn has cataracts and glaucoma and his doctor has informed him that he needs immediate medically necessary cataract surgery. Upon information and belief, Kobryn's healthcare provider has been told that the Plan will not cover the cataract and glaucoma surgery.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

68.     In October 2018, Ivan Kobryn's doctor prescribed medically necessary eye drops which the Plan would not cover and would cost Kobryn $70 per month. Because Kobryn cannot afford to pay for the drops, he has foregone them and is suffering additional eye damage.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85) and October 15, 2020 docket entry.

69.     Plaintiffs Gonzalez, Mariya Kobryn, and Ivan Kobryn, and other HHAs employed by Defendants who worked on Wage Parity cases have been harmed by Defendants' failure to satisfy the Benefit Portion of the Wage Parity Law. Had Defendants complied with the Wage Parity Law, Plaintiffs would have received cash and/or meaningful and accessible benefits. Furthermore, Defendants have unjustly enriched themselves with the use of assets that rightfully belonged to Plaintiffs.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

### Defendants Use a Captive Insurance Scheme to Unlawfully Divert Benefit Dollars For Their Financial Gain Through the Misuse of ERISA Plan Assets

70.     Defendants Preferred and Edison have created a scheme using a captive health insurance company through which, annually, millions of Benefit Portion dollars of the Minimum Rate of Wage Parity Law compensation, which are ostensibly spent to provide HHAs with health insurance, are instead returned as surplus or result in other direct or indirect financial benefit to the Defendants.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

71.     Captive insurance companies are essentially wholly-owned subsidiaries created to provide insurance for parent companies. The parent company pays premiums to the captive insurer, for which it takes a tax deduction. The captive insurer then uses the premiums to establish a reserve and acts as a reinsurance agent for benefits owed by the parent company. Moreover, the assets of the captive are invested so that investment profit, interest, and/or dividends return to the captive owners. The captive insurer eventually returns excess premiums (or, upon liquidation, reserves) and any earnings thereon to the parent company or its owners in the form of shareholder distributions. All of this is done while evading the regulatory requirements that apply to traditional insurance companies. Defendant HealthCap is the vehicle through which Defendants Preferred and Edison engage in the above-described shell game.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

72.     While some captive insurers are lawful enterprises, careful compliance with ERISA and the Wage Parity Law is required. Defendants have failed to comply with these laws, which exist to protect employees' rights to their wages and benefits. Instead, Defendants have devised a scheme through the payment of enormous "premiums" from plan assets to HealthCap and its captive cell, which Defendants then use to enrich themselves.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

73.     Defendant HealthCap is a sponsored captive insurer, or, more specifically, a protected cell captive insurance company. It is composed of numerous unincorporated protected

"cells," each of which corresponds to a company that is reinsuring through the captive insurer. Each cell corresponds to a specific series of Class B shares that are available for purchase.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

74. Each protected cell exists to insure the risk arising from the employee benefit plans sponsored by each cell's shareholders, and the assets and liabilities of each protected cell are completely segregated from the assets and liabilities of Defendant HealthCap and every other protected cell of which it is composed.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

75. The voting rights and management power conferred by each series of Class B shares are limited to their corresponding protected cells, but within that domain they are absolute.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

76. Importantly, the holders of each series of Class B shares are exclusively entitled to: (i) operating distributions based upon the operational results of their corresponding protected cell and (ii) liquidating distributions based upon the net liquidated assets of their corresponding protected cell.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

77. Upon information and belief, Defendants Preferred, Edison and/or their respective owners, officers and directors, and/or other Doe Defendants subject to the control of Defendants Preferred, Edison, Berry Weiss, and/or Samuel Weiss, are the holders of the Class B shares corresponding to the protected cell that insures the Plan. As the holders of the Class B shares corresponding to the protected cell that insures the Plan, these Defendants have absolute control over the net assets accrued by the protected cell and are ultimately the sole beneficiaries of any distribution of the net assets accrued by the protected cell, whether based upon operational results or upon an eventual liquidation.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

78. Employees of Defendants Preferred and Edison are automatically enrolled in the Plan.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

79. The Plan is a single employer welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

80. Effective December 22, 2014, the Trustee Defendants established the Edison Assist HHC Employee Benefit Trust for the stated exclusive purpose of (1) providing and maintaining health benefits or other benefits for Participants and Beneficiaries; and (2) defraying the reasonable expenses of administering the Health Plan in accordance with the Trust Agreement and the requirements of ERISA.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

81. Effective February 1, 2016, the Trust entered into a quota share reinsurance agreement with Defendant HealthCap on behalf of the Plan, allegedly to "reduce [the Plan's] exposure to welfare benefit obligations under the Plan."

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

82. Under the agreement with Defendant HealthCap, the captive assumes a 75% quota share of the Plan's welfare benefit obligations.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

83. Defendants Edison and Preferred and the Trustee Defendants, as fiduciaries, direct that the Plan pay premiums to Defendant HealthCap in an amount equal to the quota share portion of the premiums collected by the Plan on the welfare benefit obligations.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

84. The premiums paid to HealthCap are paid from the assets of the Plan Trust.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

85. In the 2015 Plan Year, which runs from February 1 to January 31, Defendants Preferred and Edison set aside approximately $18.0 million to contribute to the Plan on behalf of 1,598 Plan participants. Of those contributions, Defendants Preferred, Edison, and the Trustee Defendants, as fiduciaries, directed the Plan to pay approximately $925,000 in claims directly out of Plan assets. In the same Plan Year, the Plan set aside approximately $6.4 million in Plan assets to be paid as premiums to Defendant HealthCap, which did not have an agreement to provide captive insurance with the Plan until February 1, 2016. As the quota share reinsurance agreement was retroactive for the 2015 Plan Year, Defendants Preferred and Edison and the Trustee Defendants knowingly paid $6.4 million in Plan assets as premiums to HealthCap in order for the captive insurer to assume less than $2.8 million in welfare benefit claims, less than $0.44 of benefit claims for each dollar of premiums that it received from the Plan. Upon information and belief, in the 2015 Plan Year, the HealthCap cell owned and/or controlled by Defendants Preferred and Edison, Berry and/or Samuel Weiss, or other Doe Defendants accrued an estimated $3.6 million

in surplus for their own benefit, which these Defendants have the exclusive right to receive as distributions based upon operational results or upon an eventual liquidation. Although these assets are required by ERISA and the Wage Parity Law to be used for the exclusive benefit of Plan participants, the Plan participants did not and will not receive any benefits from this surplus, which Defendants retain for their own financial gain.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

86. In the 2016 Plan Year, Defendants Preferred and Edison set aside approximately $17.5 million to contribute to the Plan on behalf of 3,851 Plan participants. Of those contributions, Defendants Preferred, Edison and the Trustee Defendants, as fiduciaries, directed the Plan to pay approximately $1.5 million in claims directly out of Plan assets. In the same Plan Year, the Plan also set aside approximately $11.4 million in Plan assets to purchase premiums through Defendant HealthCap. Based on the Plan's financial statements, under the Plan's quota share reinsurance agreement the captive insurance company assumes liability for 75% of claims incurred by the Plan. Upon information and belief, based on that arrangement, because the Plan paid less than $1.5 million in claims directly, Defendant HealthCap would have paid a maximum of approximately $4.4 million in claims, less than $0.39 of benefit claims for each dollar of premiums that it received from the Plan. Upon information and belief, in the 2016 Plan Year, the HealthCap cell owned and/or controlled by Defendants Preferred and Edison, Berry and/or Samuel Weiss, or other Doe Defendants accrued an estimated $7.1 million in surplus for their own benefit, which these Defendants have the exclusive right to receive as distributions based upon operational results or upon an eventual liquidation. Although these assets are required by ERISA and the Wage Parity

Law to be used for the exclusive benefit of Plan participants, the Plan participants did not and will not receive any benefit from the surplus, which Defendants retain for their own financial gain.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

87. In the 2017 Plan Year, Defendants Preferred and Edison set aside approximately $27.3 million to contribute to the Plan on behalf of 5,775 Plan participants. Of those contributions, Defendants Preferred, Edison and the Trustee Defendants, as fiduciaries, directed the Plan to pay approximately $815,000 in claims directly out of Plan assets. In the same Plan Year, the Plan also set aside approximately $14.6 million in Plan assets to purchase premiums through Defendant HealthCap. Based on the Plan's financial statements, under the Plan's quota share reinsurance agreement the captive insurance company assumes liability for 75% of claims incurred by the Plan. Upon information and belief, based on that arrangement, because the Plan paid less than $815,000 in claims directly, Defendant HealthCap would have paid a maximum of approximately $2.4 million in claims, less than $0.17 of benefit claims for each dollar of premiums that it received from the Plan. Upon information and belief, in the 2017 Plan Year, the HealthCap cell owned and/or controlled by Defendants Preferred and Edison, Berry and/or Samuel Weiss, or other Doe Defendants accrued an estimated $12.1 million in surplus for their own benefit, which these Defendants have the exclusive right to receive as distributions based upon operational results or upon an eventual liquidation. Although these assets are required by ERISA and the Wage Parity Law to be used for the exclusive benefit of Plan participants, the Plan participants did not and will not receive any benefit from the surplus, which Defendants retain for their own financial gain.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

88. Pursuant to the terms of its quota share reinsurance agreement with HealthCap, the Plan was obligated to pay nearly $32.4 million in total premiums for the 2015, 2016 and 2017 Plan Years combined. Upon information and belief, for the corresponding period, the HealthCap cell owned and/or controlled by Defendants Preferred and Edison, Berry and/or Samuel Weiss, or other Doe Defendants has been required to pay less than $9.6 million in total benefit claims, less than thirty percent $0.30 of benefit claims for each dollar of premiums that it received from the Plan. As a result of these exorbitant premiums, the HealthCap cell owned and/or controlled by these Defendants would have amassed a surplus of approximately $22.8 million in just three years, nearly double the total amount of benefit claims paid by both the Plan and HealthCap during the same period. As the holders of the Class B shares corresponding to the protected cell that insures the Plan, these Defendants have absolute control over this surplus and are ultimately the sole beneficiaries of any distribution of the surplus, whether based upon operational results or upon an eventual liquidation.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

89. During the 2015, 2016 and 2017 Plan Years, upon information and belief, the Plan and HealthCap in total paid less than $12.8 million in claims, while during the same period the Plan paid approximately $7.1 million in administrative expenses. Accordingly, for every dollar believed to have been paid in claims, the Plan spent at least $0.55 in administrative expenses.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

90. Defendants' wrongful use of plan assets for Defendants' personal gain has harmed Plaintiffs Gonzalez, Mariya Kobryn, Ivan Kobryn, and other plan participants, by depriving them of their right to benefit exclusively from those plan assets. Additionally, Plaintiffs and other Plan participants have been harmed by Defendants' breaches of fiduciary duties and prohibited transactions that have deprived them of cash and/or benefits that they are owed. If Defendants complied with ERISA in administering the Plan, Plaintiffs would receive additional cash and/or meaningful and accessible benefits that they are not receiving and will never receive. Plaintiffs have been harmed through the deprivation of their legal and equitable rights to assets that are wrongfully being retained by Defendants. ERISA does not permit Defendants to misappropriate money set aside for the benefit of plan participants for Defendants' personal gain.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

## DOCUMENT REQUEST ALLEGATIONS

91. By certified letter dated August 31, 2018, Plaintiff Gonzalez requested documents from the Plan Administrator at Edison Home Health, including the current Plan document, the current summary plan description, any summary of material modification, the trust agreement, any insurance contract or agreement providing insurance for Plan benefits, and any other instruments under which the Plan is established or operated. Her request for insurance contracts included but was not limited to any contracts or agreements with HealthCap.

**ANSWER:** Admitted.

92.     By U.S. mail postmarked on or about September 24, 2018, Plaintiff Gonzalez received a copy of the Summary Plan Description but no other documents responsive to her request.

**ANSWER:**     Edison admits that on September 24, 2018, Edison sent Plaintiff Gonzalez a copy of the Plan Document and Summary Plan Description for the Plan.

93.     By U.S. mail dated March 11, 2019, 104 days after the initial complaint in this action was filed and 192 days after Plaintiff Gonzalez submitted her document request in writing, counsel for Defendants Preferred and Edison sent the Plan Document, the Summary Plan Description, the trust agreement, consent to replace certain trustees, an insurance contract between the Plan and HealthCap and a "summary brochure."

**ANSWER:**     Edison admits that on March 11, 2019, Edison, through counsel, sent a copy of the following documents to Plaintiff Gonzalez, through counsel, in response to her August 31, 2018 request for documents: The Plan Document and Summary Plan Description for Edison Assist HHC Employee Benefit Plan; a summary of material modification effective April 1, 2017; the Edison Assist HHC Employee Benefit Trust; the consent to replace Trustees (2015 and 2018); the Edison Assist HHC Employee Benefit Plan Summary of Benefits and Coverage documents for 20-40 hour employees; the Edison Assist HHC Employee Benefit Plan Summary Brochure; and the Quota Share Reinsurance Agreement (Fronting) by and between the Edison Assist HHC Employee Benefit Trust and HealthCap Assurance, Inc. (2016).

94.     Defendants provided no explanation for their more than 6-month delay in providing these documents.

**ANSWER:**     Edison avers that its March 11, 2019 letter, which included all of the documents requested by Plaintiff Gonzalez, speaks for itself.   In particular, Edison avers that its

March 11, 2019 letter did not concede that Gonzalez's August 31, 2018 letter was a proper request under ERISA § 104(b), or that Gonzalez was entitled to request or receive such documents under ERISA § 104(b) at the time she made her request in August 2018, or that its September 24, 2018 response did not materially comply with the request. Any remaining allegations are denied.

95.     Plaintiff Gonzalez has been prejudiced by having to hire counsel to pursue her request for documents, and delayed in her investigation of her benefits plan.

**ANSWER:**     Denied.

## CLASS ACTION ALLEGATIONS

96.     Plaintiffs bring the Second, Third, Fourth and Fifth Claims for Relief for violations of ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), and of the New York Wage Parity Law, as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons who were participants in the Plan on February 1, 2014 or at any time thereafter, and/or beneficiaries of Plan participants on February 1, 2014 or at any time thereafter (hereinafter "Plaintiff Class" or "Class Members"). Excluded from the Plaintiff Class are Samuel Weiss, Berry Weiss, and their immediate families; the officers and directors of any of the corporate Defendants, or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:**     No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

97.     The Plaintiff Class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that over 4,000 employees and former employees are participants, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Although

the exact number and identities of Class Members are unknown to Plaintiffs at this time, this information is easily ascertainable from the Plan through discovery of its records.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

98. Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

     i. Whether Defendants engaged in prohibited transactions under ERISA by paying premiums to HealthCap, a captive insurance company, a party in interest, resulting in Plan assets returning as profit or other financial gain to Defendants Preferred and Edison, Samuel Weiss and/or Berry Weiss and/or Doe Defendants;

     ii. Whether Defendants Preferred, Edison, Samuel Weiss, and Berry Weiss and/or Doe Defendants breached their fiduciary duties to Plan participants by using Plan assets to generate profits and other financial gain for their own benefit;

     iii. Whether Defendants Preferred and Edison violated the Wage Parity Law by failing to pay the Benefit Portion of the minimum rate;

     iv. Whether Defendants are liable to Plaintiffs and Class Members for losses caused by Defendants' breaches of fiduciary duty and/or for other appropriate equitable relief under ERISA, including but not necessarily limited to restitution, surcharge, a constructive trust, disgorgement of windfall profits, and injunctive relief.

**ANSWER:** No response is required because these allegations, including sub-parts i-iv, relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

99. Plaintiffs' claims are typical of those of the Plaintiff Class. For example, Plaintiffs, like other Plan participants in the Plaintiff Class, have not received sufficient benefits or been paid adequately to satisfy the Benefit Portion of the minimum rate under the Wage Parity Law.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

100. Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, Wage Parity Law, and employee benefits litigation.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

101. Class certification of Plaintiffs' Claims for Relief for violations of ERISA's prohibited transaction and fiduciary rules and of the Wage Parity Law is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class Members would as a practical matter be dispositive of the interests of non-party Class Members.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

102. In addition, class certification of Plaintiffs' Second, Third and Fourth Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Plaintiff Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Plaintiff Class as a whole. The Class Members are entitled to declaratory and injunctive relief to remedy Defendant's fiduciary violations.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

103. Class certification of Plaintiffs' Fifth Claim for Relief under the Wage Parity Act is appropriate under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Plaintiff Class. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendants have obtained wrongful profits that, measured in terms of harm to each individual Class Member, may be small and difficult to detect but in the aggregate have an enormous value on the impact of Class Members' employee benefits and/or wages. Individual participants have an insufficient stake in the outcome of this matter to devote the substantial resources that would be required to pursue it individually.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

104. The names and addresses of the Class Members are available from the Plan. Notice will be provided to all Class Members to the extent required by Rule 23.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**[Statutory Penalties - ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A),
Against Defendant Edison]**

105. Plaintiff Gonzalez incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER:** Edison incorporates by reference as if pleaded herein its Answers to all preceding paragraphs.

106. ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that: "A civil action may be brought . . . by a participant or beneficiary . . . for the relief provided in subsection (c) of this section."

**ANSWER:** Edison admits that Plaintiff has properly quoted select language from ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A).

107. ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), provides that: "Any administrator . . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material

requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure . . . and the court may in its discretion order such relief as it deems proper. For purposes of this paragraph, each violation . . . with respect to any single participant . . . shall be treated as a separate violation."

**ANSWER:**    Edison admits that Plaintiff has properly quoted portions of the language of ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), except that the word "subchapter" should be replaced with "title."

108.    Title 29 C.F.R. § 2575.502c-1 has increased the maximum civil penalty under ERISA § 502(c)(1), 29 U.S.C. §1132(c)(1), from $100 a day to $110 a day for failing to meet the requirements of ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

**ANSWER:**    Edison admits only that Gonzalez has summarized pertinent provisions of 29 C.F.R. § 2575.502c-1 which increased the "maximum amount of the civil monetary penalty established by section 502(c)(1) of [ERISA] . . . from $ 100 a day to $ 110 a day" for "violations occurring after July 29, 1997."

109.    ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), requires that the administrator of an individual plan provide upon written request of any participant or beneficiary a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

**ANSWER:**    Edison admits only that Gonzalez has summarized pertinent provisions of 29 U.S.C. § 1024(b)(4).

110.    Defendant Edison, as administrator of the Plan, failed to provide the documents requested in writing by Plaintiff Gonzalez that are required by ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) within 30 days after her request. Instead, Defendant Edison did not provide a copy of the Plan Document, the trust agreement, or other required documents until 192 days after her request, after she filed suit in this action.

**ANSWER:**    Edison admits that it is the administrator of the Plan. Edison denies the remaining allegations in paragraph 110.

111.    Defendant Edison is therefore liable to Plaintiff Gonzalez for up to $110 a day for each day that the documents she is entitled to receive have remained outstanding.

**ANSWER:**    Denied.

112.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

**ANSWER:**    Edison admits only that Gonzalez has summarized pertinent provisions of 29 U.S.C § 1132(a)(3) which provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

113.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct

of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

**ANSWER:** Edison admits only that Gonzalez has summarized pertinent provisions of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) which provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV."

114.    To remedy these violations of ERISA by Defendant Edison, Plaintiff Gonzalez also seeks injunctive relief and other equitable relief as prayed for below.

**ANSWER:** Edison admits that Gonzalez seeks injunctive relief and other equitable relief but denies that any injunctive or "other equitable relief" may be awarded. Plaintiff Gonzalez has received all of the documents requested rendering any such injunctive or "equitable relief" moot. *See Wise v. Plan Adm'r of the IBM Benefits Plan for Retired Emps.*, No. 3:13cv1591 (JBA), 2014 U.S. Dist. LEXIS 106862, at *19 (D. Conn. Aug. 5, 2014) (holding that plaintiff's request for injunctive relief ordering defendant to produce documents in response to §104(b) request was moot because defendant had produced the documents requested).

## SECOND CLAIM FOR RELIEF

### [In Defendants' Capacities as Parties in Interest, Engaging in Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), Against All Defendants]

115.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER:**    Edison incorporates by reference as if pleaded herein its Answers to all preceding paragraphs.

116.    ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

**ANSWER:**    No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

117.    All Defendants are "parties in interest," as described above in Paragraphs 18 to 32.

**ANSWER:**    No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

118.    By transacting with all Defendants to arrange the transfer of Plan assets to and from HealthCap and/or its Captive Cell, the Plan fiduciaries violated ERISA § 406(a), 29 U.S.C. § 1106(a), by causing a direct or indirect sale or exchange with a party in interest and/or a transfer or use of plan assets to or by or for the benefit of parties in interest, namely, Defendants.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

119. Defendants knowingly participated in such prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a). All Defendants had actual and/or constructive knowledge of the circumstances that made the transactions unlawful, including but not limited to the facts that Defendants Preferred and Edison caused the Plan to pay tens of millions of dollars in Plan assets to HealthCap and its captive cell as premiums, that these enormous premiums were far in excess of the amounts required or appropriate to provide the plan's benefits, pay claims, and/or maintain adequate reserves, and that Defendants Preferred and Edison and/or their principals retained the funds for their own benefit at the expense of plan participants.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

120. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA, including violations of ERISA § 406(a), 29 U.S.C. § 1106(a).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

121. Through their knowing participation in prohibited transactions, Defendants benefitted in amounts to be proven at trial but numbering in the millions of dollars.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

122. These prohibited transactions harmed Plaintiffs and Class Members by reducing the amount of money and/or value of benefits that they received for the Benefit Portion required under the Wage Parity Law.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

### THIRD CLAIM FOR RELIEF

**[Engaging in Prohibited Transactions Forbidden by ERISA § 406(b),
29 U.S.C. § 1106(b), Against Defendants Preferred and Edison,
the Trustee Defendants, and Doe Fiduciary Defendants]**

123. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER:** Edison incorporates by reference as if pleaded herein its Answers to all preceding paragraphs.

124. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

125. ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), mandates that a plan fiduciary shall not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

126. ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

127. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

128. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

129. Defendants Preferred, Edison, the Trustee Defendants, and Doe Defendants are fiduciaries as set forth above.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

130. Defendants engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by carrying out a scheme to enrich themselves through the use of plan assets.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

131. Through these prohibited transactions, Defendants caused losses to Plaintiffs, the Plaintiff Class, and the Plan in amounts to be proven at trial but numbering in the millions of dollars.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

**FOURTH CLAIM FOR RELIEF**

**[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),
29 U.S.C. §§ 1132(a)(2) and (a)(3),
Against Defendants Preferred and Edison, the Trustee Defendants,
and Doe Fiduciary Defendants]**

132. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER:** Edison incorporates by reference as if pleaded herein its Answers to all preceding paragraphs.

133. ERISA § 3(21), 29 U.S.C. § 1001(21), provides that a person is a fiduciary of a plan to the extent he "exercises any discretionary authority or discretionary control respecting management of such plan," "exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan."

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

134. Defendants Preferred, Edison, the Trustee Defendants, and Doe Defendants are fiduciaries as set forth above.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

135. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, inter alia, that a plan fiduciary discharge his, her, or its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

136. ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties

imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the Court may deem appropriate.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

137. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

138. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

139. Defendants breached their duty of loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by acting in their own interests rather than with an "eye single" to the interests of the participants and beneficiaries of the Plan, by devising and using a scheme to reap corporate and individual profit through the use of plan assets.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

140. Defendants have profited from the fiduciary violations alleged herein in an amount to be proven at trial.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

141. Defendants' actions caused losses to the Plaintiffs, the Plaintiff Class, and the Plan in amounts to be proven at trial.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

## FIFTH CLAIM FOR RELIEF

**[Violations of Wage Parity Law and New York Labor Law Wage Parity Law, N.Y.
Public Health Law § 3614-c and the New York Labor Law § 190 et seq., § 651, and § 663
Against Defendants Preferred & Edison]**

142. The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows:

**ANSWER:** Edison incorporates by reference as if pleaded herein all of its Answers to the preceding paragraphs.

143. By failing to pay the Benefit Portion of the Minimum Rate, Defendants Preferred and Edison failed to pay "wages" owed within the meaning of the New York Labor Law § 190(1).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

144. Upon information and belief, at all times relevant to this Complaint, Defendants Preferred and Edison, in their contracts with managed care plans, as defined by the Wage Parity Law § 3614-c(1)(e), were required to certify and did certify that Defendants paid Plaintiffs and Class Members the wages required by the Wage Parity Law, pursuant to Wage Parity Law § 3614-c(6).

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

145. The contracts with managed care plans and the certifications made to those plans promising to pay Plaintiffs and Class Members the wages and benefits required by the Wage Parity Law was made for the benefit of home care workers, including Plaintiffs and Class Members.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

146. Defendants breached their obligation to pay Plaintiffs and Class Members the minimum rate required by the Wage Parity Law, and Plaintiffs and Class Members were injured as a result of that breach.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

147. Plaintiffs and the Class Members, as third-party beneficiaries of Defendants' Preferred and Edison's contracts with managed care plans to pay the minimum rate as required by the Wage Parity Law, and as individuals protected by the Wage Parity Law, are entitled to relief for the breach of this contractual obligation and violation of the Wage Parity Law, plus interest.

**ANSWER:** No response is required because these allegations relate to claims that were dismissed by the Court's October 13, 2020 order (ECF No. 85), October 15, 2020 docket entry, and Order Dismissing Other Defendants.

## PRAYER FOR RELIEF

**ANSWER**: Edison denies that Plaintiff is entitled to any judgment or relief.

## JURY TRIAL DEMANDED

**ANSWER:** Edison denies that Plaintiff is entitled to a trial by jury.

To the extent not expressly admitted above, Edison denies each and every allegation in Plaintiff Gonzalez's Amended Complaint and denies that she is entitled to any judgment or relief requested or otherwise.

## SECOND DEFENSE

Plaintiff cannot establish she was entitled to request and receive documents pursuant to ERISA §104(b), 29 U.S.C. § 1024(b).

## THIRD DEFENSE

Edison fully and/or substantially complied with Plaintiff's request for documents pursuant to ERISA §104(b), 29 U.S.C. § 1024(b).

## FOURTH DEFENSE

Plaintiff's request for equitable and/or injunctive relief is moot. Plaintiff Gonzalez has received all of the documents requested rendering any such injunctive or "equitable relief" moot. *See Wise v. Plan Adm'r of the IBM Benefits Plan for Retired Emps.*, No. 3:13cv1591 (JBA), 2014

U.S. Dist. LEXIS 106862, at *19 (D. Conn. Aug. 5, 2014) (holding that plaintiff's request for injunctive relief ordering defendant to produce documents in response to §104(b) request was moot because defendant had produced the documents requested).

## FIFTH DEFENSE

Plaintiff is unable to demonstrate Edison acted in bad faith by any supposed deficiency in Edison's response to Plaintiff's ERISA § 104(b) request.

## SIXTH DEFENSE

Plaintiff is unable to demonstrate she was prejudiced by any supposed deficiency in Edison's response to Plaintiff's ERISA § 104(b) request.

## SEVENTH DEFENSE

Plaintiff is not entitled to a discretionary award of statutory penalties pursuant to ERISA § 502(c). *See, e.g.*, *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 848 (2d Cir. 2013) (district court acted "well within its discretion" holding that the plaintiff was not entitled to statutory penalties where there was no evidence of bad faith, intentional misconduct, or prejudice); *Curran v. Aetna Life Ins. Co.*, No. 13-cv-00289 (NSR), 2016 U.S. Dist. LEXIS 90383, at *27-31 (S.D.N.Y. July 11, 2016) (no award of statutory penalties despite "length of delay," because plaintiff made only one request and failed to show bad faith or prejudice); *Butler v. N.Y. State Teamsters Conference Pension & Ret. Fund*, No. 5:01-CV-01211, 2005 U.S. Dist. LEXIS 2097, at *25-26 (N.D.N.Y. Feb. 15, 2005) (denying statutory penalties, noting that "where the absence of either bad faith or prejudice is palpable," awarding a penalty "would be an unjustifiable windfall"); *Campanella*, 299 F. Supp. 2d at 293 (not awarding statutory penalties where no showing of bad faith or prejudice and plaintiffs only made two requests for documents); *Brinker ex. rel. Estate of Brinker v. The Pension Plan for Assocs. of Nine West Grp., Inc.*, 347 F. Supp. 2d 10, 15 (S.D.N.Y. 2004)

(declining to award statutory penalties where plaintiff was not prejudiced by delay); *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 99 Civ. 11042 (RCC), 2004 U.S. Dist. LEXIS 26070, at *59 (S.D.N.Y. Dec. 28, 2004), *aff'd*, 173 F. App'x 936, 940 (2d Cir. 2006) (declining to award statutory penalties, finding lack of bad-faith and harm to plaintiff outweighed the "lengthy delay" and repeated requests for documents); *Plotkin v. Bearings, Ltd.*, 777 F. Supp. 1105, 1108 (E.D.N.Y. 1991) (holding ten-month delay did not warrant sanctions due to lack of bad faith on part of plan administrator); *Chambers v. European Am. Bank & Trust Co*., 601 F. Supp. 630, 638-39 (E.D.N.Y. 1985) (collecting cases) ("The weight of authority indicates that penalties are not imposed when a plaintiff has failed to demonstrate that his rights were harmed or otherwise prejudiced by the delay in his receipt of the information."); *see also Carney v. Int'l Bhd. Of Elec. Workers Local Union 98 Pension Fund*, No. 00-6270, 2002 U.S. Dist. LEXIS 9326, at *24-25 (E.D. Pa. May 23, 2002) (declining to impose penalties even though some documents were "never provided," where the disability claimant, though represented by counsel, did not "vigorously" pursue her request for documents and alleged neither harm nor prejudice).

**WHEREFORE**, having fully answered Plaintiff's First Amended Complaint (ECF No. 42), Edison requests that the Court dismiss the same in its entirety, enter judgment in Edison's favor, and award Edison its costs and any other relief the Court deems proper.

Dated: October 29, 2020

**ALSTON & BIRD LLP**

*/s/ Emily Costin*
Emily Costin, *Pro Hac Vice*
H. Douglas Hinson, *Pro Hac Vice*
The Atlantic Building
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3300
emily.costin@alston.com
doug.hinson@alston.com

**HODGSON RUSS LLP**

Peter Godfrey
605 Third Avenue, Suite 2300
New York City, NY 10158
Telephone: (212) 751-4300
pgodfrey@hodgsonruss.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 29th day of October, 2020, the foregoing document was filed with the clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District of New York's Local Rule on Electronic Service upon all CM.ECF users.

**ALSTON & BIRD LLP**

<u>*/s/ Emily Costin*</u>
Emily Costin, *Pro Hac Vice*
The Atlantic Building
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3300
emily.costin@alston.com

*Attorney for Edison Home Health Care*